1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

JOHN T. AFFELDT (SBN 154430)
JENNY PEARLMAN (SBN 224879)
TARA KINI (SBN 239093)
PUBLIC ADVOCATES, INC.
131 Steuart Street, Suite 300
San Francisco, California 94105
Tel. (415) 431-7430; Fax (415) 431-1048
Email: jaffeldt@publicadvocates.org
         jpearlman@publicadvocates.org
         tkini@publicadvocates.org

Attorneys for PLAINTIFFS
(Additional attorneys listed on following page)

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

SONYA RENEE; CANDICE JOHNSON, a minor, by Sonya Renee, her guardian ad litem; MARIBEL HEREDIA; JOSE ALDANA, a minor, by Maribel Heredia, his guardian ad litem; N. DOE; B. DOE, a minor, by N. Doe, her guardian ad litem; MARIEL RUBIO; DANIELLE RUBIO, a minor, by Mariel Rubio, her guardian ad litem; STEPHANIE RUBIO, a minor, by Mariel Rubio, her guardian ad litem; GUADALUPE GONZALEZ; DAISY GONZALEZ, a minor, by Guadalupe Gonzalez, her guardian ad litem; JAZMINE JOHNSON, a minor, by Deanna Bolden, her guardian ad litem; ADRIANA RAMIREZ, a minor, by Arcelia Trinidad Ramirez, her guardian ad litem; JANE DOE, a minor, by John Doe, her guardian ad litem; CALIFORNIANS FOR JUSTICE EDUCATION FUND; CALIFORNIA ASSOCIATION OF COMMUNITY ORGANIZATIONS FOR REFORM NOW,

                    Plaintiffs,

          v.

MARGARET SPELLINGS, in her official capacity; UNITED STATES DEPARTMENT OF EDUCATION,

                    Defendants.

Case No.  3:07-cv-04299-PJH


**FIRST AMENDED COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF**


[ADMINISTRATIVE PROCEDURE ACT CASE]

---

FIRST AMENDED COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF

JEFFREY SIMES (NY SRN 2813533), appearing *pro hac vice*
GOODWIN PROCTER LLP
599 Lexington Avenue
New York, New York 10022
Tel: (212) 813-8879
Fax: (212) 355-3333
Email: jsimes@goodwinprocter.com

PATRICK THOMPSON (SBN 160804)
NICOLE E. PERROTON (SBN 233121)
ELIZABETH F. STONE (SBN 239285)
GOODWIN PROCTER LLP
101 California Street # 1850
San Francisco, California 94111
Tel: (415) 733-6000
Fax: (415) 677-9041
Email: pthompson@goodwinprocter.com

DAVID B. COOK (DC BN 113522), appearing *pro hac vice*
GOODWIN PROCTER LLP
901 New York Avenue, N.W.
Washington, D.C.  20001
Tel: (202) 346-4000
Fax: (202) 346-4444
Email: dcook@goodwinprocter.com

Attorneys for PLAINTIFFS

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

## INTRODUCTION

1.       This action challenges Defendant U.S. Department of Education's ("ED") and

Defendant Secretary of Education Margaret Spellings's ("Secretary Spellings") (together

"Defendants") regulation implementing the "highly qualified" teacher provisions of the No Child

Left Behind Act ("NCLB" or "the Act").  The regulation eviscerates Congress's explicit standard

for the "highly qualified" teacher owed every student by relabeling over 10,000 novice teachers

still in training in California and tens of thousands of such teachers nationwide as "highly

qualified."  Congress expressly mandated that only teachers that have *completed* their teacher

preparation programs and have received full state certification are to be deemed "highly qualified."

Defendants' regulation countermands this clear directive by designating teachers who are merely

*participating* in alternative preparation routes as "highly qualified."  Over a dozen different

provisions of NCLB operate independently and in tandem to ensure ultimately, that a "highly

qualified" teacher, who has received full state certification, teaches every core academic course for

all students in the country.  Defendants' actions in evading this critical Congressional standard by

regulatory fiat has undermined the promise of No Child Left Behind for plaintiffs, for hundreds of

thousands of California public school students, and for the nation as a whole.

2.       NCLB serves as the current foundation for federal education policy.  The ultimate goal

of NCLB is for all students to attain proficiency in reading and math by 2014.  In turn, NCLB's

"highly qualified teacher" provisions are intended to ensure that students have teachers who will

enable them to reach this goal.  As Secretary of Education Margaret Spellings has stated, "[The

NCLB] recognizes that teacher quality is one of the most important factors in improving student

achievement and eliminating [] achievement gaps."  Exhibit 1, Letter from Margaret Spellings to

Chief State School Officers (Oct. 21, 2005), *available at*

http://www.ed.gov/policy/elsec/guid/secletter/o51021.html.

3.     Accordingly, NCLB contains numerous provisions relating to "highly qualified" teachers. Underlying all provisions are NCLB's mandates that every child be taught by a "highly qualified" teacher in his or her core classes and that poor and minority students not be taught by inexperienced, non-"highly qualified" teachers at higher rates than other students. To meet these mandates, the Act requires that every state and local school district develop plans to deliver "highly qualified" teachers in all core academic classes and to provide for equitable distribution of these teachers.

4.     The Act also sets forth several reporting requirements to ensure that parents, students, policy makers, and the public have accurate information regarding the numbers and distribution of "highly qualified" teachers. Schools receiving Title I funds must inform individual parents when a non-"highly qualified" teacher teaches his/her child for more than four weeks. Moreover, every year, states and school districts are required to report to the public accurate information regarding the progress that schools, districts, and states are making towards meeting NCLB's "highly qualified" requirements and the numbers of teachers who are not "highly qualified." States, in turn, must provide this information to the U.S. Department of Education, which then reports to Congress the nationwide statistics on "highly qualified" teachers.

5.     Defendants' conduct, in undermining the standard of a "highly qualified" teacher, contravenes the Congressional mandates that all students receive "highly qualified" teachers and that non-"highly qualified" teachers are distributed equitably. In addition, Defendants' regulation frustrates Congress's intent that schools, districts, and states provide relevant, meaningful information concerning the experience and qualifications of the teachers of the nation's children.

6. The text of NCLB defines the term "highly qualified" teacher as a teacher who "has obtained full State certification. . . or passed the State teacher licensing examination and holds a license to teach. . . ." 20 U.S.C. § 7801(23)(A)(i). Defendants' regulation, however, flouts the letter and spirit of the Act by deeming as "highly qualified" those teachers who are still "*participating* in an alternative route to certification" (34 C.F.R. § 200.56(a)(2)(ii) (emphasis added)) and who have not yet obtained their full teaching credential. Congress did not intend that an individual with no prior training in how to teach would be labeled "highly qualified" on her first day in the classroom merely because she is "participating" in an alternative route to certification. Yet Defendants' regulation permits individual schools, school districts, and states to present these untrained teachers as "highly qualified" to parents, students, policy makers, and the public.

7. The burden of Defendants' conduct falls hardest on those served least by the educational system. A disproportionate number of teachers still in training whom Defendants mischaracterize as "highly qualified" teach in schools with a preponderance of poor and/or minority students. Defendants' regulation labeling "intern" teachers as "highly qualified" makes a mockery of Congress's mandate to ensure that poor and minority students are not more likely than their more affluent, white peers to be taught by inexperienced, non-"highly qualified" teachers. By allowing schools, districts, and states to mask the true picture of teacher qualifications, these entities may continue disproportionately to place untrained, inexperienced teachers in schools serving large numbers of poor and minority students, without consequence.

8. States such as California have relied heavily on Defendants' watered-down definition, and labeled thousands of current teachers who are merely participating in "alternative route[s] to certification" as "highly qualified." In California, these teachers—still on the road to full state certification—are most commonly in university or district-based intern programs and are known

generically as intern teachers. Intern teachers in California are disproportionately assigned to teach in low-performing schools serving high numbers of low-income and minority students.

9.    Student Plaintiffs Candice Johnson, Jose Aldana, B. Doe, Danielle Rubio, Stephanie Rubio, Daisy Gonzalez, Jazmine Johnson, Adriana Ramirez, and Jane Doe, along with members of organizational Plaintiffs Californians for Justice ("CFJ") and California ACORN, attend schools in which they are taught by an intern teacher and/or have been taught by an intern and/or in which there are significant numbers of interns creating a substantial likelihood that they will be taught by intern teachers again. Defendants' regulation, undermining the standard for "highly qualified" teachers, permits the continued concentration of intern teachers at the schools Plaintiffs and their members attend and deprives the public and parents—including parent Plaintiffs Sonya Renee, Maribel Heredia, N. Doe, Mariel Rubio, and Guadalupe Gonzalez—of accurate information about non-"highly qualified" teachers teaching in their schools and school districts. Moreover, the misrepresentation and misreporting of "highly qualified" teachers permitted by Defendants' regulation frustrates CFJ's and ACORN's efforts to provide access to qualified teachers for all students.

10.    For these reasons, as described more fully below, Defendants' regulation defining the term "highly qualified" teacher is arbitrary, capricious, contrary to law, and exceeds the agency's scope of statutory authority in violation of the Administrative Procedure Act, 5 U.S.C. §§ 701-06. The regulatory provision permitting alternative preparation program participants to be considered "highly qualified" should be deemed null and void. Moreover, Defendants should be enjoined from continuing to utilize the improper regulation, whether in enforcing compliance by schools, school districts, and/or states with NCLB's "highly qualified" teacher provisions or in applying the

unlawful standard for "highly qualified" teachers when fulfilling Defendants' reporting obligations to Congress.

## JURISDICTION

11.     This Court has jurisdiction over this action pursuant to 5 U.S.C. § 706 (actions under the Administrative Procedure Act) and 28 U.S.C. § 1331 (federal question).

12.     The Court has authority to grant the relief sought pursuant to 28 U.S.C. § 2201 (declaratory judgment) and 28 U.S.C. § 2202 (injunctive relief).  The Court has authority to review the actions of Defendants and to grant the relief requested pursuant to 5 U.S.C. §§ 701-706 (Administrative Procedure Act).

13.     The Court has jurisdiction to award costs and attorneys' fees pursuant to the Equal Access to Justice Act, 28 U.S.C. § 2412 *et seq*.

## VENUE

14.     Venue is proper in this judicial district under 28 U.S.C. § 1391(b) because this is a civil action, and a substantial part of the events or omissions giving rise to Plaintiffs' claims occurred in this district.  Venue is also proper under 28 U.S.C. § 1391(e) because this is a civil action in which Defendant Secretary Spellings is an officer of an agency of the United States acting in her official capacity and also Defendant ED is an agency of the United States, and:  (1) a substantial part of the events or omissions giving rise to Plaintiffs' claims occurred in this district, and also (2) one or more Plaintiffs reside in this district.

15.     Individual Plaintiffs Johnson, Ramirez, and Jane Doe reside and attend school in Contra Costa County.  Individual Plaintiffs Heredia, Aldana, N. Doe, and B. Doe reside in, and Plaintiffs Aldana and B. Doe attend school in, Alameda County.  Plaintiff CFJ has an office in Oakland, California within the county of Alameda and has members who live in the county of Alameda and

are adversely affected there by Defendants' regulation.  Plaintiff California ACORN has its office

in Oakland, California within the county of Alameda and has members who live in Alameda and

Contra Costa counties and are adversely affected there by Defendants' regulation.

16.     Pursuant to Local Rule 3-2(d), intradistrict assignment to the San Francisco or Oakland

division is proper because a substantial part of the acts or omissions giving rise to this action

occurred in the counties of Alameda and Contra Costa.

## PARTIES

### Plaintiffs

17.     Plaintiff SONYA RENEE and Plaintiff CANDICE JOHNSON are residents of Los

Angeles County, California.  Sonya Renee is a member of Plaintiff CALIFORNIA ACORN'S Los

Angeles chapter.  Sonya Renee is the mother of four children, including daughter Candice.

Candice is a sophomore at Washington Prep High School, in Los Angeles Unified School District

("LAUSD").  Pursuant to Defendants' definition of "highly qualified" teachers, Washington Prep

High School and LAUSD report intern teachers as "highly qualified" when responding to

California and NCLB teacher reporting requirements.  According to a summary of teachers'

credentials at Washington Prep High School, obtained from the California Department of

Education's online "Dataquest" database, a true and correct copy of which is attached hereto as

Exhibit 2 and incorporated herein by this reference, during the 2006-2007 school year, 11% of the

teachers at Washington Prep—more than one in ten—were intern teachers.  During her freshman

year, the 2006-2007 school year, Candice had an intern teacher deemed "highly qualified"

according to Defendants' regulation, for English and Algebra 1.  Although Washington Prep

receives Title I funds, Plaintiff Sonya Renee received no notice from Washington Prep or LAUSD

FIRST AMENDED COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF

stating that Candice was being taught, during the 2006-2007 school year, by a teacher who is not "highly qualified."

18.    Defendants' regulation regarding "highly qualified" teachers adversely affects Sonya Renee's and Candice Johnson's interests by (1) allowing the continued concentration of non-"highly qualified" intern teachers at Washington Prep High School and in LAUSD, (2) creating a substantial likelihood that Candice will be taught personally again by intern teachers whom Congress has deemed, in fact, not to be "highly qualified," (3) depriving Sonya and Candice of the benefit of state and local district plans to redress the hiring and placement of non-"highly qualified" teachers, including interns, and (4) depriving Sonya and Candice of accurate information about non-"highly qualified" teachers teaching at Candice's school and within LAUSD.  Candice Johnson brings suit through her parent and guardian ad litem, Sonya Renee.

19.    Plaintiff MARIBEL HEREDIA and Plaintiff JOSE "Joey" ALDANA are residents of Alameda County, California.  Maribel is the mother of two children, including son Joey.  Joey is a first grade student at East Avenue Elementary School, in Hayward Unified School District ("HUSD").  Pursuant to Defendants' definition of "highly qualified" teachers, East Avenue Elementary School and HUSD report intern teachers as "highly qualified" when responding to California and NCLB teacher reporting requirements.  An intern teacher is assigned to teach Joey's first grade class for the 2007-2008 school year.

20.    Defendants' regulation regarding "highly qualified" teachers adversely affects Maribel Heredia's and Joey Aldana's interests by:  (1) allowing Joey's current first grade intern teacher to be hired and assigned to him and mislabeled as "highly qualified," (2) depriving Maribel and Joey of the benefit of state and local district plans to redress the hiring and placement of non-"highly qualified" teachers, including interns, and (3) depriving Maribel and Joey of accurate information

about non-"highly qualified" teachers teaching at Joey's school and within HUSD.  Jose "Joey" Aldana brings suit through his parent and guardian ad litem, Maribel Heredia.

21.    Plaintiff N. DOE and Plaintiff B. DOE are residents of Alameda County, California.  B. Doe is the daughter of N. Doe.  B. Doe is a second grade student at Longwood Elementary School, in Hayward Unified School District ("HUSD").  Pursuant to Defendants' definition of "highly qualified" teachers, Longwood Elementary School and HUSD report intern teachers as "highly qualified" when responding to California and NCLB teacher reporting requirements.  Longwood Elementary receives Title I funds.  An intern teacher is assigned to teach B. Doe's second grade class during the 2007-2008 school year, and has been teaching B. Doe for more than four weeks. Plaintiff N. Doe has received no notice from Longwood Elementary or HUSD stating that daughter B. Doe is being taught, during the 2007-2008 school year, by a teacher who is not "highly qualified."

22.    Defendants' regulation regarding "highly qualified" teachers adversely affects N. Doe's and B. Doe's interests by:  (1) allowing B. Doe's current second grade intern teacher to be hired and assigned to her and mislabeled as "highly qualified," (2) depriving N. Doe and B. Doe of the benefit of state and local district plans to redress the hiring and placement of non-"highly qualified" teachers, including interns, and (3) depriving N. Doe and B. Doe of accurate information about non-"highly qualified" teachers teaching at B. Doe's school and within HUSD, including a letter informing N. Doe that B. Doe has been taught for four or more consecutive weeks by a teacher who is not "highly qualified."  B. Doe brings suit through her parent and guardian ad litem, N. Doe.

23.    Plaintiff MARIEL RUBIO and Plaintiffs DANIELLE RUBIO and STEPHANIE RUBIO are residents of Los Angeles County, California.  Mariel is the mother of four children,

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

including daughters Danielle and Stephanie.  Danielle is a junior at Hawthorne High School, in

Centinela Valley Union High School District ("CUHSD"); Stephanie is a freshman at Hawthorne.

24.     From October 2006-June 2007, Plaintiff Danielle Rubio attended Lawndale High

School.  For the 2005-2006 school year, and from September 2006-October 2006, Danielle

attended Hawthorne High School.  On information and belief, pursuant to Defendants' definition

of "highly qualified" teachers, Hawthorne High School, Lawndale High School and CUHSD

report intern teachers as "highly qualified" when responding to California and NCLB teacher

reporting requirements.  According to a summary of teachers' credentials for CUHSD, obtained

from the California Department of Education's online "Dataquest" database, a true and correct

copy of which is attached hereto as Exhibit 3 and incorporated herein by this reference, during the

2006-2007 school year, 11% of the teachers at Lawndale High School and 15% of the teachers at

Hawthorne High School were intern teachers.

25.     During her sophomore year at Lawndale High School, the 2006-2007 school year,

Plaintiff Danielle Rubio had an intern teacher deemed "highly qualified" according to Defendants'

regulation, for English and Spanish.  Lawndale High School received Title I funds during the

2006-2007 school year.  Plaintiff Mariel Rubio received no notice from Lawndale High School or

CUHSD stating that Danielle was being taught, during the 2006-2007 school year, by a teacher

who is not "highly qualified."  According to Dataquest, during the 2005-2006 school year, 19% of

the teachers at Hawthorne High School—24 out of 125—were intern teachers.  During her

freshman year at Hawthorne High School, the 2005-2006 school year, Danielle had an intern

teacher deemed "highly qualified" according to Defendants' regulation, for Spanish.  Hawthorne

High School received Title I funds during the 2005-2006 school year.  Plaintiff Mariel Rubio

received no notice from Hawthorne High School or CUHSD stating that Danielle was being taught, during the 2005-2006 school year, by a teacher who is not "highly qualified."

26.    Defendants' regulation regarding "highly qualified" teachers adversely affects Mariel Rubio's and Danielle Rubio's interests by (1) allowing the continued concentration of non-"highly qualified" intern teachers at Lawndale and Hawthorne High Schools and in CUHSD, (2) creating a substantial likelihood that Danielle will be taught personally again by intern teachers whom Congress has deemed, in fact, not to be "highly qualified," (3) depriving Mariel and Danielle of the benefit of state and local district plans to redress the hiring and placement of non-"highly qualified" teachers, including interns, and (4) depriving Mariel and Danielle of accurate information about non-"highly qualified" teachers teaching at Lawndale and Hawthorne High Schools and within CUHSD.  Danielle Rubio brings suit through her parent and guardian ad litem, Mariel Rubio.

27.    Plaintiff STEPHANIE RUBIO is a resident of Los Angeles County, California, another daughter of Plaintiff Mariel Rubio.  Stephanie is a freshman at Hawthorne High School, in CUHSD.  During the 2006-07 school year, the last year for which data are available, 15% of the teachers at Hawthorne were interns.  The likelihood that Stephanie will be taught by at least one intern teacher in one of her core classes during her remaining seven semesters of high school is statistically high, as she will enroll in at least five core classes during each semester.

28.    Defendants' regulation regarding "highly qualified" teachers adversely affects Stephanie Rubio's interests by (1) allowing the continued concentration of non-"highly qualified" intern teachers at Hawthorne High School and in CUHSD, (2) creating a substantial likelihood that Stephanie will be taught in the future by intern teachers whom Congress has deemed, in fact, not to be "highly qualified," (3) depriving Stephanie of the benefit of state and local district plans to

redress the hiring and placement of non-"highly qualified" teachers, including interns, and (4) depriving Stephanie and her parents of accurate information about non-"highly qualified" teachers teaching at her school and within CUHSD. Stephanie Rubio brings suit through her parent and guardian ad litem, Mariel Rubio.

29.     Plaintiff GUADALUPE GONZALEZ and Plaintiff DAISY GONZALEZ are residents of Los Angeles County, California. Guadalupe Gonzalez is a member of Plaintiff CALIFORNIA ACORN'S Los Angeles chapter. Guadalupe is the mother of four children, including daughter Daisy. Daisy is a sophomore at New Tech High School, a small learning community within Jefferson High School in LAUSD. Pursuant to Defendants' definition of "highly qualified" teachers, Jefferson High School and LAUSD report intern teachers as "highly qualified" when responding to California and NCLB teacher reporting requirements. According to a summary of teachers' credentials at Jefferson High School, obtained from the California Department of Education's online "Dataquest" database, a true and correct copy of which is attached hereto as Exhibit 2 and incorporated herein by this reference, during the 2006-2007 school year, 12.4% of the teachers at Jefferson were intern teachers who were deemed "highly qualified" according to Defendants' regulation. (Separate data for New Tech High School, which is within Jefferson High School, is not available from Dataquest.) The likelihood that Daisy will be taught by at least one intern teacher in one of her core classes during her remaining five semesters of high school is statistically high, as she will enroll in at least five core classes during each semester.

30.     Defendants' regulation regarding "highly qualified" teachers adversely affects Guadalupe's and Daisy Gonzalez's interests by (1) allowing the continued concentration of non-"highly qualified" intern teachers at Jefferson High School and in LAUSD, (2) creating a substantial likelihood that Daisy will be taught in the future by intern teachers whom Congress has

deemed, in fact, not to be "highly qualified," (3) depriving Guadalupe and Daisy of the benefit of state and local district plans to redress the hiring and placement of non-"highly qualified" teachers, including interns, and (4) depriving Guadalupe and Daisy of accurate information about non-"highly qualified" teachers teaching at Daisy's school and within LAUSD.

31.     Plaintiff JAZMINE JOHNSON is a resident of Contra Costa County, California.  She is a junior at Richmond High School, in the West Contra Costa Unified School District ("WCCUSD").  Pursuant to Defendants' regulatory standard of "highly qualified" teachers, Richmond High School and WCCUSD report intern teachers as "highly qualified" when responding to California and NCLB teacher reporting requirements.  Based on information provided by WCCUSD in response to a public records request, as well as a school staff roster cross-referenced with individual teachers' credential information from the online database of the California Commission on Teacher Credentialing (true and correct copies of which are attached hereto as Exhibit 4 and incorporated herein by this reference), during the 2006-2007 school year, approximately 1 in 8 teachers at Richmond High School were intern teachers.  During her sophomore year, the 2006-2007 school year, Jazmine had an intern teacher deemed "highly qualified" according to Defendants' regulation, for English.  During the 2005-2006 school year, Jazmine's freshman year, she had intern teachers, who were deemed "highly qualified" according to Defendants' regulation, for English, Spanish, and Geography.

32.     Defendants' regulation regarding "highly qualified" teachers adversely affects Jazmine Johnson's interests by:  (1) allowing the continued concentration of non-"highly qualified" intern teachers at Richmond High School and in WCCUSD, (2) creating a substantial likelihood that Jazmine will be taught personally again by intern teachers whom Congress has deemed, in fact, not to be "highly qualified," (3) depriving Jazmine of the benefit of state and local district plans to

redress the hiring and placement of non-"highly qualified" teachers, including interns, and (4) depriving Jazmine and her parents of accurate information about non-"highly qualified" teachers teaching at her school and within WCCUSD. Jazmine Johnson brings suit through her parent and guardian ad litem, Deanna Bolden.

33.    Plaintiff ADRIANA RAMIREZ is a resident of Contra Costa County, California. Like Plaintiff Jazmine Johnson, Adriana is a junior at Richmond High School, in WCCUSD. During the 2006-2007 school year, Adriana's sophomore year, she had intern teachers, who were deemed "highly qualified" according to Defendants' regulation, for English and Spanish.

34.    Defendants' regulation regarding "highly qualified" teachers adversely affects Adriana Ramirez's interests by: (1) allowing the continued concentration of non-"highly qualified" intern teachers at Richmond High School and in WCCUSD, (2) creating a substantial likelihood that she will be taught personally again by intern teachers whom Congress has deemed, in fact, not to be "highly qualified," (3) depriving Adriana of the benefit of state and local district plans to redress the hiring and placement of non-"highly qualified" teachers, including interns, and (4) depriving Adriana and her parents of accurate information about non-"highly qualified" teachers teaching at her school and within WCCUSD. Adriana Ramirez brings suit through her parent and guardian ad litem, Arcelia Trinidad Ramirez.

35.    Plaintiff JANE DOE is a resident of Contra Costa County, California. Like Plaintiffs Jazmine Johnson and Adriana Ramirez, Plaintiff Jane Doe is a junior at Richmond High School, in WCCUSD. Jane Doe currently has an intern teacher, deemed "highly qualified" according to Defendants' regulation, teaching her Biology class for the 2007-2008 school year. During the 2006-2007 school year, Plaintiff Jane Doe's sophomore year, one of Plaintiff Jane Doe's two English classes was taught by an intern teacher deemed "highly qualified" according to

Defendants' regulation.  This English class focused on California's English-Language Arts content standards and was intended to help Plaintiff Doe prepare for the California High School Exit Exam ("CAHSEE"), a test she must pass in order to graduate from high school.  To date, Plaintiff Jane Doe has been unable to pass the CAHSEE.

36.    Defendants' regulation regarding "highly qualified" teachers adversely affects Plaintiff Jane Doe's interests by:  (1) allowing Jane Doe's current Biology teacher, an intern, to be hired and assigned to her and mislabeled as "highly qualified;" (2) allowing the continued concentration of non-"highly qualified" intern teachers at Richmond High School and in WCCUSD; (3) creating a substantial likelihood that Jane Doe will be taught personally again by intern teachers whom Congress has deemed, in fact, not to be "highly qualified," (4) depriving Jane Doe of the benefit of state and local district plans to redress the hiring and placement of non-"highly qualified" teachers, including interns, and (5) depriving Jane Doe and her parents of accurate information about non-"highly qualified" teachers teaching at her school and within WCCUSD.  Plaintiff Jane Doe brings suit through her parent and guardian ad litem, John Doe.

37.    Plaintiff Californians for Justice Education Fund ("CFJ") is a non-profit, grassroots membership organization dedicated to empowering youth, communities of color, and poor people. The current primary efforts of CFJ and its members are focused on improving the educational opportunities in California's public schools for all students, including furthering an education system that provides qualified and diverse teaching staff and fighting for the rights of students of color, low-income students, and immigrant students and their families so that CFJ and its members can achieve justice in their schools.  A primary focus of CFJ's education work has been to mobilize public support for significant policy changes around the issue of students' access to qualified teachers.  CFJ has expended funds and resources in its attempt to monitor and remedy

14

teacher quality issues.  Among other efforts, CFJ has supported major legislative initiatives to

increase students' access to qualified teachers in California, including SB 1209 (Scott) (2006), a

bill which increased training and support for intern teachers and the Quality Education Investment

Act which, *inter alia,* requires participating districts to equalize the distribution of experienced,

qualified teachers across their schools.  CFJ's membership includes four regional networks with

offices in Oakland, Long Beach, Fresno, and San Jose.  Overall, CFJ has a total of over 1,500

members across the state.  Comprised primarily of youth from low-income communities and

communities of color, CFJ's members meet bi-weekly to discuss educational issues that arise in

their local communities, identify issues having a statewide impact, and strategize for effective

solutions.

38.    CFJ brings this action on its own behalf and on behalf of its members, including

various members who are currently taught by intern teachers.  One such member is Sayra Reyes, a

junior at Oakland Technical High School in Oakland Unified School District, who has an intern

teacher teaching her Chemistry class for the 2007-2008 school year.  Defendants' regulation

regarding "highly qualified" teachers adversely affects CFJ's organizational interests as well as the

interests of CFJ's members, including, *inter alia*, Sayra Reyes.  The mislabeling and misreporting

of "highly qualified" teachers permitted by Defendants' regulation hinders CFJ's goal of

improving access to qualified teachers for all students and its members' interests in having fully

qualified teachers.  This misreporting also deprives CFJ and its members of accurate information

regarding the qualifications of the teachers throughout California as well as in school districts

where CFJ carries out its work and/or its members reside.  Moreover, Defendants' regulation

labeling teachers participating in alternative routes as "highly qualified" perpetuates the

disproportionate placement of untrained, inexperienced teachers in schools serving large numbers

of low-income and minority students, contrary to CFJ's goals and its members' interests.  CFJ

works specifically on behalf of such students, and many of its members are low-income students of

color.

     39.    The national Association of Community Organizations for Reform Now ("ACORN") is

the nation's largest community organization of low- and moderate-income families, with more

than 350,000 member families, organized in 850 neighborhood chapters in over 100 cities across

the United States.  Since 1970, ACORN's priorities have included better housing, schools,

neighborhood safety, health care, and job conditions.  Plaintiff CALIFORNIA ACORN, the

statewide affiliate of national ACORN, was formed in 1996 and has more than 37,000 members

across California.  California ACORN, based in Oakland, organizes communities across the state

through outreach from its thirteen chapters, including Chula Vista, Contra Costa, Fresno, Long

Beach, Los Angeles, Oakland, Orange County, Sacramento, San Bernardino, San Diego, San

Fernando Valley, San Francisco, and San Jose.  One of California ACORN's four major current

campaigns is "Great Schools NOW!," a campaign to improve the quality of public schools for

ACORN members and their families, including ensuring qualified teachers.  California ACORN

has expended funds and resources in its attempts to address teacher quality issues.  Among other

efforts, California ACORN has supported major legislative initiatives to increase students' access

to qualified teachers in California, including SB 1209 (Scott) (2006), a bill which increased

training and support for intern teachers and the Quality Education Investment Act which, *inter

alia,* requires participating districts to equalize the distribution of experienced, qualified teachers

across their schools.  In addition, California ACORN and its members have participated in

trainings on teacher quality issues, advocated for improvements in teacher quality before state

legislators and other officials, and conducted and disseminated research on teacher quality issues within individual school districts.

40.     California ACORN brings this action on its own behalf and on behalf of its members, including Plaintiffs Sonya Renee and Guadalupe Gonzalez. Defendants' regulation regarding "highly qualified" teachers adversely affects California ACORN's organizational interests as well as the interests of California ACORN's members. The mislabeling and misreporting of "highly qualified" teachers permitted by the challenged regulation hinders California ACORN's goal of improving access to qualified teachers for all students and its members' interests in having fully qualified teachers. The misreporting also deprives California ACORN and its members of accurate information regarding the qualifications of the teachers throughout the state as well as in school districts where California ACORN carries out its work and/or its members reside. Moreover, Defendants' regulation labeling teachers participating in alternative routes as "highly qualified" perpetuates the disproportionate placement of untrained, inexperienced teachers in schools serving large numbers of low-income and minority students, contrary to California ACORN's goals and its members' interests. California ACORN works specifically on behalf of such students and their families, and many of its members are low-income families of color.

## Defendants

41.     Defendant MARGARET SPELLINGS is the Secretary of the United States Department of Education. She serves as the chief administrative officer of the Department and is responsible for overseeing implementation and enforcement of NCLB, including issuing such regulations as are necessary to ensure reasonably that there is compliance with the Act (20 U.S.C. §§ 6571, 6578). Secretary Spellings is sued in her official capacity.

42.    Defendant UNITED STATES DEPARTMENT OF EDUCATION is the federal agency responsible for implementing NCLB, including issuing such regulations as are necessary to ensure reasonably that there is compliance with NCLB (20 U.S.C. §§ 6571, 6578).

## LEGAL FRAMEWORK

*The No Child Left Behind Act*

43.    In January 2002, President Bush signed into law the No Child Left Behind Act of 2001, Pub. L. No. 107-110, 115 Stat. 1425, a sweeping piece of legislation that serves as the current foundation for federal education policy.  Congress is currently considering a reauthorization of the Act.

44.    The ultimate goal of NCLB is for all students to be "proficient" in reading and math by 2014.  20 U.S.C. § 6311(b)(2)(F).  To reach this goal, the Act requires that states test students regularly to assess their progress, 20 U.S.C. § 6311(b)(3)(A), and that states and districts be held accountable when students are not making "Adequate Yearly Progress" according to test results, *see* 20 U.S.C. §§ 7325, 6316(b)(5).  In particular, NCLB holds states accountable for closing the achievement gap between low-income and minority students and their more affluent, white peers. 20 U.S.C. § 6311(b)(2)(B).

45.    A cornerstone of NCLB's accountability scheme is that in order for students to learn and to make steady academic progress, they must be taught by "highly qualified" teachers.  In a letter to the nation's chief state school officers, a true and correct copy of which is attached hereto as Exhibit 1 and incorporated herein by this reference, Defendant Spellings described the importance of teacher quality as follows:

> On January 8, 2002, President George W. Bush and the U.S. Congress agreed to a plan to eliminate our Nation's significant academic achievement gaps, especially in mathematics and reading. This plan, embodied in the No Child Left Behind Act of 2001

(NCLB), recognizes that teacher quality is one of the most important factors in improving student achievement and eliminating these achievement gaps. As a result, the law set the important goal that all students be taught by a "highly qualified teacher" (HQT) who holds at least a bachelor's degree, *has obtained full State certification*, and has demonstrated knowledge in the core academic subjects he or she teaches.

Exhibit 1, Letter from Margaret Spellings to Chief State School Officers (Oct. 21, 2005) (emphasis added).

*The NCLB's "Highly Qualified" Teacher Requirement*

46.     NCLB defines the term "highly qualified" as follows:

(i) the teacher has obtained full State certification as a teacher (including certification obtained through alternative routes to certification) or passed the State teacher licensing examination, and holds a license to teach in such State, except that when used with respect to any teacher teaching in a public charter school, the term means that the teacher meets the requirements set forth in the State's public charter school law; and

(ii) the teacher has not had certification or licensure requirements waived on an emergency, temporary, or provisional basis.

20 U.S.C. § 7801(23)(A).

47.     Under NCLB, states must satisfy minimum qualifications for new and current teachers. Beginning with the 2002-03 school year, all new teachers hired in schools with low-income students receiving federal Title I funds were to be "highly qualified." 20 U.S.C. § 6319(a)(1-2). By the end of the 2005-06 school year, all students were to be taught by "highly qualified" teachers in core academic classes. 20 U.S.C. § 6319(a)(2). "Core academic subjects" are English, reading or language arts, mathematics, science, foreign languages, civics and government, economics, arts, history, and geography. 34 C.F.R. § 200.55(c).

48.     During the time it takes to provide all students with "highly qualified" teachers in core academic classes, NCLB further mandates that teachers who are not "highly qualified" may not be

---

19

disproportionately concentrated in schools with high percentages of low-income and minority students. 20 U.S.C. § 6311(b)(8)(C).

49.    To ensure that the states make progress toward the goal of providing all students with "highly qualified" teachers, NCLB also requires that:

      a.  States establish a statewide plan for carrying out activities to make sure that students are taught by "highly qualified" teachers, "including steps the State educational agency will take to ensure that poor and minority children are not taught at higher rates than other children by inexperienced, unqualified, or out-of-field teachers, and the measures that the State educational agency will use to evaluate and publicly report the progress of the State educational agency with respect to such steps." 20 U.S.C. §§ 6311(b)(8)(C), 6319(a)(2).

      b.  States seeking Title I money must submit a detailed plan as to how the state will ensure that schools receiving Title I funding will provide "highly qualified" instructional staff. *See* 20 U.S.C. §§ 6311(a)(1), 6311(b)(8).

      c.  Each school district must establish a district-level plan for how it will meet the NCLB's mandate that all students be taught by a "highly qualified" teacher by the end of the 2005-2006 school year, 20 U.S.C. §§ 6312(b)(1)(N), 6319(a)(3), and provide assurances in the plan that it will meet this goal, 20 U.S.C. § 6312(c)(1)(I).

50.    Further, NCLB establishes several reporting requirements at the school, district, state, and national levels to ensure parents, students, policy makers, and the public have accurate information regarding students' access to "highly qualified" teachers.

a. Schools receiving Title I funds must provide "timely notice" to parents of a child who has, for more than four consecutive weeks, been taught by a teacher who is not "highly qualified."  20 U.S.C. § 6311(h)(6)(B)(ii).

b. Districts must prepare and publicly disseminate an "annual report card" that includes district-level data regarding (i) the percentage of teachers teaching with emergency or provisional credentials, and (ii) the percentage of classes not taught by "highly qualified" teachers, in the aggregate and disaggregated by high-poverty compared to low-poverty schools.  20 U.S.C. § 6311(h)(2).

c. Districts must also report to the public annually district- and school-level data regarding progress made towards meeting the "highly qualified" teacher goal.  20 U.S.C. § 6319(b)(1)(A).

d. States must prepare an "annual state report card" that includes state-level data regarding:  (i) the percentage of teachers teaching with emergency or provisional credentials, and (ii) the percentage of classes not taught by "highly qualified" teachers, in the aggregate and disaggregated by high-poverty compared to low-poverty schools.  20 U.S.C. § 6311(h)(1)(C).

e. States must submit annual reports to the U.S. Secretary of Education on "the quality of teachers and the percentage of classes taught by highly qualified teachers in the State, local educational agency, and school," (20 U.S.C. § 6311(h)(4)(G)), and make this report "widely available within the State," (*id*.).  This report must include data regarding progress made towards meeting the "highly qualified" teacher goal.  20 U.S.C. § 6319(b)(1)(B).

f.   The Secretary of Education annually must submit a report to Congress that presents national- and State-level data regarding "the quality of teachers and the percentage of classes taught by highly qualified teachers."  20 U.S.C. § 6311(h)(4)-(5).

51.    Not a single state met the deadline for ensuring that all students are taught by a "highly qualified" teacher in their core classes by the end of the 2005-2006 school year.  *See* Exhibit 10, Letter from Margaret Spellings to Chief State School Officers (July 23, 2007), *available at* http://www.ed.gov/policy/elsec/guid/secletter/070723.html.  In October 2005, Defendant Spellings, on a state-by-state basis, extended until the end of the 2006-2007 school year the deadline by when all students were to be taught by a "highly qualified" teacher in their core classes.  *See* Exhibit 1, Letter from Margaret Spellings to Chief State School Officers (Oct. 21, 2005).

52.    In order to receive an extension, states were required to demonstrate a "good faith effort" to reach the "highly qualified" teacher goal and submit a revised state plan for meeting the goal by the end of 2006-2007.  Defendants analyzed four elements in deciding whether to grant individual state extensions:  (1) the State's definition of a "highly qualified teacher," (2) how the State reports to parents and the public on classes taught by "highly qualified" teachers, (3) the completeness and accuracy of "highly qualified" teacher data reported to the U.S. Department of Education, and (4) the steps the State has taken to ensure that experienced and qualified teachers are equitably distributed among classrooms with poor and minority children and those with their peers.  Exhibit 1, Letter from Margaret Spellings to Chief State School Officers (Oct. 21, 2005).

53.    According to a press release issued by Defendants on August 16, 2006, a true and correct copy of which is attached hereto as Exhibit 5 and incorporated herein by this reference, all 50 states—plus the District of Columbia and Puerto Rico—received extensions, including

California. Exhibit 5, *U.S. Department of Education Releases Results of State Plans for Highly Qualified Teachers in Every Classroom* (Aug. 16, 2006), *available at* http://www.ed.gov/teachers/nclbguide/improve-quality.html.

54.   To date, it is unclear if any state has met the 2006-2007 extended deadline. On July 23, 2007, Defendant Secretary Spellings issued a letter to Chief State School Officers informing them that "[i]n the fall, we will also begin a new round of monitoring in all States; this monitoring will focus intensively on State implementation of the HQT plans. . . ." Exhibit 10, Letter from Margaret Spellings to Chief State School Officers (July 23, 2007), *available at* http://www.ed.gov/policy/elsec/guid/secletter/070723.html. In this letter, the Secretary assured States that they would not be sanctioned for failing to meet the 100% "highly qualified teacher" extended 2006-2007 deadline:

> . . . I intend to maintain the policy of not penalizing States financially solely because they have not reached 100 percent HQT. In the course of monitoring, however, if the Department finds that any particular State is not making an adequate effort to reach the goal of having all core academic classes taught by highly qualified teachers, the Department may take appropriate actions. Such actions may include, but are not limited to, imposition of grant conditions or high-risk status, compliance agreements, or withholding of funds. All decisions about sanctions will be made on a case-by-case basis, taking the circumstances of and conditions in individual States into account.

55.   To date, no state has been sanctioned for failing to meet the "highly qualified teacher" ("HQT") goal. The Secretary's letter notes that, as of July 23, 2007, one state still did not have an approved "HQT" plan setting forth the actions the State and districts would take to reach the HQT goal by the end of the 2006-2007 school year—nearly one year after the Department first requested additional revisions and one month after the 2006-2007 school year had ended. On information and belief, Defendants have not sanctioned this state for failing to submit, by the end of the 2006-

2007 school year, a valid plan setting forth the actions the State and districts would take to reach the HQT goal by the end of the 2006-2007 school year.

56.     Although data is not yet available for the 2006-2007 school year, Secretary Spellings's correspondence, dated July 23, 2007, suggests that the Department anticipates that most, if not all states, were unable to meet the goal of having "highly qualified" teachers in all core classes by the 2006-2007 extended deadline, and unlikely will meet this goal in the near future.  Thus, the many other NCLB provisions relating to "highly qualified" teachers are even more important.  Indeed, it is essential that states and districts establish real plans for ensuring that all students are taught by "highly qualified" teachers and that poor and minority children are not disproportionately taught by non-"highly qualified" teachers.  It is also just as important that accurate information on students' access to "highly qualified" teachers be reported to parents, students, policymakers, and the public.

## FACTUAL ALLEGATIONS

*Defendants' Regulatory Definition of "Highly Qualified" Teacher Conflicts With NCLB*

57.     On December 2, 2002, then Secretary of Education Rod Paige issued final regulations, which became effective January 2, 2003, defining the term "highly qualified teacher."  These regulations conflict with NCLB's statutory definition of "highly qualified" teacher.  Specifically, the regulations provide:

  (a)  In general
      (1) Except as provided in paragraph (a)(3) of this section, a teacher covered under
      § 200.55 must –
            i.    Have obtained full State certification as a teacher, which may include
                 certification obtained through alternative routes to certification; or
            ii.   (A) Have passed the State teacher licensing examination; and (B) Hold a
                 license to teach in the State.
      (2) A teacher meets the requirement in paragraph (a)(1) of this section if the teacher –

i.      Has fulfilled the State's certification and licensure requirements applicable to the years of experience the teacher possesses; or

ii.     *Is participating in an alternative route to certification program* under which –

    (A) The teacher –

        (1) Receives high-quality professional development that is sustained, intensive, and classroom-focused in order to have a positive and lasting impact on classroom instruction, before and while teaching;

        (2) Participates in a program of intensive supervision that consists of structured guidance and regular ongoing support for teachers or a teacher mentoring program;

        (3) Assumes functions as a teacher only for a specified period of time not to exceed three years; and

        (4) Demonstrates satisfactory progress toward full certification as prescribed by the State; and

    (B) The State ensures, through its certification and licensure process, that the provisions in paragraph (a)(2)(ii) of this section are met.

(3) A teacher teaching in a public charter school in a State must meet the certification and licensure requirements, if any, contained in the State's charter school law.

(4) If a teacher has had certification or licensure requirements waived on an emergency, temporary, or provisional basis, the teacher is not highly qualified.

34 C.F.R. § 200.56(a) (emphasis added).

58.     Although the NCLB statute defines a "highly qualified" teacher as one who "*has obtained full State certification as a teacher (including certification obtained through alternative routes to certification)* or passed the State teacher licensing examination, and holds a license to teach in such State," (20 U.S.C. § 7801(23)(A)(i) (emphasis added)), Defendants' regulation *also* includes as "highly qualified" teachers those individuals who are merely "*participating* in an alternative route to certification program" and who have not yet completed full state certification, (34 C.F.R. § 200.56(a)(2)(ii) (emphasis added)).

59.     NCLB also provides that any teacher who has "had certification or licensure requirements waived on an emergency, temporary, or provisional basis" may not be considered

"highly qualified."  20 U.S.C. § 7801(23)(A)(ii).  Contrary to this statutory provision, Defendants'

regulation permits "participant[s] in an alternative route to certification program" (34 C.F.R.

§200.56(a)(2)(ii)) who are serving on a provisional basis "not to exceed three years" (*id.*) to satisfy

the definition of "highly qualified."

*California Has Implemented Defendants' Unlawful Regulation*

60.    The California State Board of Education has adopted "highly qualified" teacher

regulations in order to implement NCLB in California.  In doing so, the California State Board of

Education has taken full advantage of the scope of Defendants' "highly qualified" teacher

regulations and, as such, has deemed intern teachers in California to constitute "highly qualified"

teachers for purposes of NCLB for as long as three years.  *See* 5 C.C.R. §§ 6101, 6110.

*Effect of Defendants' Unlawful Regulation*

61.    As a result of Defendants' regulation permitting teachers *participating* in alternative

certification programs to be deemed "highly qualified" (as opposed to only those alternative route

teachers who have *completed* their programs):

    a.    states and school districts are able to skirt NCLB's provisions by hiring and then

        not prohibiting the concentration of non-"highly qualified" teachers in schools

        serving large numbers of poor and minority students (*see* 20 U.S.C. §§

        6311(b)(8)(C), 6319(a)(2);

    b.    schools receiving Title I funds do not have to inform parents when their child is

        taught for more than four consecutive weeks by an intern or other alternative route

        teacher even though that teacher does not have a full state credential (*see* 20 U.S.C.

        § 6311(h)(6(B)(ii));

c.   states' plans regarding how they will meet NCLB's mandates for "highly qualified" teachers are based on inaccurate data and improper premises where teachers participating in alternative routes are counted as "highly qualified" teachers (*see* 20 U.S.C. §§ 6311(b)(8)(C), 6319(a)(2), 6311(a)(1), 6311(b)(8));

d.   school districts' plans regarding how they will meet NCLB's mandates for "highly qualified" teachers are based on inaccurate data and improper premises where teachers participating in alternative routes are counted as "highly qualified" teachers (*see* 20 U.S.C. §§ 312(b)(1)(N), 6319(a)(3), 6312(c)(1)(1));

e.   states' annual report cards and annual reports containing information on the percentages of classes being taught by "highly qualified" teachers misreport such percentages where teachers participating in alternative routes are counted as "highly qualified" teachers (*see* 20 U.S.C. §§ 6311(h)(1)(C), 6319(b)(1)(B));

f.   school districts' annual report cards and annual reports regarding "highly qualified" teachers in the districts misreport such percentages where teachers participating in alternative routes are counted as "highly qualified" teachers (*see* 20 U.S.C. §§ 6311(h)(2), 6319(b)(1)(A)); and

g.   the U.S. Secretary of Education's annual report to Congress with national- and state-level data regarding "the quality of teachers and the percentage of classes taught by highly qualified teachers," (20 U.S.C. § 6311(h)(4)-(5)), is based on inaccurate, inflated numbers regarding the number of "highly qualified" teachers as states and school districts are labeling teachers participating in alternative certification programs as "highly qualified" in accord with Defendants' improper regulation.

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

62.     Nationally, an estimated 59,000 individuals obtained their teaching credentials in 2005-2006 through alternative route certification programs.  *See* Emily Feistritzer, *Alternative Teacher Certification: A State-by-State Analysis*, Introduction (National Center for Alternative Certification 2007), *available at* http://www.teach-now.org/intro.cfm.  On information and belief, pursuant to Defendants' unlawful regulation, these 59,000 individuals were mislabeled as "highly qualified" while participating in alternative route to certification programs.

63.     The effect of Defendants' regulation defining participants in "alternative route[s] to certification" as "highly qualified" is particularly dramatic in California.  Since Defendants issued the challenged regulation in 2002, the number of intern teachers in California has risen by approximately 50%.  According to a statewide summary of teachers' credentials obtained from the California Department of Education's online "Dataquest" database, a true and correct copy of which is attached hereto as Exhibit 6 and incorporated herein by this reference, in 2001-2002 when NCLB was initially adopted, 7,251 California teachers served on university and district intern credentials.  According to the statewide summary report for 2006-2007, a true and correct copy of which is attached hereto as Exhibit 7 and incorporated herein by this reference, by 2006-2007 the number of university and district interns increased by approximately 50% to a total of 10,716, all of whom are considered "highly qualified."  This significant increase in the number of intern teachers in California has coincided with a significant decrease in the number of emergency-credentialed teachers, who are not considered "highly qualified" under the NCLB or its implementing regulations.  *See* Center for the Future of Teaching and Learning, *The Status of the Teaching Profession 2005*, at 31, *available at* http://www.cftl.org/documents/2005/stp05fullreport.pdf.

FIRST AMENDED COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF

64.     This increase in the number of interns in California has been visited precisely upon the very students for whom Congress has taken special care to ensure access to "highly qualified" teachers.  In California, low-income and minority students are disproportionately taught by intern teachers, when compared with their more affluent, white peers.  Forty-four percent (44%) of all interns are placed in schools serving the highest proportion of minority students, while only 7% of interns serve in schools serving the lowest proportion of minority students.  *See* Center for the Future of Teaching and Learning, *Teaching and California's Future: California's Teaching Force 2006*, at 21, *available at* http://www.cftl.org/documents/2006/TCF2006FINAL.pdf.

65.     The distribution of intern teachers by school achievement shows a similar pattern in California.  Fifty-eight percent of interns teach in schools that fall in the lowest achievement quartile on California's Academic Performance Index ("API"), while only 6% teach in schools in the highest achievement quartile.  *See* Center for the Future of Teaching and Learning, *The Status of the Teaching Profession 2005*, at 73.

66.     Plaintiff Candice Johnson, daughter of Plaintiff Sonya Renee, attends Washington Prep High School, a low-performing school in Los Angeles Unified School District ("LAUSD") with a student population comprised primarily of low-income minority students.  Washington Prep is ranked "1" on California's Academic Performance Index ("API"), which means it is among the bottom 10% of schools in California in terms of academic achievement.  It is a Year 5 "Program Improvement" school under NCLB, which means it has failed to meet Adequate Yearly Progress ("AYP") benchmarks and must implement additional services and interventions to increase student achievement.  Nearly all of the students at Washington Prep are African-American or Latino.  Two-thirds of the students qualify for the free or reduced price school lunch program, the indicator typically used to determine the socioeconomic status of a public school population.  During the

FIRST AMENDED COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF

2006-2007 school year, 11% of teachers at Washington Prep High School were "intern" teachers. *See* Exhibit 2. Defendants—as well as the State of California and LAUSD—labeled these interns as "highly qualified" even though they were still in training to obtain their full California teaching credential.

67.    Plaintiff B. Doe, daughter of Plaintiff N. Doe, attends Longwood Elementary School, a low-performing school in HUSD with a student population comprised primarily of low-income minority students. Longwood Elementary is ranked a "2" on the API. It is a Year 2 "Program Improvement" school under NCLB. Ninety-three percent of the students at Longwood are students of color. Over three-quarters qualify for free or reduced price lunch. During the 2006-2007 school year, 3% of teachers at Longwood were "intern" teachers; data for the 2007-2008 school year are not yet available. *See* Exhibit 11. Defendants—as well as the State of California and HUSD—labeled these interns as "highly qualified" even though they are still in training to obtain their full California teaching credential.

68.    Plaintiffs Danielle Rubio and Stephanie Rubio, daughters of Plaintiff Mariel Rubio, attend Hawthorne High School in CUHSD, a low-performing school with a student population comprised primarily of low-income minority students. Hawthorne is ranked "2" on California's API. It is a Year 5 "Program Improvement" school under NCLB. Over 90% of the students at Hawthorne are African-American or Latino. Over two-thirds of students qualify for the free or reduced price school lunch program. During the 2006-2007 school year, 15% of teachers at Hawthorne High School were "intern" teachers; data for the 2007-2008 school year are not yet available. *See* Exhibit 3. Defendants—as well as the State of California and CUHSD—labeled these interns as "highly qualified" even though they were still in training to obtain their full California teaching credential.

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

69.     During most of the 2006-2007 school year, Plaintiff Danielle Rubio attended Lawndale High School in CUHSD.  Over 90% of Lawndale students are students of color.  Nearly two-thirds qualify for the free or reduced price school lunch program.  During the 2006-2007 school year, 11% of teachers at Lawndale High School were "intern" teachers.  *See* Exhibit 3.  Defendants—as well as the State of California and CUHSD—labeled these interns as "highly qualified" even though they were still in training to obtain their full California teaching credential.

70.     Plaintiff Daisy Gonzalez, daughter of Plaintiff Guadalupe Gonzalez, attends New Tech High School, a small learning community within Jefferson High School in LAUSD, a low-performing school with a student population comprised primarily of low-income minority students. (Separate data for New Tech High School, which is within Jefferson High School, is not available from the California Department of Education's "Dataquest" database.)  Jefferson is ranked "1" on California's API.  It is a Year 5 "Program Improvement" school under NCLB.  Nearly all of the students at Jefferson are African-American or Latino.  Eighty-six percent of the students qualify for the free or reduced price school lunch program.  During the 2006-2007 school year, 12.4% of teachers at Jefferson High School were "intern" teachers.  *See* Exhibit 2.  Defendants—as well as the State of California and LAUSD—labeled these interns as "highly qualified" even though they were still in training to obtain their full California teaching credential.

71.     Plaintiffs Jazmine Johnson, Adriana Ramirez, and Jane Doe attend Richmond High School, a low-performing school in WCCUSD with a student population comprised primarily of low-income minority students.  Richmond High School is ranked as a "1" on the API.  It is a Year 5 "Program Improvement" school under NCLB.  Ninety-seven percent of the students at Richmond High School are students of color.  Nearly three-quarters qualify for the free or reduced price school lunch program.  During the 2006-2007 school year, at least one in eight teachers at

FIRST AMENDED COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF

Richmond High School was an "intern" teacher. *See* Exhibit 4. Defendants—as well as the State of California and WCCUSD—labeled these interns as "highly qualified" even though they were still in training to obtain their full California teaching credential.

72.    Plaintiff CFJ's members attend schools in districts with large numbers of intern teachers who are mislabeled as "highly qualified" under Defendants' regulation. For example, according to a district summary of teachers' credentials, obtained from the California Department of Education's online "Dataquest" database, a true and correct copy of which is attached hereto as Exhibit 8 and incorporated herein by this reference, in the Oakland Unified School District— where many CFJ members reside and attend school—10.7% of teachers (278 teachers total) were "intern" teachers during the 2006-2007 school year. According to a district summary of teachers' credentials, a true and correct copy of which is attached hereto as Exhibit 9 and incorporated herein by this reference, in the East Side Union High School District—where many CFJ members reside and attend school—9.3% of teachers (103 teachers total) were "intern" teachers during the 2006-07 school year.

73.    At Oakland Technical High School ("Tech") in OUSD, where CFJ member Sayra Reyes attends school and is taught by an intern teacher, 6% of teachers were interns during the 2006-2007 school year. *See* Exhibit 8. Oakland Tech is ranked "2" on the API. It is a Year 3 "Program Improvement" school under NCLB. Over 90% of the students at Tech are students of color. Nearly half qualify for the free or reduced price school lunch program. Defendants—as well as the State of California and OUSD—label intern teachers at Tech "highly qualified" even though they are still in training to obtain their full California teaching credential.

74.    Plaintiff California ACORN's members and/or children of members attend schools in districts with large numbers of intern teachers who are mislabeled as "highly qualified" under

Defendants' regulation, such as Oakland Unified School District, East Side Union High School District in San Jose and LAUSD.  In LAUSD—where many California ACORN members reside and attend school, including Plaintiffs Sonya Renee, Candice Johnson, Guadalupe Gonzalez, and Daisy Gonzalez—7.3% of teachers, or 2,538 teachers, were "interns" during the 2006-2007 school year.  *See* Exhibit 2.  LAUSD exemplifies the inequitable distribution of intern teachers, as many schools in LAUSD had over 25% intern teachers during the 2006-2007 school year.  *See* Exhibit 2.

## PLAINTIFFS' CLAIMS FOR RELIEF

### *First Claim*

### *(5 U.S.C. § 706 – Violation of Administrative Procedure Act)*

75.    Plaintiffs reallege and incorporate by reference paragraphs 1 to 74, above.

76.    Defendants' final regulation defining "highly qualified" teachers (34 C.F.R. § 200.56(a)(2)(ii)) constitutes an "agency action" (5 U.S.C. § 551(13)) under the APA.  Defendants' regulatory standard, which deems "participant[s]" in alternative routes to certification programs as "highly qualified" (34 C.F.R. § 200.56(a)(2)(ii)) even though they have not yet completed a teacher training program and obtained "full State certification" (20 U.S.C. § 7801(23)(A)), conflicts with the definition of the term "highly qualified" under the NCLB statute. Defendants have, thus, acted in a manner that is arbitrary, capricious, an abuse of discretion, and otherwise not in accordance with law, and have acted in excess of their statutory authority, in violation of the APA, 5 U.S.C. § 706(2)(A) and (D).

77.    Defendants' adoption and promulgation of this regulation adversely affects and aggrieves Plaintiffs as described above.

### *Second Claim*

### *(28 U.S.C. § 2201 – Declaratory Relief)*

78.    Plaintiffs reallege and incorporate by reference paragraphs 1 to 77, above.

79.    An actual and substantial controversy exists between Plaintiffs and Defendants as to their respective legal rights and duties.  Plaintiffs contend that Defendants' regulation is unlawful and in excess of Defendants' statutory authority.  Plaintiffs are informed and believe, and thereby allege, that Defendants contend to the contrary.

80.    A declaration of legal rights and duties is needed from this Court to resolve the controversy between the parties.

*Third Claim*

*(28 U.S.C. § 2202 – Injunctive Relief)*

81.    Plaintiffs reallege and incorporate by reference paragraphs 1 to 80, above.

82.    If an injunction does not issue enjoining Defendants from further use of their unlawful standard of "highly qualified" teachers set forth at 34 C.F.R. § 200.56(a)(2)(ii) which deems teachers participating in alternative preparation programs as "highly qualified," Plaintiffs will continue to suffer by not receiving the full benefit of the "highly qualified" teacher provisions of NCLB intended by Congress.  As a result of Defendants' unlawful regulation, states (including California), districts and schools will continue to mislabel intern teachers and other alternative preparation program teachers as "highly qualified" and will not thereby plan to deliver, ultimately deliver, and accurately report delivery of teachers to Plaintiffs' classrooms who have received full state certification and who are truly "highly qualified" as Congress intended.

83.    In addition, if an injunction does not issue from this Court, Defendants themselves will submit to Congress, pursuant to NCLB (*see* 20 U.S.C. § 6311(h)(5)), their inaccurate and misleading 2005-2006 report—as well as all future such reports—on teacher quality and the percentage of classes nationwide taught by "highly qualified" teachers.  Using these reports,

Congress will make decisions regarding national education policy and the reauthorization of the No Child Left Behind Act based on an inaccurate, falsely-inflated percentage of classes nationwide taught by "highly qualified" teachers.

84.    Plaintiffs will be irreparably harmed by these injuries.

85.    Plaintiffs have no plain, speedy, and adequate remedy at law.

86.    Defendants, if not enjoined by the Court, will continue to authorize states, districts, and schools to utilize a watered-down standard of a "highly qualified" teacher contrary to Congressional intent and will continue to issue reports to Congress based on the substandard definition of "highly qualified" set forth in Defendants' regulation, in derogation of the rights of Plaintiffs.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiffs respectfully request that this Court:

1.    Enter a declaratory judgment that Defendants' regulation set forth at 34 C.F.R. § 200.56(a)(2)(ii), defining a "highly qualified" teacher as one who "is participating in an alternative route to certification program," is unlawful and void pursuant to the APA (5 U.S.C. § 706) for the reason that Defendants' regulation contravenes the definition of "highly qualified" established by Congress in the No Child Left Behind Act (20 U.S.C. § 7801(23)(A));

2.    Enjoin defendants from utilizing, enforcing, or relying upon 34 C.F.R. § 200.56(a)(2)(ii) in any way, including revising official guidance issued to third parties to reflect the fact that alternative route participants are not to be considered "highly qualified" teachers;

3.  Enjoin Defendants from submitting the 2005-2006 report to Congress on teacher quality and the percentage of classes nationwide taught by "highly qualified" teachers, pursuant to 20 U.S.C. § 6311(h)(5)—as well as any further outstanding reports or future reports due to Congress relating to "highly qualified" teachers under NCLB—that fail to designate teachers participating in alternative certification programs as not "highly qualified";

4.  Order Defendants to notify Congress that the 2002-2003 report provided to Congress pursuant to 20 U.S.C. § 6311(h)(5) relied on an unlawful definition of "highly qualified" teacher and was therefore inaccurate;

5.  Order Defendants to notify states that:  (a) Defendants' regulation defining a "highly qualified" teacher as one who "is participating in an alternative route to certification program" (34 C.F.R. § 200.56(a)(2)(ii)) is unlawful and void; and (b) states should use the definition of "highly qualified" provided in the No Child Left Behind Act (20 U.S.C. § 7801(23)(A)) and in 34 C.F.R. § 200.56(a) absent 34 C.F.R. § 200.56(a)(2)(ii) in complying with their "highly qualified" teacher obligations under NCLB and in enforcing compliance by individual districts and schools, including, but not limited to, obligations pursuant to 20 U.S.C. § 6319(a) (students' right to be taught by a "highly qualified" teacher), 20 U.S.C. §§ 6311(a)(1), 6311(b)(8) (state plan ensuring that schools receiving Title I funding will provide "highly qualified" instructional staff), 20 U.S.C. § 6311(h)(4)(G) (annual report to Secretary on teacher quality), 20 U.S.C. § 6311(b)(8)(C) (statewide plan for meeting the "highly qualified" teacher mandate, including for "ensur[ing] that poor and minority children are not taught at higher rates than other children by inexperienced, unqualified, or out-of-field teachers. . . "), 20

36

U.S.C. § 6311(h)(1)(C) (state annual report card), 20 U.S.C. §§ 6312(b)(1)(N), 6312(c)(1)(I) (district plan), 20 U.S.C. § 6311(h)(2) (district annual report card), and 20 U.S.C. § 6311(h)(6)(B)(ii) (four week letter to parents);

6. Award Plaintiffs their costs, attorneys' fees, and other disbursements in this action pursuant to the Equal Access to Justice Act, 28 U.S.C. § 2412(d); and

7. Grant Plaintiffs such other and further relief as the Court may deem just and proper.

Dated: November 27, 2007

Respectfully submitted,

_____

JOHN T. AFFELDT
JENNY PEARLMAN
TARA KINI
PUBLIC ADVOCATES, INC.
Attorneys for Plaintiffs

37

FIRST AMENDED COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF