JOHN T. AFFELDT (SBN 154430)
JENNY PEARLMAN (SBN 224879)
TARA KINI (SBN 239093)
PUBLIC ADVOCATES, INC.
131 Steuart Street, Suite 300
San Francisco, California 94105
Tel. (415) 431-7430
Fax (415) 431-1048
Email: jaffeldt@publicadvocates.org
       jpearlman@publicadvocates.org
       tkini@publicadvocates.org

JEFFREY SIMES (NY SRN 2813533), appearing *pro hac vice*
GOODWIN PROCTER LLP
599 Lexington Avenue
New York, New York 10022
Tel: (212) 813-8879
Fax: (212) 355-3333
Email: jsimes@goodwinprocter.com

Attorneys for PLAINTIFFS
(Additional attorneys listed on following page)

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| SONYA RENEE *et al.*,<br><br>                Plaintiffs,<br><br>   v.<br><br>MARGARET SPELLINGS, in her official capacity; UNITED STATES DEPARTMENT OF EDUCATION,<br><br>                Defendants. | Case No. 07-04299 PJH<br><br>**PLAINTIFFS' REPLY IN SUPPORT OF MOTION FOR LEAVE TO PROCEED USING FICTITIOUS NAMES AND TO SUBMIT DECLARATIONS UNDER SEAL**<br><br>Time: 9:00<br>Date: January 30, 2008 |

PATRICK THOMPSON (SBN 160804)
NICOLE E. PERROTON (SBN 233121)
ELIZABETH F. STONE (SBN 239285)
GOODWIN PROCTER LLP
101 California Street # 1850
San Francisco, California 94111
Tel: (415) 733-6000
Fax: (415) 677-9041
Email: pthompson@goodwinprocter.com

DAVID B. COOK (DC BN 113522), appearing *pro hac vice*
GOODWIN PROCTER LLP
901 New York Avenue, N.W.
Washington, D.C. 20001
Tel: (202) 346-4000
Fax: (202) 346-4444
Email: dcook@goodwinprocter.com

Attorneys for PLAINTIFFS

# Table of Contents

INTRODUCTION ..................................................................................................................................1

ARGUMENT........................................................................................................................................2

    I.   DEFENDANTS DO NOT APPLY THE APPLICABLE NINTH CIRCUIT TEST, NOR DISPUTE THAT FOUR OF THE FIVE FACTORS HAVE BEEN MET .........................................................................................2

    II.  DEFENDANTS' NOVEL ATTEMPT TO CREATE A NEW STANDARD FOR ALLOWING PLAINTIFFS TO PROCEED ANONYMOUSLY SHOULD BE REJECTED AS SQUARELY IN CONFLICT WITH WELL-ESTABLISHED NINTH CIRCUIT PRECEDENT ...................................................................................4

    III. DEFENDANTS' PARTIAL APPLICATION OF AN INAPPLICABLE FOURTH CIRCUIT TEST SHOULD BE DISREGARDED .......................................................................................................................5

    IV. PLAINTIFFS DO NOT SEEK A BLANKET RULE OF PROTECTION FOR UNDOCUMENTED LITIGANTS BUT A SINGLE RULING IN THIS CASE BASED ON ITS SPECIFIC FACTS AND CIRCUMSTANCES .................7

    V.  AN ADDITIONAL CONSIDERATION WEIGHING IN FAVOR OF ANONYMITY HERE IS THAT IMMIGRANTS ARE SEEKING TO EXERCISE THEIR CONSTITUTIONALLY PROTECTED RIGHT TO A FREE PUBLIC EDUCATION ........................................................................................................................8

    VI. DEFENDANTS' ATTEMPT TO CHARACTERIZE THE DOE PLAINTIFFS AS SUPERFLUOUS TO THIS LITIGATION IS DISINGENUOUS ................................................................................................9

        A.  Contrary to Defendants' Assertion, It is Plaintiffs' Prerogative to Decide Whether to Bring Suit ................................................................................................................9

        B.  Immigrant Parents and Students are Particularly Burdened by Defendants' Regulation, and Therefore Have Heightened Interest in Challenging It ..........................................9

        C.  The Doe Plaintiffs Bring Important Facts to the Case Such That Their Exclusion Could Interfere With This Court's Ability to Reach a Decision on the Merits......................10

    VII. PLAINTIFFS DO NOT SEEK TO LIMIT FEDERAL OFFICIALS' AUTHORITY TO ENFORCE IMMIGRATION LAWS OUTSIDE THE BOUNDS OF THIS LITIGATION....................................................................11

    VIII. COMPLIANCE WITH GENERAL ORDER NO. 53 REGARDING THE PRIVACY OF MINORS DOES NOT OBVIATE THE NEED FOR THIS MOTION .................................................................................12

CONCLUSION...................................................................................................................................13

# **TABLE OF AUTHORITIES**

**Cases**

*Alyssa C. v. Palo Alto Hous. Corp.*, 2007 U.S. Dist. LEXIS 24183 (N.D. Cal. 2007) ........................ 7

*City of L.A. v. Lyons*, 461 U.S. 95 (1983) ................................................................................ 11

*Day v. Sebelius*, 227 F.R.D. 668, 679 (D. Kansas 2005). ............................................... 5, 6, 7, 8

*Doe v. Advanced Textile Corp.*, 214 F.3d 1058 (9th Cir. 2000) ............................................ *passim*

*Doe v. Merten*, 219 F.R.D. 387 (E.D. Va. 2004) ................................................................ *passim*

*James v. Jacobson*, 6 F.3d 233 (4th Cir. 1993) .......................................................................... 5, 6

*Lozano v. City of Hazleton*, 496 F. Supp. 2d 477 (M.D. Pa. 2007) ............................................ 6

*Plyer v. Doe*, 457 U.S. 202 (1982) ........................................................................................ *passim*

*Roe v. Providence Health System-Oregon*, 2007 U.S. Dist. LEXIS 50656 (D. Or. 2007) ............ 7

**Federal Statutes**

8 U.S.C. § 1373 ......................................................................................................................... 2, 12

20 U.S.C. § 7801 ............................................................................................................................ 9

20 U.S.C. § 6319 .......................................................................................................................... 10

**State Statute**

Cal. Educ. Code § 48200 .............................................................................................................. 8

**Other Authorities**

Northern District of Californian, General Order No. 53 (Privacy) ......................................... 12, 13

Patricia Gándara et al., "English Learners in California Schools: Unequal resources, unequal outcomes," Education Policy Analysis Archives, 11(36), (Oct. 7, 2003), *available at* http://epaa.asu.edu/epaa/v11n36/ .............................................................................................. 10

ii

REPLY IN SUPPORT OF MTN FOR LEAVE TO PROCEED USING FICTITIOUS NAMES
CASE NO. 07-04299 PJH

**INTRODUCTION**

Defendants' Opposition ("Opp.") concedes that the applicable test to employ in determining Plaintiffs' motion to proceed using fictitious names on behalf of two undocumented students and a parent[1] in this case is the five factor balancing test set forth by the Ninth Circuit in *Doe v. Advanced Textile Corp.*, 214 F.3d 1058, 1068 (9th Cir. 2000). Defendants Opposition does not in fact dispute that Plaintiffs have met four of the five factors, namely, that the threatened injury is severe, that Plaintiffs' fears are reasonable, that Plaintiffs are vulnerable to retaliation, and that Defendants would not suffer prejudice should the Court grant Plaintiffs' request. Rather, the Opposition only addresses one factor—the public's interest in knowing the parties' names—which by itself does not justify disclosing Plaintiffs' names here.

Rather than argue the merits of Plaintiffs' motion based on the applicable *Advanced Textile* test, Defendants pursue two primary arguments to urge denial. First, Defendants ask the Court to adopt an entirely novel and different legal rule for determining when a plaintiff can proceed under a fictitious name. Defendants' proposed rule—requiring that plaintiffs' rationale for seeking anonymity directly relates to the merits of plaintiffs' legal claim—lacks any authority and is directly contradicted by *Advanced Textile* itself. Secondly, Defendants employ a partial application of a different Fourth Circuit test, which ultimately sheds little light here given the distinguishable standard and facts at issue.

In addition, Defendants argue that allowing Doe plaintiffs to proceed anonymously here would amount to a blanket rule that all undocumented immigrant plaintiffs will be permitted to proceed anonymously in any federal court. Opp. at 7. This argument too is without merit. It is well-established in *Advanced Textile* and in all the Doe cases that these determinations require a *case-by-case analysis* to determine whether in any given matter a plaintiff should be permitted to proceed anonymously—not the application of a blanket rule. Here, where the Defendants are the federal

---

[1] Plaintiffs will stipulate that both Jane Doe and her *guardian ad litem* John Doe have an undocumented immigration status, to the extent that this fact was not already apparent in Jane Doe's Declaration. *See* Opp. at 3, n. 2.

1

REPLY IN SUPPORT OF MTN FOR LEAVE TO PROCEED USING FICTITIOUS NAMES
CASE NO. 07-04299 PJH

government, where frequent immigration raids specifically target the Doe plaintiffs' communities (Davenport Decl. at ¶¶ 4-5), and where this is a high-profile case generating significant media attention (Kini Decl. at ¶¶ 4-5), the unique circumstances of this case weigh heavily in favor of permitting the Doe plaintiffs to proceed anonymously.

Moreover, in cases, as here, involving access to elementary and secondary public education, the Supreme Court has recognized that undocumented public school students have a constitutionally protected right to equal educational opportunity, that they and their parents are entitled to enforce that right by seeking redress in the courts and, implicitly, that they may require the protection of anonymity to do so. *See Plyler v. Doe*, 457 U.S. 202 (1982). Thus, the subject matter of this suit provides an additional factor that only further weighs in favor of anonymity.

Finally, Defendants' contention that the eleven other individual plaintiffs who are named in this case can sufficiently represent the interests of the Doe plaintiffs (Opp. at 1, 6) indicates Defendants' true purpose here: to use this motion as a backdoor means of excluding from this case the Doe plaintiffs—who bring particularly strong individual facts for purposes of establishing standing. The court should not permit them to do so.

Because all five factors of the *Advanced Textile* balancing test weigh heavily in favor of permitting the Doe plaintiffs to proceed anonymously, and because this case involves Plaintiffs' rights to public education, the court should grant Plaintiffs' motion for leave to proceed using fictitious names. A narrowly-tailored order will allow the court to protect the Doe plaintiffs' identity while respecting federal laws which prohibit a government official from restricting any government entity or official from communicating an individual's immigration status to ICE. *See* 8 U.S.C. § 1373(a).

## ARGUMENT

### I. DEFENDANTS DO NOT APPLY THE APPLICABLE NINTH CIRCUIT TEST, NOR DISPUTE THAT FOUR OF THE FIVE FACTORS HAVE BEEN MET.

Defendants make reference to the Ninth Circuit's controlling case, yet they never articulate the five factor *Advanced Textile* test and, more importantly, they never actually apply it. In fact, the

2

1  Opposition utterly fails to dispute that Plaintiffs have met the first four factors of the test.  ***First***, Defendants "do not dispute that the plaintiffs have alleged a risk of deportation and economic harm." Opp. at 2.  Even more so, Defendants no where dispute that Plaintiffs have made a showing that the threatened injury of deportation, familial separation, and economic harm is *severe*, *see Advanced Textile Corp.*, 214 F.3d at 1068.  ***Second***, Defendants do not dispute that Plaintiff Does' fears are *reasonable* given the heightened activity by the Bureau of Immigration and Customs Enforcement ("ICE") in their area and the federal government's current enforcement efforts, *see id.*.  ***Third***, Defendants do not dispute that Plaintiffs are in fact *vulnerable to retaliation* and deportation here, *see id.*.  Indeed, nowhere do Defendants eschew the notion that they would pass on to ICE Plaintiffs' actual names and/or other identifying information they might possibly learn in this lawsuit;[2] nor do Defendants dispute Plaintiffs' showing that this is a case that has drawn significant national and state media coverage, further exposing Plaintiffs to identification and deportation were their actual names used even without any referral to ICE by Defendants.  And ***fourth***, Defendants do not assert that they would suffer any *prejudice* in this case were they prevented from knowing Plaintiff Does' actual names given the legal nature of the questions at issue in this case, *see id.*.[3]  *See generally* Opposition.

The only *Advanced Textile* factor Defendants squarely address is the fifth factor—the public's interest in knowing the parties' names.  Yet that factor in isolation does not justify disclosing Plaintiffs' names here, especially given, as Plaintiffs have asserted, that factors one through four have been met as well as the greater public interest in having this important case proceed to a merits determination.  *See* Plaintiffs' Opening Brief at 4-8.

---

[2] In fact, Defendants' argument that Plaintiffs seek "an order placing a restriction on federal officials' ability to share plaintiffs' identities with immigration authorities and to comply [sic] and enforce federal law" (Opp. at 3:19-4:2) suggests that Defendants may well report Plaintiffs to ICE were they to learn their true identities through this litigation.

[3] Indeed, Defendants concede that this case presents only a question of law (Opp. at 6:14-15), and acknowledge that "the Doe plaintiffs' individual circumstances have limited relevance" (*Id.* at 6:21-22).

3

REPLY IN SUPPORT OF MTN FOR LEAVE TO PROCEED USING FICTITIOUS NAMES
CASE NO. 07-04299 PJH

**II.    DEFENDANTS' NOVEL ATTEMPT TO CREATE A NEW STANDARD FOR ALLOWING PLAINTIFFS TO PROCEED ANONYMOUSLY SHOULD BE REJECTED AS SQUARELY IN CONFLICT WITH WELL-ESTABLISHED NINTH CIRCUIT PRECEDENT.**

Rather than arguing the applicable legal standard, Defendants attempt to invent their own. Defendants contend that Plaintiffs' motion should be denied because "this case does not require the presence of anonymous plaintiffs or call into question any constitutional or statutory rights unique to undocumented immigrants." Opp. at 2; *see also* Opp. at 1. Defendants argue that persons with a sensitive immigration status should only be permitted to proceed anonymously when they "challenge the constitutionality of [] immigration laws or [] laws targeted at undocumented immigrants" (Opp. at 3), in circumstances when the merits of the case directly relate to the anonymous plaintiffs' immigration status (Opp. at 5).

Defendants, however, cite no authority for this broad new proposition, and Plaintiffs are aware of none. At most, Defendants rely on inapplicable authority, *see* Opp. at 5:12-19, for the unremarkable proposition that when parties seek anonymity *precisely because* they are challenging a criminal statute that they have violated or wish to violate (like the abortion statute in *Roe v. Wade*), then the merits of their claim will inevitably relate to their request for anonymity. However, as Defendants acknowledge, challenging a criminal statute and risking criminal prosecution is only one of the three general situations that the Ninth Circuit has recognized where anonymity has been granted. Opp. at 2, *citing Advanced Textile Corp.*, 214 F.3d at 1067-68. Plaintiffs here are not challenging a criminal statute under which they risk prosecution. Rather, they are seeking to proceed under fictitious names pursuant to the other two types of generally recognized situations: (1) "when identification creates a risk of retaliatory physical or mental harm, [and] (2) when anonymity is necessary 'to preserve privacy in a matter of sensitive and highly personal nature.'" *Id.* (internal citations omitted). As to both of these two types of situations justifying anonymity, no court Plaintiffs are aware of has required that the merits of the plaintiffs' case must relate to the reason Plaintiffs are seeking anonymity. Indeed, such a blanket rule would automatically exclude any number of meritorious cases from prosecution merely because a plaintiff's reason for fearing retaliation or his or her wish to preserve a private matter—no matter how real—did not relate to the merits of their claim.

4

Not only do Defendants fail to advance any authority for their novel and far-reaching proposed new rule for limiting *Advanced Textile*, but this Court need look no further than *Advanced Textile* itself to reject Defendants' proposition. Like the Doe plaintiffs in the case at bar, the plaintiffs in *Advanced Textile* were immigrants with a sensitive immigration status who were asserting legal rights *unrelated to their immigration status*—namely their employers' unfair labor practices under the Fair Labor Standards Act. 214 F.3d at 1063. The defendant employers there had the power to terminate the workers and—like the Defendants here—cause them to be deported. *Id.* at 1071-72. The Ninth Circuit weighed these facts when considering the severity of the threatened harm, the reasonableness of plaintiffs' fear of retaliation, and plaintiffs' vulnerability to retaliation, ultimately upholding plaintiffs' request to proceed anonymously. Contrary to Defendants' assertion, the fact that the plaintiffs in *Advanced Textile* were legal as opposed to illegal immigrants is a distinction without a difference. The five factor test was employed without any requirement that the merits of plaintiffs' claim require anonymous plaintiffs or otherwise relate to the asserted basis for anonymity.

### III. DEFENDANTS' PARTIAL APPLICATION OF AN INAPPLICABLE FOURTH CIRCUIT TEST SHOULD BE DISREGARDED.

Defendants rely on *Doe v. Merten*, 219 F.R.D. 387 (E.D. Va. 2004)—in which plaintiffs challenged the policy of Virginia's state colleges and universities to deny admission to undocumented immigrants—to urge this Court to deny Plaintiffs' motion. Opp. at 4-5. There, the court determined that undocumented status is not the type of "personal information of the utmost intimacy" that warrants allowing plaintiffs to proceed anonymously. *Merten*, 219 F.R.D. at 392. Defendants' reliance on *Merten* is inapposite and, ultimately, can provide little guidance to this case.

First, *Merten* relied on the Fourth Circuit's test set forth in *James v. Jacobson*, (219 F.R.D. 387, 391-92 (citing *James v. Jacobson*, 6 F.3d 233, 238 (4th Cir. 1993)), while the appropriate test in the Ninth Circuit is that set forth in *Advanced Textile*.[4] The Fourth Circuit's test in *Jacobson,* while

---

[4] Defendants' reliance on *Day v. Sebelius*, (Opp. at 4-5), is similarly inappropriate, as there the court also employed the Fourth Circuit's test from *Jacobson*. 227 F.R.D. 668, 679-80 (D. Kansas 2005).

5

REPLY IN SUPPORT OF MTN FOR LEAVE TO PROCEED USING FICTITIOUS NAMES
CASE NO. 07-04299 PJH

bearing some of the same elements as *Advanced Textile,* simply does not map onto the Ninth Circuit's test sufficiently to be helpful to Defendants here.[5]  For example, the conclusion in *Merten* (and in *Day* as well) that undocumented immigration status is not the type of personal information that warrants abandoning the presumption of open judicial proceedings meant that plaintiffs did not prevail on the first factor under *Jacobson*.  However, under *Advanced Textile,* whether some bit of plaintiff information is highly personal and private is not even an independent factor.  Rather, it is subsumed under the first *Advanced Textile* factor, the severity of the harm, *Advanced Textile Corp.,* 214 F.3d at 1068.  That factor can also be met, as here, by demonstrating that serious consequences like deportation, familial separation and economic harm may result from identification, *i.e.,* consequences separate and apart from the mere disclosure of sensitive, private information.

Second, contrary to Defendants' suggestion (Opp. at 4:18-19), the decisive conclusion for the *Merten* court was not its determination on the first factor, *i.e.,* that it considered information regarding immigration status unworthy of privacy protection.[6]  What proved decisive in *Merten* was that *four* of the five *Jacobson* factors weighed in favor of denying the motion. 219 F.R.D. at 396.  The critical factor, if any, was the second *Jacobson* prong concerning the risk of retaliation.  In *Merten,* the Doe plaintiffs had already identified themselves to the federal government by applying for legal status.  Thus, the plaintiffs there had already exposed their actual identities to the federal government and had

---

[5] The five *Jacobson* factors used in *Merten* were:  (1) whether the party seeking anonymity is merely seeking to avoid the annoyance and criticism attendant to any litigation or is to preserve privacy in a matter of sensitive and highly personal nature; (2) whether identification poses a risk of retaliatory physical or mental harm to the requesting party or even more critically, to innocent third parties; (3) the ages of the persons for whom anonymity is sought; (4) whether the action is against a governmental or private party; and relatedly (5) the risk of unfairness to the opposing party from allowing plaintiffs to proceed anonymously.  *Merten*, 219 F.R.D. at 391-92, *citing James v. Jacobson,* 6 F.3d 233, 238 (4th Cir. 1993).

[6] Plaintiffs, of course, disagree with the reasoning of this aspect of *Merten*.  Indeed, the only other federal court to address the *Merten/Day* conclusion that "unlawful or problematic immigration status is simply not the type of 'personal information of the utmost privacy' that warrants abandoning the presumption of openness in judicial proceedings" correctly rejected this holding.  *See Lozano v. City of Hazleton*, 496 F. Supp. 2d 477, 507 (M.D. Pa. 2007).

suffered no adverse consequences. *Id.* at 393.[7] Here there is no evidence that the federal government already has information about the identities and immigration status of the three Doe plaintiffs, and it is reasonable for Plaintiffs to believe—given current immigration enforcement by the federal government and the frequency of immigration raids in Plaintiffs' communities (Davenport Decl. at ¶¶ 4-5)—that "the federal government would seek to deport any plaintiff because he or she is a plaintiff in this suit." 219 F.R.D. at 393. Moreover, unlike in *Merten* (*id.* at 394), disclosure of Plaintiffs' identities in this case is unnecessary to permit Defendants to challenge Plaintiffs' standing. Finally, unlike in *Merten* (*id.* at 393-94), the fact that two of the three Doe plaintiffs here are minors also weighs in favor of their anonymity.

### IV. PLAINTIFFS DO NOT SEEK A BLANKET RULE OF PROTECTION FOR UNDOCUMENTED LITIGANTS BUT A SINGLE RULING IN THIS CASE BASED ON ITS SPECIFIC FACTS AND CIRCUMSTANCES.

Defendants argue that, if the Court grants Plaintiffs' motion, undocumented immigrant plaintiffs will have "carte blanche to proceed anonymously in federal litigation regardless of the nature of the claims alleged in the Complaint." Opp. at 7:17-18. Contrary to Defendants' assertion, (Opp. at 7:13-23), Plaintiffs do not contend that undocumented immigrants—who in general share a fear of deportation—should be permitted to sue anonymously in any case at any time. As set forth in *Advanced Textile*, a court must conduct a case-by-case analysis of the five factors in order to determine whether "the party's need for anonymity outweighs prejudice to the opposing party and the public's interest in knowing the party's identity." *Advanced Textile Corp.*, 214 F.3d 1058, 1068. *See also Roe v. Providence Health System-Oregon*, 2007 U.S. Dist. LEXIS 50656 (D. Or. 2007) (citing *Doe v. Advanced Textile Corp.,* 214 F.3d 1058 (9th Cir. 2000)); *accord Alyssa C. v. Palo Alto Hous. Corp.*, 2007 U.S. Dist. LEXIS 24183, 1-5 (N.D. Cal. 2007). As set forth above and in Plaintiffs' Opening Brief, Plaintiffs satisfy the *Advanced Textile* factors and should be allowed to proceed anonymously given the facts and circumstances of this case.

---

[7] Similarly, in *Day*, the plaintiffs were taking all necessary steps to obtain legal status, and the court found it unlikely that the plaintiffs would be subject to retaliation. *Day,* 227 F.R.D. at 680.

### V. AN ADDITIONAL CONSIDERATION WEIGHING IN FAVOR OF ANONYMITY HERE IS THAT IMMIGRANTS ARE SEEKING TO EXERCISE THEIR CONSTITUTIONALLY PROTECTED RIGHT TO A FREE PUBLIC EDUCATION.

This case is also unique in that it involves undocumented students and parents seeking to enforce their rights to public education. As the Supreme Court established in *Plyler v. Doe*, undocumented students' right to a public education is constitutionally protected, such that, where a state chooses to provide free public education, it must do so on an equal basis for all students alike. 457 U.S. 202, 230. The *Plyler* decision recognizes also, as Defendants concede (Opp. at 3 n.1), that undocumented immigrants have standing to assert their rights in federal court. *Id.* at 210-11. It stands to reason, therefore, that at least where undocumented immigrants are seeking to gain access to equal educational opportunity, courts should take special care to ensure that undocumented litigants have equal access to the courts to assert their grievances against the government. It would render *Plyler* but a pipe dream were the education promised to all on equal terms there made unenforceable by the threat or the reality of retaliation and deportation by the government. In order to gain the equal access to the courts that they are guaranteed under federal law, the Doe plaintiffs here—as did the plaintiffs in *Plyler*—require the protection of anonymity.[8]

Thus, the fact that this case concerns a matter of equal educational opportunity in the public schools, over which undocumented immigrants have been expressly found to have a constitutionally protected right, only further adds to the *Advanced Textile* factors weighing in favor of allowing the Doe Plaintiffs here to proceed anonymously.

---

[8] Particularly in matters involving elementary and secondary education, where state law compels all children—without regard to immigration status—to attend school until of age (*see, e.g.,* CAL. EDUC. CODE § 48200 (compelling all children to attend school until age 18)), it would undercut *Plyler* as well as basic notions of equal protection and due process if undocumented parents and students were denied the opportunity to grieve to the government about the quality of the education they are compelled by law to receive. Thus, in this sense also, the case at bar is distinguishable from *Merten*, 219 F.R.D. 387, and *Day,* 277 F.R.D. 668, in which the plaintiffs were pursuing claims that concerned their *voluntary* attendance at institutions of higher education.

**VI.    DEFENDANTS' ATTEMPT TO CHARACTERIZE THE DOE PLAINTIFFS AS SUPERFLUOUS TO THIS LITIGATION IS DISINGENUOUS.**

It goes without saying that, if the court denies the Doe plaintiffs' motion to proceed anonymously, in all likelihood, they will choose not to pursue this litigation and expose themselves to the drastic consequences that would result from deportation. Nonetheless, Defendants argue that "[t]his case does not present sufficient concern that a chilling effect on a plaintiff's willingness to challenge the validity of 34 C.F.R 200.56(a)(2)(ii) favors the presence of plaintiffs seeking anonymity to protect their immigration status." Opp. at 6; *see also* Opp. at 1:23-27. In essence, Defendants argue that the eleven other named individual plaintiffs are sufficient to allow the court to address the legal issue presented.

### A. Contrary to Defendants' Assertion, It is Plaintiffs' Prerogative to Decide Whether to Bring Suit.

It is axiomatic that the plaintiffs in an action—not the defendants—have the authority to decide whether they want to bring suit, against whom, what their claims will be, and in what forum they will pursue them. This general principle applies as well to undocumented immigrants, who, like any person, may appeal to the courts to enforce their constitutional and statutory rights. *See, e.g., Plyler v. Doe*, 457 U.S. 202, 210. The Doe plaintiffs here seek to enforce their rights under the federal No Child Left Behind Act to a fully-certified, "highly qualified" teacher. 20 U.S.C. § 7801(23)(A). Notwithstanding Defendants' assertions that the eleven other individual plaintiffs may sufficiently assert this right in court (Opp. at 6-7), the Doe plaintiffs here care deeply about the quality of public education that they, their children and other children receive, and they desire to enforce their legal rights to a fully-certified, "highly qualified" teacher. They ought to be allowed to do so to the same extent as any other family with students compelled to attend sub-standard schools.

### B. Immigrant Parents and Students are Particularly Burdened by Defendants' Regulation, and Therefore Have Heightened Interest in Challenging It.

Moreover, immigrant parents and students are those who are disproportionately affected by the widespread unequal access to fully-certified teachers in California and therefore have a greater interest

9

in challenging Defendants' regulation than the average parent or public school student. Twenty-five percent of California's public school population—1.5 million children—are English Learners ("ELs"), a strong indicator that they are immigrants themselves or the children of immigrants. Patricia Gándara et al., "English Learners in California Schools: Unequal resources, unequal outcomes," EDUCATION POLICY ANALYSIS ARCHIVES, 11(36), (Oct. 7, 2003), *available at* http://epaa.asu.edu/epaa/v11n36/.[9] Educational research indicates that these children are subject to the worst school conditions in California's public schools and that their academic achievement accordingly suffers. *See id*. ELs are more likely than any other children—including other low-income, non-EL children—to be taught by teachers without full credentials. *Id.* They are far more likely than non-ELs to have inadequate instructional materials and sub-standard, over-crowded school facilities. *Id.* Finally, ELs are frequently segregated into schools and classrooms with other ELs, placing them at a particularly high risk for educational failure. *Id.* Given immigrant students' unequal access to public education in California generally and to quality teachers in particular, they and their parents have a particularly strong interest in ensuring that NCLB's promise that all children be taught by fully-certified, "highly qualified" teachers in their core academic classes is met. *See* 20 U.S.C. § 6319(a)(2).

### C. The Doe Plaintiffs Bring Important Facts to the Case Such That Their Exclusion Could Interfere With This Court's Ability to Reach a Decision on the Merits.

Defendants have indicated that they may challenge at least some of the individual plaintiffs' standing to proceed in this action. *See* Joint Case Mgmt Stmt (11/29/07) at 1. *See also* Minutes from Initial Case Mgmt Conf. Plaintiffs believe that all of the individual plaintiffs have standing because they (or, in the case of the parent plaintiffs, their children) have had, currently have, and/or are at a

---

[9] Because schools do not ask students about their immigration status or maintain records of such, data do not exist that directly reflect the school conditions of immigrants, undocumented or legal. Thus, we turn to the next best, albeit imperfect, data which reflect school conditions for ELs generally. In fact, given the direct relationship that has been observed in California between income-level and school conditions, it is a fair to hypothesize that undocumented immigrants—who comprise the most marginalized, lowest-income sub-population of immigrants—likely suffer as a group from even worse school conditions than the average EL.

10

substantial risk of having an intern teacher. *See, e.g.*, *City of L.A. v. Lyons*, 461 U.S. 95, 102 (1983) (establishing that a plaintiff must show that he "'has sustained or is immediately in danger of sustaining some direct injury' as the result of the challenged official conduct" in order to meet standing requirements). Nonetheless, in anticipating a standing challenge, Plaintiffs note that each of the Doe plaintiffs here brings unique facts to the case that may be important in defending a standing challenge.[10] For example—consistent with the educational research that demonstrates that immigrant students are disproportionately taught by uncertified teachers (see Section VI.B. above)—Jane Doe and B. Doe are two of the three individual student plaintiffs in this action who are currently being taught by an intern teacher. First Amend. Compl. at ¶¶ 21-22, 35-36. N. Doe, because her child attends a low-income school that receives Title I funds, is the only parent plaintiff currently entitled to notice from her school district that her child has been taught by a non-"highly qualified" intern teacher for four or more consecutive weeks. First Amend. Compl. at ¶¶ 21-22. The exclusion of these three Doe plaintiffs from the case—given their particularly strong facts for establishing standing—could potentially interfere with the court's ability to reach the merits of the case. Defendants should not be permitted to use the Doe plaintiffs' motion to proceed anonymously as a backdoor method of excluding these three plaintiffs from the case and preventing the Court from ever reaching the merits presented.

### VII. PLAINTIFFS DO NOT SEEK TO LIMIT FEDERAL OFFICIALS' AUTHORITY TO ENFORCE IMMIGRATION LAWS OUTSIDE THE BOUNDS OF THIS LITIGATION.

Contrary to Defendants' assertion, Plaintiffs are not "request[ing] that the Court assist the Doe plaintiffs in any evasion and violation of federal law," (Opp. at 3:3-4), nor do they seek to "restrict government officers' ability to comply with [federal immigration] law" (Opp. at 3:13) outside the bounds of this litigation. Plaintiffs merely seek to prevent Defendants from retaliating against the Doe

---

[10] Plaintiffs further note that Defendants do not need to know the Doe plaintiffs' identities in order to pursue a standing challenge. In their initial disclosures, Plaintiffs provided Defendants with the names of the schools which the Plaintiffs attend—including the Doe plaintiffs—and the names of their intern teachers.

11

plaintiffs for their involvement in this action by using information they would not otherwise have—that is, information obtained about Plaintiffs through this litigation—to enforce immigration laws.

To the extent that Plaintiffs' proposed order violates 8 U.S.C. § 1373(a), which prohibits "a government entity or official from "prohibit[ing] or in any way restrict[ing], any government entity or official from sending to, or receiving from, the Immigration and Naturalization Service information regarding the citizenship or immigration status, lawful or unlawful, of any individual," Plaintiffs propose more narrow language to address Defendants' concerns:[11]

> All parties, and their legal successors, agents, representatives, or attorneys, are prohibited from disseminating [] to third parties (including, but not limited to, employees of other Departments or Agencies of the United States) *any information obtained through this litigation, other than information about an individual's immigration status. This prohibition shall include, but is not limited to, information* concerning the actual names of plaintiff Jane Doe, her *guardian ad litem* John Doe, plaintiff N. Doe, and plaintiff B. Doe, *the schools the plaintiffs attend, the teachers assigned to teach them, the plaintiffs' grade level or subject level, and the plaintiffs' city and county of residence*.

Should the court adopt Plaintiffs' proposed order, Defendants and their counsel will not be prohibited from disclosing the Doe plaintiffs' immigration status to ICE. However, they will be prohibited from disclosing to ICE or any other third party any other information about the Doe plaintiffs obtained through this litigation, including the Doe plaintiffs' real names. Of course, Plaintiffs do not dispute that the Doe plaintiffs are at all times subject to the immigration laws of the United States and that they may be subject to immigration enforcement on the basis of information obtained outside of the scope of this litigation.

### VIII. COMPLIANCE WITH GENERAL ORDER NO. 53 REGARDING THE PRIVACY OF MINORS DOES NOT OBVIATE THE NEED FOR THIS MOTION.

At the initial case management conference, the Court suggested that the parties consider whether General Order No. 53, which calls for only the initials of minor children to be used in publicly-filed documents, may address Plaintiffs' concerns regarding anonymity of the Doe plaintiffs. The parties are still attempting to confer regarding this issue. At present, however, Plaintiffs

---

[11] New language is *italicized.* The phrase "any information" was previously where the brackets [] are.

12

respectfully request that the Court proceed with a decision on this motion for two reasons. First, General Order No. 53 does not apply to N. Doe, the parent plaintiff, nor John Doe, Jane Doe's *guardian ad litem*. Second, merely using Jane Doe's and B. Doe's first and last initials will—when combined with the information about their schools, teachers, and grade levels/courses of assignment—provide Defendants with sufficient identifiable information such that Jane Doe and B. Doe could reasonably fear that their identities will become known.

## CONCLUSION

For these reasons, Plaintiffs respectfully request that the court grant Plaintiffs' motion to proceed using fictitious names and to file under seal those portions of their declarations revealing their actual names.

Dated: January 16, 2008              Respectfully submitted,

*/s/ Tara Kini*
_____
JOHN T. AFFELDT
JENNY PEARLMAN
TARA KINI
PUBLIC ADVOCATES, INC.
Attorneys for Plaintiffs

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28