JEFFREY S. BUCHOLTZ
Acting Assistant Attorney General
JOSEPH P. RUSSONIELLO
United States Attorney
SHEILA M. LIEBER
Assistant Branch Director
MICHAEL Q. HYDE
Trial Attorney
Civil Division, Federal Programs Branch
United States Department of Justice
20 Massachusetts Ave., N.W., Room 7132
P.O. Box 883
Washington, D.C. 20044
Tel: (202) 514-2205
Facsimile: (202) 616-8470
Email: michael.hyde@usdoj.gov

## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| SONYA RENEE, et al., ) | Civil Action No. 3:07cv4299-PJH |
| ) | |
| Plaintiffs, ) | **DEFENDANTS' CONSOLIDATED** |
| ) | **MEMORANDUM IN OPPOSITION** |
| v. ) | **TO PLAINTIFFS' MOTION FOR** |
| ) | **SUMMARY JUDGMENT AND IN** |
| ) | **SUPPORT OF THEIR CROSS MOTION** |
| MARGARET SPELLINGS, et al., ) | **FOR SUMMARY JUDGMENT** |
| ) | |
| Defendants. ) | Hearing Date:    April 23, 2008 |
| ) | Time:              9:00 a.m. |

Dated: February 15, 2008                    Respectfully submitted,

JEFFREY S. BUCHOLTZ
Acting Assistant Attorney General

JOSEPH P. RUSSONIELLO
United States Attorney

SHEILA M. LIEBER
Assistant Branch Director

          /S/

| | |
|---|---|
| Richard Mellman | MICHAEL Q. HYDE |
| General Attorney | Trial Attorney |
| Office of the General Counsel | Civil Division, Federal Programs Branch |
| U.S. Department of Education | United States Department of Justice |
| 400 Maryland Avenue, SW, Rm. 6E314 | 20 Massachusetts Ave., N.W., Room 7132 |
| Washington, DC  20202 | P.O. Box 883 |
| Phone:  (202) 401-6062 | Washington, D.C. 20044 |
| FAX:       (202) 205-0524 | Tel: (202) 514-2205 |
| email:    richard.mellman@ed.gov | Facsimile: (202) 616-8470 |
| | Email: michael.hyde@usdoj.gov |

Defendants' Consolidated Memorandum in Opposition to Plaintiffs' Motion for Summary Judgment
and in Support of Their Cross Motion for Summary Judgment
Civil Action No. 3:07cv4299-PJH

# TABLE OF CONTENTS

TABLE OF AUTHORITIES . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . iii

INTRODUCTION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

BACKGROUND AND STATEMENT OF FACTS. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

    A.    The No Child Left Behind Act.. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

    B.    NCLB Promotes the Hiring of Teachers through
             Alternative Routes to Teacher Certification.. . . . . . . . . . . . . . . . . . . . . . . . . . 4

    C.    The Secretary's Regulation.. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

    D.    Teacher Certification in California.. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

STANDARD FOR SUMMARY JUDGMENT. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

ARGUMENT . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

I.    PLAINTIFFS LACK STANDING TO CHALLENGE ED'S REGULATION.. . . . . . . . . . . . . . . . . 10

    A.    All Plaintiffs Lack Standing to Challenge 34 C.F.R.
             § 200.56 Because They Fail to Allege Any Injury
             that Would Be Remedied by the Requested Relief.. . . . . . . . . . . . . . . . . . . . . 10

    B.    Organizational Plaintiffs CFJ and Cal. ACORN Lack
             Standing to Sue on Behalf of Their Members or on Their
             Own Behalf and Should Be Dismissed as Plaintiffs.. . . . . . . . . . . . . . . . . . . 12

          1.    CFJ and Cal. ACORN Lack Standing to Sue on
                Behalf of Their Members.. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

          2.    CFJ and Cal. ACORN Lack Standing to Sue On
                Their Own Behalf.. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

                a.    *CFJ and Cal. ACORN Lack Article III Standing
                      to Sue on Their Own Behalf.*. . . . . . . . . . . . . . . . . . . . . . . . . . 13

                b.    *CFJ and Cal. ACORN Lack Prudential Standing
                      Because Their Organizational Interests Are Not
                      Within NCLB's Zone of Interests..*. . . . . . . . . . . . . . . . . . . . . 14

II.    ED'S REGULATION IS NOT ARBITRARY, CAPRICIOUS, OR
       CONTRARY TO LAW. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

    A.    Congress Has Not Defined What Is Meant by "Full State
             Certification as a Teacher (Including Certification Obtained
             Through Alternative Routes to Certification)." . . . . . . . . . . . . . . . . . . . . . . . . 16

Defendants' Consolidated Memorandum in Opposition to Plaintiffs' Motion for Summary Judgment
and in Support of Their Cross Motion for Summary Judgment
Civil Action No. 3:07cv4299-PJH

1

B.    The Regulation Is a Proper Application of Agency Expertise
and is Consistent with Congressional Intent................................. 21

2

3

C.    Plaintiffs' Proffered Evidence Is Irrelevant and Cannot Be
Considered by This Court because It Is Not Part of the
Administrative Record.. ........................................... 25

4

III.    EVEN IF PLAINTIFFS WERE TO SUCCEED, THEY REQUEST RELIEF
TO WHICH THEY ARE NOT ENTITLED. ........................................ 27

5

6

A.    Plaintiffs Are Not Entitled to the Broad, Sweeping Relief
They Request in Their Complaint..................................... 27

7

B.    Plaintiffs Are Not Entitled to a Nationwide Injunction.. ..................... 29

8

CONCLUSION    ...................................................... 30

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

Defendants' Consolidated Memorandum in Opposition to Plaintiffs' Motion for Summary Judgment
and in Support of Their Cross Motion for Summary Judgment
Civil Action No. 3:07cv4299-PJH

# TABLE OF AUTHORITIES

**CASES**

Air Courier Conf. v. Am. Postal Workers Union,
    498 U.S. 517 (1991). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  14

Allen v. Wright,
    468 U.S. 737 (1984). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  14

Am. Bioscience, Inc. v. Thompson,
    269 F.3d 1077 (D.C. Cir. 2001). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  15

Arizonans for Official English v. Arizona,
    520 U.S. 43 (1997). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  12

Ashley Creek Phosphate Co. v. Norton,
    420 F.3d 934 (9th Cir. 2005). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  14

Assoc. Gen Contractors,
    508 U.S. at 663. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  11, 28

Bar MK Ranches v. Yeutter,
    994 F.2d 735 (10th Cir. 1993). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  26

Bennett v. Kentucky Dep't of Educ.,
    470 U.S. 656 (1985). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  16

Boise Cascade Corp. v. EPA,
    942 F.2d 1427 (9th Cir. 1991). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  18

Brown v. Gardner,
    513 U.S. 115 (1994). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  19

Brown & Williamson,
    529 U.S. at 133. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  19

Califano v. Yamasaki,
    442 U.S. 682 (1979). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  30

Celotex Corp. v. Catrett,
    477 U.S. 317 (1986). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  10

Chevron U.S.A. v. Natural Resources Defense Council, Inc.,
    467 U.S. 837 (1984). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  passim

Citizens to Preserve Overton Park v. Volpe,
    401 U.S.  402 (1971). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  25, 26

Clarke v. Securities Indus. Ass'n,
    479 U.S. 388 (1987). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  14

-iii-

Defendants' Consolidated Memorandum in Opposition to Plaintiffs' Motion for Summary Judgment
and in Support of Their Cross Motion for Summary Judgment
Civil Action No. 3:07cv4299-PJH

Coho Salmon v. Pacific Lumber Co.,
    61 F. Supp.2d 1001 (N.D. Cal. 1999). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

Ctr. for Law and Educ. v. Dept. of Educ.,
    396 F.3d 1152 (D.C. Cir. 2005). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

Dep't of Defense v. Meinhold,
    510 U.S. 939 (1993). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 30

Deukmejian v. Nuclear Regulatory Comm'n,
    751 F.2d 1287 (D.C. Cir. 1984). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 26

Devlin v. Scardelletti,
    536 U.S. 1 (2002). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

Earth Island Institute v. Ruthenbeck,
    490 F.3d 687 (9th Cir. 2007). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 29

Elk Grove Unified Sch. Dist. v. Newdow,
    542 U.S. 1 (2004). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

FDA v. Brown & Williamson Tobacco Corp.,
    529 U.S. 120 (2000). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 19

Fair Housing of Marin v. Combs,
    285 F.3d 899 (9th Cir. 2002). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

Florida Power & Light Co. v. Lorion,
    470 U.S. 729 (1985). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 26

Great Basin Mine Watch v. Hankins,
    456 F.3d 955 (9th Cir. 2006). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 26

Havens Realty Corp. v. Coleman,
    455 U.S. 363 (1982). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

Honig v. Doe,
    484 U.S. 305 (1988). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16

Household Credit Servs., Inc. v. Pfennig,
    541 U.S. 232 (2004). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 19

Hunt v. Wash. State Apple Adver. Comm'n,
    432 U.S. 333 (1977). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

INS v. Legalization Asst. Proj. of L.A. County Fed. of Labor,
    510 U.S. 1301 (1993). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

J.L. v. Social Sec. Admin.,
    971 F.2d 260 (9th Cir. 1992), overruled in part, Lane v. Pena, 518  U.S.
    187 (1996). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

-iv-

Defendants' Consolidated Memorandum in Opposition to Plaintiffs' Motion for Summary Judgment
and in Support of Their Cross Motion for Summary Judgment
Civil Action No. 3:07cv4299-PJH

<u>Lujan v. Defenders of Wildlife</u>,
    504 U.S. 555 (1992). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

<u>Marsh v. Oregon Natural Resources Council</u>,
    490 U.S. 360 (1989). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 26

<u>Motor Vehicle Mfrs. Ass'n v. State Farm Mut. Auto Ins. Co.</u>,
    463 U.S. 29 (1983). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 25

<u>Ms. S. v. Vashon Island Sch. Dist.</u>,
    337 F.3d 1115 (9th Cir. 2003). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1, 16, 31

<u>Nat'l Cable & Telecommunications Ass'n v. Brand X Internet Servs.</u>,
    545 U.S. 967 (2005). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 22

<u>National Treasury Employees Union v. Hove</u>,
    840 F.Supp. 165 (D.C. Cir. 1994). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 27

<u>National Treasury Employees Union v. United States</u>,
    101 F.3d 1423 (D.C. Cir. 1996). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

<u>Nationsbank v. Variable Annuity Life Ins. Co.</u>,
    513 U.S. 251 (1995). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 22

<u>Newman v. Apfel</u>,
    223 F.3d 937 (9th Cir. 2000). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

<u>Northeastern Fla. Chapter, Assoc. Gen. Contractors v. Jacksonville</u>,
    508 U.S. 656 (1993). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

<u>Northwest Env't Def. Ctr. v. Bonneville Power Admin.</u>,
    477 F.3d 668 (9th Cir. 2007). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 28

<u>Norton v. Southern Utah Wildlife Alliance</u>,
    42 U.S. 55 (2004). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 27, 28

<u>Resident Councils of Washington v. Thompson</u>,
    2005 WL 1027123 (W.D. Wash. 2005). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

<u>Sierra Club v. Morton</u>,
    405 U.S. 727 (1972). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13, 14

<u>Smith v. Pacific Propertires and Dev. Corp.</u>,
    358 F.3d 1097 (9th Cir. 2004). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12, 13

<u>Spann v. Colonial Village, Inc.</u>,
    899 F.2d 24 (D.C. Cir.1990). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

<u>Summers v. Earth Island Inst.</u>,
    __ S. Ct. __, 2008 WL 161477 (Jan. 18, 2008). . . . . . . . . . . . . . . . . . . . . . . . . . 29

<u>United Food & Commercial Workers Union Local 751 v. Brown Group, Inc.</u>,
    517 U.S. 544 (1996). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

-v-

Defendants' Consolidated Memorandum in Opposition to Plaintiffs' Motion for Summary Judgment
and in Support of Their Cross Motion for Summary Judgment
Civil Action No. 3:07cv4299-PJH

United States v. Mendoza,
    464 U.S. 154 (1984). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .    30

Univ. Med. Ctr. v. Thompson,
    380 F.3d 1197 (9th Cir. 2004). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .    22

Warth v. Seldin,
    422 U.S. 490 (1975). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .    12

Whitmore v. Arkansas,
    495 U.S. 149 (1990). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .    13

Wilderness Soc'y v. U.S. Fish & Wildlife Serv.,
    353 F.3d 1051 (9th Cir. 2003). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .    15

Wilson v. Secretary, Dep't of Veteran Affairs,
    65 F.3d 402 (5th Cir. 1995). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .    22

Zuni Pub. Sch. Dist. v. Dep't of Educ.,
    127 S. Ct. 1534 (2007). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .    19


**OTHER SOURCES**

147 Cong. Rec. S4145. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .    20

148 Cong. Rec. at S5341. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .    21

34 C.F.R. § (b)(2), (3)(i), (3)(ii). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .    25

34 C.F.R. § 200.55(c). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .    3

34 C.F.R. § 200.56. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .    passim

5 U.S.C. §706(2). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .    15, 27, 28, 30

20 U.S.C. § 1414(d)(1)(B)      16

20 U.S.C. § 6301 *et seq*. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .    2

20 U.S.C. § 6311. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .    2, 4, 24, 28

20 U.S.C. § 6311(h)(6)(B)(ii). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .    4

20 U.S.C. § 6319(a). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .    3, 20, 21

20 U.S.C. § 6601. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .    6

20 U.S.C. §§ 6601 *et seq*. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .    6

20 U.S.C. § 6671 *et seq*. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .    5

-vi-

Defendants' Consolidated Memorandum in Opposition to Plaintiffs' Motion for Summary Judgment
and in Support of Their Cross Motion for Summary Judgment
Civil Action No. 3:07cv4299-PJH

20 U.S.C. § 6674(a)(1)(B). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 20, 21

20 U.S.C § 6681. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 20

20 U.S.C. § 6681 *et seq.* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

20 U.S.C. § 6683(h)(1). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5, 20

20 U.S.C. § 7801(23). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . passim

20 U.S.C. § 7801(A). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 23, 25

20 U.S.C. § 7801(23). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17

42 U.S.C. § 7607(b)(1). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 29

Cal. Code Regs. tit. 5 § 44454. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

Cal. Code Regs. tit. 5 § 44262. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

Cal. Code Regs. tit. 5 § 6100(c). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

Cal. Code Regs. tit. 5 §§ 6101. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

Cal. Code Regs. tit. 5 § 44300(a)(3), (b). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 18

Cal. Educ. Code § 44210 *et seq.* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

Cal. Educ. Code § 44250. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11, 18

Cal. Educ. Code §44251(b)(2). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 18

Cal. Educ. Code § 44251(b)(1). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9, 18

Cal. Educ. Code § 44274.2(a). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

Cal. Educ. Code § 44300 *et seq.* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

Cal. Educ. Code § 44300(a)93), (b. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

Cal. Educ. Code § 44325 *et seq.* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8, 9

Cal. Educ. Code § 44380. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

Fed. R. Civ. P. 1. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

Fed. R. Civ. P. 56(c). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

H.R. Rep. No. 107-63 at 317-18. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 21

-vii-

Defendants' Consolidated Memorandum in Opposition to Plaintiffs' Motion for Summary Judgment
and in Support of Their Cross Motion for Summary Judgment
Civil Action No. 3:07cv4299-PJH

# INTRODUCTION

Though Congress provided no specific definition, plaintiffs ask this Court to impose their interpretation of a provision in the No Child Left Behind Act of 2002 ("NCLB" or the "Act") defining when states may consider teachers to be "highly qualified," thereby replacing the interpretation of the Secretary of Education (the "Secretary"). Because plaintiffs lack standing to challenge the Secretary's interpretation and because the Secretary's interpretation is a reasonable construction of an ambiguous statute, plaintiffs' request should be denied.

NCLB contains numerous provisions for federal grants intended to improve school and student performance, including requirements that teachers must fulfill to be considered "highly qualified." In addition to meeting specific standards related to academic study and subject-matter knowledge, NCLB requires that "highly qualified" teachers also have "full State certification as a teacher (including certification obtained through alternative routes to certification)" or have satisfied state licensure requirements. See generally 20 U.S.C. § 7801(23). Congress provided no definition of what it meant by "full State certification as a teacher" nor "obtained through alternative routes to certification."

In the absence of specific congressional instruction, the Secretary promulgated regulations that further specified when a teacher may be considered to have "full State certification" in determining whether the teacher is "highly qualified." See generally 34 C.F.R. § 200.56. The regulation clarifies the term "full" by stating that a state may consider a teacher fully certified or licensed if the teacher fulfills the certification or licensure requirements applicable to the teacher's years of experience. See id. § 200.56(a)(2)(i). Further, the Secretary defined the circumstances under which a participant in an alternative route to certification program may be considered fully certified for purposes of being considered highly qualified. See id. § 200.56(a)(2)(ii).

Plaintiffs challenge the second paragraph in section 200.56(a)(2). See, e.g., Pls.' Mem. at 11-12. The court should reject plaintiffs' claim. First, plaintiffs lack standing to challenge the alternative route provision because California law provides "intern" teachers with a teaching credential giving them authority to be a classroom teacher. Thus, "intern" teachers may be considered to have full state certification to teach under the first part of the Secretary's regulation, 34 C.F.R. § 200.56(a)(2)(i), and even plaintiffs' interpretation of the governing statute. 20 U.S.C. § 7801(23)(A). Because plaintiffs

1
Defendants' Consolidated Memorandum in Opposition to Plaintiffs' Motion for Summary Judgment
and in Support of Their Cross Motion for Summary Judgment
Civil Action No. 3:07cv4299-PJH

do not challenge this provision, they allege no injury that would be remedied by invalidating the provision for alternative route programs. Further, even if the individual plaintiffs have standing, the organizational plaintiffs lack standing and their claims should be dismissed.

Second, plaintiffs incorrectly argue that Congress unambiguously requires that states consider only those who have completed "teacher preparation programs" to have full state certification for purposes of NCLB. Congress specified no such requirement and provided no guidance as to what it meant by "full State certification." Further, NCLB included provisions allowing the Department of Education ("ED") to provide grants for recruitment of teachers in alternative route programs who had not completed traditional routes to certification in high need schools in an effort to increase the quality of teaching at those schools and address a nationwide shortage of teachers. Accordingly, under the principle announced by the Supreme Court in <u>Chevron U.S.A. v. Natural Resources Defense Council, Inc.</u>, 467 U.S. 837, 844 (1984), this court should uphold the reasonable interpretation of the statute and reject plaintiffs' attempt to replace the Secretary's interpretation of NCLB with their own.

## BACKGROUND AND STATEMENT OF FACTS

### A.    The No Child Left Behind Act.

NCLB was signed into law on January 8, 2002. <u>See</u> Pub. L. No. 107-110, 115 Stat. 1425 (2002) (codified at 20 U.S.C. § 6301 *et seq.*). The Act reauthorizes Title I of the Elementary and Secondary Education Act of 1965 ("ESEA"), Pub. L. No. 89-10, 79 Stat. 27 (codified as amended at 20 U.S.C. § 6301-6578), and in particular its Title I, Part A program ("Title I"), under which  ED provides grants to state educational agencies ("SEAs") and local educational agencies ("LEAs") to improve the academic achievement of children enrolled in high poverty schools. Key to this goal is the requirement that SEAs receiving Title I funds establish statewide accountability systems based on state academic content and student achievement standards in certain subjects to determine whether students are making adequate yearly progress in meeting state standards. <u>See</u> 20 U.S.C. § 6311.

Underscoring the importance of teachers, NCLB requires SEAs receiving Title I funds to ensure that all public school teachers of "core academic subjects" meet certain prescribed standards

Defendants' Consolidated Memorandum in Opposition to Plaintiffs' Motion for Summary Judgment
and in Support of Their Cross Motion for Summary Judgment
Civil Action No. 3:07cv4299-PJH

to be considered "highly qualified."[1]  Among other things, the Act requires SEAs and LEAs to implement plans ensuring that, by the end of the 2005-06 school year, all teachers of core academic subjects" are "highly qualified."  See 20 U.S.C. § 6319(a).[2]  NCLB also requires that LEAs ensure that all teachers in Title I programs hired after January 8, 2002 be highly qualified.  Id. § 6319(a)(1).

Congress defined the term "highly qualified" as it applies to teachers to mean that the teacher has met all of three criteria: full state certification or licensure, possession of at least a bachelor's degree, and demonstration of subject-matter knowledge in each subject taught.  See generally 20 U.S.C. § 7801(23).  With regard to full state certification, this provision provides:

> The term "highly qualified"--
> (A) when used with respect to any public elementary school or secondary school teacher teaching in a State, means that--
>     (i) the teacher has obtained full State certification as a teacher (including certification obtained through alternative routes to certification) or passed the State teacher licensing examination, and holds a license to teach in such State, except that when used with respect to any teacher teaching in a public charter school, the term means that the teacher meets the requirements set forth in the State's public charter school law; and
>     (ii) the teacher has not had certification or licensure requirements waived on an emergency, temporary, or provisional basis;

Id. § 7801(23)(A).

With regard to subject-matter knowledge, NCLB requires that a "highly qualified" elementary school teacher new to the profession must also pass a rigorous state test of subject matter knowledge and teaching skills in reading, writing, mathematics, and other areas of basic elementary education. See id. § 7801(B)(i).  Middle and secondary school teachers new to the profession must demonstrate either (1) passing a rigorous state academic subject test in each subject taught, or (2) successfully completing, in each subject taught, an academic major or equivalent undergraduate coursework, a graduate degree, or other advanced certification or credentialing.  See id. § 7801(23)(B)(i), (ii).

For the time period during which states implement their plans to have all core classes taught by highly qualified teachers, the NCLB also requires that SEAs and LEAs develop plans with specific

---

[1]  Congress defined "core academic subjects" as English, reading or language arts, mathematics, science, foreign languages, civics and government, economics, arts, history, and geography. 20 U.S.C. § 7801(11); see also 34 C.F.R. § 200.55(c).

[2]  By regulation, SEAs and LEAs receiving Title I funds must ensure that by the end of the 2005-06 school year these teachers are highly qualified.  See 34 C.F.R. § 200.56(b).

3
Defendants' Consolidated Memorandum in Opposition to Plaintiffs' Motion for Summary Judgment
and in Support of Their Cross Motion for Summary Judgment
Civil Action No. 3:07cv4299-PJH

1    steps "to ensure that poor and minority children are not taught at higher rates than other children by

2    inexperienced, unqualified, or out-of-field teachers." 20 U.S.C. § 6311(b)(8)(C).

3          NCLB also contains reporting requirements to measure progress in implementing the "highly

4    qualified" requirements.   In relevant part, schools receiving Title I funds are required to provide

5    individual parents with timely notice that a child "has been assigned, or has been taught for four or

6    more consecutive weeks by, a teacher who is not highly qualified." 20 U.S.C. § 6311(h)(6)(B)(ii).

7    SEAs and LEAs must prepare and disseminate various reports, including an annual report with

8    information on teachers' professional qualifications, including "the percentage of such teachers

9    teaching with emergency or provisional credentials" and "the percentage of classes in the State not

10   taught by highly qualified teachers, in the aggregate and disaggregated by high-poverty compared to

11   low-poverty schools." See 20 U.S.C. § 6311(h)(1)(C)(viii) (state annual report); id. § 6319(b)(1)(A)

12   (SEAs must require LEAs to report annually progress as a whole and by schools); id. § 6311(h)(2)(A),

13   (B) (LEAs to provide same information in annual report).   LEAs must "publicly disseminate" this

14   information to schools and parents and to the public in a widely-available means. Id. § 6311(h)(2)(E).

15   SEAs must also provide a widely-available annual report to the Secretary with "information on the

16   quality of teachers and the percentage of classes being taught by highly qualified teachers." 20 U.S.C.

17   § 6311(h)(4)(G).   SEAs must also report their "progress in meeting measurable objectives" to ensure

18   that teachers of core academic subjects are highly qualified.  Id. § 6319(b)(1)(B).

19         Finally, NCLB requires the Secretary to submit an annual report to the relevant congressional

20   committees with national and state-level data collected from the states.  20 U.S.C. § 6311(h)(5).

21         **B.    NCLB Promotes the Hiring of Teachers through Alternative Routes to
               Teacher Certification.**

22         Programs providing alternative routes to teacher certification are vehicles through which states

23   may encourage mid-career professionals and qualified individuals who are not in a traditional teacher

24   preparation program, but who have other relevant educational and work experience, to become

25   teachers.  See Administrative R. ("A.R.") at AR000404-07, 001801-12.[3]

26         Federal statutes do not dictate how states are to certify or license teachers.  However, in NCLB,

27

28         [3]  The four-volume Administrative Record was filed on December 18, 2007.  See docket no. 38.

4
Defendants' Consolidated Memorandum in Opposition to Plaintiffs' Motion for Summary Judgment
and in Support of Their Cross Motion for Summary Judgment
Civil Action No. 3:07cv4299-PJH

Congress authorized three mechanisms designed to assist the states in (1) creating alternative routes to certification to help ameliorate the Nation's shortage of highly qualified teachers, especially in schools with large numbers of minority and low-income students, and (2) recruiting teachers with relevant, but alternative academic and work experience.

NCLB reauthorized the Troops-to-Teachers program, see generally 20 U.S.C. § 6671 et seq., "to assist eligible members of the Armed Forces . . . to obtain certification or licensing . . . to become highly qualified teachers." Id. § 6672(b). This program facilitates the hiring of participants by LEAs with high "concentrations of children from low-income families" or that are "experiencing a shortage of highly qualified teachers, in particular a shortage of science, mathematics, special education, and vocational or technical teachers." Id. § 6672(b)(2)(A). This program uses "alternative approaches . . . , such as innovative methods to gaining field-based teaching experiences" and "assessment of background and experience as related to skills, knowledge, and abilities."[4] Id. § 6676(c)(3).

In addition, NCLB's Transition to Teaching program, see generally 20 U.S.C. § 6681 et seq., is designed to "recruit and retain highly qualified mid-career professionals" and "recent [college] graduates" to be teachers in high-need schools, including through "alternative routes to certification." Id. § 6681(1). The program also encourages "development and expansion of alternative routes to certification under state-approved programs that enable individuals to be eligible for teacher certification within a reduced period of time." Id. § 6681(2). To accomplish this goal, Congress determined that the program would rely "on the experience, expertise, and academic qualifications of an individual or other factors in lieu of traditional course work in the field of education." Id.

Entities that receive grants under the Transition to Teaching program are required to ensure that program participants "are placed in high-need schools operated by high-need local educational agencies," with priority given to schools in areas "with the highest percentages of students from families with incomes below the poverty line." 20 U.S.C. § 6683(h)(1)

Finally, NCLB created the Improving Teacher Quality State Grants program. See generally

---

[4] This program does not require that participants utilize an alternative route program. However, a large percentage of these former members of the military become teachers through alternative route programs. See, e.g., A.R. at AR0002244 (ED study finding that half of participants utilized alternate route programs and 46% through traditional, college-based programs).

5
Defendants' Consolidated Memorandum in Opposition to Plaintiffs' Motion for Summary Judgment
and in Support of Their Cross Motion for Summary Judgment
Civil Action No. 3:07cv4299-PJH

1  20 U.S.C. §§ 6601 *et seq.*  This program authorizes grants to SEAs and LEAs to increase teacher

2  quality and the number of highly qualified teachers, and, thus, complements efforts of other NCLB

3  programs in helping SEAs and LEAs to improve student academic achievement.  20 U.S.C. § 6601.

4  These funds may be used to "establish, expand, or improve alternative routes for State certification of

5  teachers" by targeting individuals "with a baccalaureate or master's degree, including mid-career

6  professionals from other occupations, paraprofessionals, former military personnel, and recent college

7  or university graduates with records of academic distinction who demonstrate the potential to become

8  highly effective teachers . . . ."  Id. § 6613(c)(3) (grants to states); id. § 6623(a)(2)(C) (grants to LEAs).

9      **C.     The Secretary's Regulation.**

10      NCLB authorizes the Secretary to issue regulations "as are necessary to reasonably ensure that

11  there is compliance with [Title I]."  Id. § 6571(a).  On August 6, 2002, the Secretary issued a notice

12  of proposed rulemaking for the newly authorized Title I ESEA programs.  See A.R. at AR0000001-43.

13  With respect to NCLB's definition of a "highly qualified" teacher, the Secretary sought to "clarify

14  unclear areas of the statute."  Among other things, the Secretary proposed that a teacher be considered

15  to have full state certification if the teacher

16      (i) has fulfilled the State's certification and licensing requirements applicable to the
    years of experience the teacher possesses, or

17      (ii) is participating in an alternative route to certification program under which the
    teacher is

18          (1) Permitted by the State to assume functions as a teacher; and
        (2) Makes satisfactory progress toward full certification as prescribed by the

19          State and the program.

20  Id. at AR0000011; see also id. at AR0000034 (setting forth proposed section 200.56).

21      Following a comment period,[5] the Secretary promulgated regulations implementing NCLB,

22  including 34 C.F.R. § 200.56.  See generally A.R. at AR0000045-106.  The Secretary recognized that

23  "State certification and licensure is a matter of State law and policy, and hence the definition of these

24  terms is left to State decisionmaking."  A.R. at AR0000099.

25      Like the proposed regulation, the final regulation begins by stating:

26      Except as provided in paragraph (a)(3) of this section, a teacher covered under § 200.55

27  _____

28      [5]  Public comment related to section 200.56 is included in the Administrative Record in volume 1,
pages AR0000107-379.

Defendants' Consolidated Memorandum in Opposition to Plaintiffs' Motion for Summary Judgment
and in Support of Their Cross Motion for Summary Judgment
Civil Action No. 3:07cv4299-PJH

must--
>   (i) Have obtained full State certification as a teacher, which may include certification obtained through alternative routes to certification; or
>   (ii)(A) Have passed the State teacher licensing examination; and (B) Hold a license to teach in the State.

34 C.F.R. § 200.56(a)(1). And, as in the proposed regulation, a teacher meets this requirement if the teacher "[h]as fulfilled the State's certification and licensure requirements applicable to the years of experience the teacher possesses." Id. § 200.56(a)(2)(i). However, in response to public comment, the final regulation significantly revised the second way in which a teacher could be considered fully certified by establishing specific criteria that an alternative route program must satisfy:

>   (A) The teacher--
>       (1) Receives high-quality professional development that is sustained, intensive, and classroom-focused in order to have a positive and lasting impact on classroom instruction, before and while teaching;
>       (2) Participates in a program of intensive supervision that consists of structured guidance and regular ongoing support for teachers or a teacher mentoring program;
>       (3) Assumes functions as a teacher only for a specified period of time not to exceed three years; and
>       (4) Demonstrates satisfactory progress toward full certification as prescribed by the State; and
>   (B) The State ensures, through its certification and licensure process, that the provisions in paragraph (a)(2)(ii) of this section are met.

Id. § 200.56(a)(2)(ii).

   In addition to these requirements, a teacher must meet the education and subject-matter competency requirements of the regulation's subsection (b) or (c) to be considered "highly qualified."[6] Subsection (b), which applies to new elementary and middle or secondary school teachers, requires that new teachers also possess a bachelor's degree and demonstrate subject-matter knowledge in the manner prescribed by statute.[7] Compare 34 C.F.R. § 200.56(b)(2), (3) with 20 U.S.C. § 7801(23)(B).

   ED considered and rejected concerns that teachers who had not yet completed an alternative route program should not be considered to have full state certification, and, thus also not "highly qualified." In doing so, the Secretary cited Congress's specific authorization of federal support for the hiring teachers through alternative route programs such as the three NCLB programs described above,

---

[6] Section 200.56(a)(3) concerns teachers in public charter schools, which is not germane here.

[7] Subsection (c) contains similar requirements for veteran teachers. See 34 C.F.R. § 200.56(c).

7
Defendants' Consolidated Memorandum in Opposition to Plaintiffs' Motion for Summary Judgment
and in Support of Their Cross Motion for Summary Judgment
Civil Action No. 3:07cv4299-PJH

1   and the belief that LEAs should be permitted to continue to use alternative routes to certification as

2   a means of increasing the number of effective and capable teachers. See A.R. at AR0000099. Further,

3   the Secretary reasoned that, because the final regulation incorporates statutory requirements that

4   teachers have a bachelor's degree and demonstrate subject matter knowledge, see 34 C.F.R. §

5   200.56(b), (c), the additional standards for training, supervision and progress ensured by the state

6   through its certification and licensure processes, see 34 C.F.R. § 200.56(a)(1)(ii)(B) would respond

7   to the need for teachers in alternative route programs to be "prepared to teach their students from the

8   moment they step into their classrooms, and receive the follow-up support they need as beginning

9   teachers." A.R. at AR0000099.

10      **D.     Teacher Certification in California**.

11      The California Legislature has assigned responsibility for teacher accreditation to the

12   Commission on Teacher Accreditation ("Cal. CTA"). See CAL. EDUC. CODE § 44210 et seq. Cal.

13   CTA issues various types of credentials, specifically internship, preliminary, and life or permanent

14   clear credentials, see, e.g., id. 44250 et seq.; see also id. § 44250 (establishing teacher credentials,

15   including "internship teaching" credential).[8] Cal. ATA may also issue certain emergency "permits" to

16   teach. See id. § 44300 et seq.[9]

17      Teachers may obtain a "preliminary" teaching credential upon completion of a baccalaureate

18   degree and a teacher preparation program, in addition to meeting other requirements. See CAL. EDUC.

19   CODE § 44274.2(a). After obtaining an additional two or more years of teaching experience and two

20   satisfactory performance reviews, as well as meeting other statutorily-defined requirements, a teacher

21   may obtain a "professional clear" or life credential. Id. § 44274.2(c); see also id. § 44274.2(d).

22      California law provides for internship credentials in its district internship program, see CAL.

23

24      [8]  California also has an "eminence credential," available to those who have "achieved eminence
    in a field of endeavor" authorizing them to teach subjects at levels designated in the credential. See

25   CAL. CODE REGS. tit. 5 § 44262.

26      [9]  California also has different "kinds" of teaching credentials. See generally Id. § 44256. Included
    in these are a "single subject instruction" credential permitting the holder to teach specified subject

27   matter courses, typically used in junior high and high schools, id. § 44256(a), and a "multiple subject
    instruction" credential, permitting the holder to teach multiple subject matters, as is common in

28   elementary school. Id. § 44256(b).

8
Defendants' Consolidated Memorandum in Opposition to Plaintiffs' Motion for Summary Judgment
and in Support of Their Cross Motion for Summary Judgment
Civil Action No. 3:07cv4299-PJH

1  EDUC. CODE § 44325 *et seq.*, and its university internship program.  See id. § 44450 *et seq*.  Both

2  programs predate enactment of NCLB.[10]  The district internship credential authorizes a teacher to teach

3  in the subject areas for which they have met subject-matter competency.  See id. § 44326(a) (district

4  interns).  Similarly, the university intern credential authorizes a teacher to teach at the same levels as

5  that authorized by a regular credential.  See id. § 44454.  Upon completion of the term prescribed for

6  the intern credential, the teacher would apply to receive either a preliminary or a professional cleawr

7  credential.  See id. § 44328.

8      For purposes of NCLB's highly qualified teacher requirements, California, by regulation, has

9  defined the term "credential" to mean "A Preliminary, Professional Clear or Life Credential, or any

10  teaching credential issued under prior statutes, that authorizes a person to teach in California K-12

11  schools."  CAL. CODE REGS. tit. 5 § 6100(c).  Teachers meet NCLB requirements if they hold a

12  bachelor's degree, are enrolled in an approved intern program or hold a credential, and meet other state

13  statutory requirements.  See CAL. CODE REGS. tit. 5 §§ 6101 (elementary school teachers), 6110

14  (middle and high school teachers).

15      California law also prescribes the length of time each credential is valid.  Internship credentials

16  are valid for two years.  CAL. EDUC. CODE § 44251(b)(1).  Preliminary credentials are valid for five

17  years "pending completion of a beginning teacher induction program."  Id. § 44251(b)(2).  A clear or

18  professional clear teaching credential is valid for life, provided it is renewed every five years and the

19  holder meets certain statutorily-defined professional fitness requirements.  Id. § 44251(b)(3).

20      Although any credential and emergency permit authorizes an individual to teach, California

21  restricts the ability to hire teachers with only a permit.  See CAL. EDUC. CODE § 44300(a)93), (b).  No

22  such limitation is placed on the hiring of teachers with an internship or preliminary credential.

23  Compare id. §§ 44325 *et seq.* (district interns); id. §§ 44450 *et seq.* (university interns), Moreover,

24  California's statutes and regulations establish no preference or priority in favor of either internship or

25  preliminary teaching credentials.  Cf. CAL. CODE REGS. tit. 5 § 44454 ("An internship credential

26  authorizes the same service at the same levels a the regular credential authorizes.").

27  _____

28  [10]  The statutes for district internships were first passed in 1983 and for university internships in,
See Notes to Cal. Educ. Code Ann. §§ 44325 (district interns); 44450 (university interns).

9
Defendants' Consolidated Memorandum in Opposition to Plaintiffs' Motion for Summary Judgment
and in Support of Their Cross Motion for Summary Judgment
Civil Action No. 3:07cv4299-PJH

1   Finally, California authorizes the use of alternative certification programs, which provides an
2   alternative avenue for those with work experience and who have already obtained a bachelor's degree
3   to obtain a permanent teaching credential. CAL. EDUC. CODE § 44380.

### STANDARD FOR SUMMARY JUDGMENT

5   Summary judgment is appropriate where "there is no genuine issue as to any material fact and
6   . . . the movant is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). Summary
7   judgment is properly regarded "not as a disfavored procedural shortcut, but rather as an integral part
8   of the Federal Rules as a whole, which are designed 'to secure the just, speedy and inexpensive
9   determination of every action.'" Celotex Corp. v. Catrett, 477 U.S. 317, 327 (1986) (quoting Fed. R.
10  Civ. P. 1). Defendants filed the Administrative Record, and plaintiffs do not dispute it. Since this case
11  may be resolved as a matter of law, summary judgment is appropriate. See Fed. R. Civ. P. 56(c).

### ARGUMENT

13  **I.    PLAINTIFFS LACK STANDING TO CHALLENGE ED'S REGULATION.**

14  **A.    All Plaintiffs Lack Standing to Challenge 34 C.F.R. § 200.56 Because They Fail
         to Allege Any Injury that Would Be Remedied by the Requested Relief.**

15  To have standing under Article III of the Constitution, plaintiffs must show (1) an injury in fact,
16  meaning the invasion of a legally protected interest that is "concrete and particularized" and "actual
17  or imminent, not conjectural or hypothetical," (2) a causal relationship between the injury and the
18  challenged activity, and (3) that a favorable court ruling will redress the injury. Northeastern Fla.
19  Chapter, Assoc. Gen. Contractors v. Jacksonville, 508 U.S. 656, 663 (1993). Because standing is
20  jurisdictional, plaintiffs bear the burden to establish each element with the manner and degree of proof
21  required at each stage of litigation. Lujan v. Defenders of Wildlife, 504 U.S. 555, 560 (1992).

22  All of the plaintiffs point to California's certification of "intern" teachers as the basis for their
23  challenge of 34 C.F.R. § 200.56(c)(2)(ii), arguing that the regulation improperly permits California
24  to consider intern teachers who participate in alternative route programs to have "full" certification and
25  be considered "highly qualified." See, e.g., Pls.' Mem. at 6 and exhibits cited therein. Other than
26  these "intern" teachers, plaintiffs do not specify any other teachers assigned to them or in their schools
27  who they claim are improperly considered "highly qualified" under the Secretary's regulation.

Defendants' Consolidated Memorandum in Opposition to Plaintiffs' Motion for Summary Judgment
and in Support of Their Cross Motion for Summary Judgment
Civil Action No. 3:07cv4299-PJH

1    Whatever injury they have suffered either from California's certification of these "intern"

2    teachers or its consideration of them as "highly qualified," plaintiffs fail to show that the injury results

3    from 34 C.F.R. § 200.56(c)(2)(ii) or would be remedied by its invalidation.   As stated above,

4    California statutes provide a teaching credential to intern teachers to teach their subjects and grade

5    levels.  See Cal. Educ. Code § 44250 (providing for intern teaching credentials); id. § 44326(a)

6    (holders of district intern credentials "authorized to teach in the subject area in which they have met

7    the subject matter requirement"); id. § 44454 (university intern credential "authorizes the same service

8    at the same levels as the regular credential authorizes").   This authority is separate from that

9    establishing emergency teaching permits.  See Cal. Educ. Code § 44300 et seq.

10    In light of this, plaintiffs have not shown that, under California law, intern teachers are not fully

11    certified to teach.  Nor have they provided any basis to conclude that intern teachers lack "full State

12    certification" for purposes of NCLB without considering 34 C.F.R. § 200.56(a)(2)(ii), permitting

13    certain participants in alternative route programs to be considered fully certified.  Plaintiffs also do not

14    show that California's intern credential does not satisfy a separate regulatory provision they do not

15    challenge, which states teachers are considered fully certified if they fulfill State requirements

16    "applicable to the years of experience the teacher possesses."  34 C.F.R. § 200.56(a)(2)(i).

17    Accordingly, plaintiffs have not demonstrated that the injury in fact they allege is the result of

18    the provision they challenge, 34 C.F.R. § 200.56(a)(2)(ii), rather than California's considered decision

19    to provide certification to intern teachers.  Absent such a showing, plaintiffs fail to satisfy the second

20    prong of the standing analysis – a causal link between the cited injury and the challenged activity.  See

21    Assoc. Gen Contractors, 508 U.S. at 663.  Moreover, because invalidation of the Secretary's regulation

22    would not prevent California from considering its intern teachers to be fully certified under these

23    statutory provisions, the remedy plaintiffs request, and, indeed, any remedy against the defendants,

24    would not alter California's law which provides a teaching credential to intern teachers.  Plaintiffs

25    therefore fail to satisfy the third prong of the standing analysis – a showing that a favorable court ruling

26    will redress the injury cited.  Id.  Thus, plaintiffs lack standing to challenge the legality of section

27    200.56, and their claims must be dismissed in their entirety.

28

Defendants' Consolidated Memorandum in Opposition to Plaintiffs' Motion for Summary Judgment
and in Support of Their Cross Motion for Summary Judgment
Civil Action No. 3:07cv4299-PJH

1

**B.      Organizational Plaintiffs CFJ and Cal. ACORN Lack Standing to Sue on Behalf
of Their Members or on Their Own Behalf and Should Be Dismissed as Plaintiffs.**

2

To the extent plaintiffs' claims are brought by the organizational plaintiffs CFJ and Cal.

3

4

ACORN, those plaintiffs' claims must be dismissed for lack of subject matter jurisdiction because

5

each lacks standing.  An organization may have standing to sue either on behalf of its members

6

("representational" standing) or on its own behalf ("organizational" standing).  See Smith v. Pacific

7

Properties and Dev. Corp., 358 F.3d 1097, 1101 (9th Cir. 2004).  An organization's "representational

8

standing is contingent upon the standing of its members to bring suit," while its "organizational

9

standing is separate from the standing of its members, turning instead on whether the organization

itself has suffered an injury in fact."  Id. (citations omitted).

10

**1.      CFJ and Cal. ACORN Lack Standing to Sue on Behalf of Their Members.**

11

To possess standing to sue as a representative of its members, an organization must satisfy

12

three elements.  First, it must identify actual members who have suffered an injury "of the sort that

13

14

would make out a justiciable case had the members themselves brought suit."  Warth v. Seldin, 422

15

U.S. 490, 511 (1975); see also Arizonans for Official English v. Arizona, 520 U.S. 43, 65-66 (1997)

16

("association has standing to sue" on behalf of members "only if its members would have standing in

17

their own right" on basis of "concrete injury").  Second, it must show that "neither the claim asserted

18

nor the relief requested requires the participation of individual members in the lawsuit."  United Food

19

& Commercial Workers Union Local 751 v. Brown Group, Inc., 517 U.S. 544, 553 (1996) (quoting

20

Hunt v. Wash. State Apple Adver. Comm'n, 432 U.S. 333, 343 (1977)).  Finally, it must show that

21

"the interests it seeks to protect are germane to [its organizational] purpose."  Id. (quoting Hunt, 432

U.S. at 343); see also Smith, 358 F.3d at 1101-02.  Neither CFJ nor Cal. ACORN meet this standard.

22

Though they identify members who they allege would have standing, those members lack

23

standing for the reasons stated above, see, supra, Part I.A., and, thus, so does CFJ and Cal. ACORN.

24

**2.      CFJ and Cal. ACORN Lack Standing to Sue On Their Own Behalf.**

25

Even if CFJ and Cal. ACORN could have standing separate from their members, they still

26

"must, like any other plaintiff, satisfy the constitutional and prudential considerations of standing."

27

J.L. v. Social Sec. Admin., 971 F.2d 260, 268 n.8 (9th Cir. 1992), overruled in part, Lane v. Pena, 518

28

12
Defendants' Consolidated Memorandum in Opposition to Plaintiffs' Motion for Summary Judgment
and in Support of Their Cross Motion for Summary Judgment
Civil Action No. 3:07cv4299-PJH

1    U.S. 187 (1996).  CFJ and Cal. ACORN fail both tests.  First, neither alleges any concrete injury fairly

2    traceable to 34 C.F.R. § 200.56 and likely to be redressed by a judgment in its favor.  Second, Cal.

3    ACORN's and CFJ's interests are not within the zone of interests protected or regulated by NCLB.,

4    and their claims should be dismissed as a prudential matter.

    a.    *CFJ and Cal. ACORN Lack Article III Standing to Sue on Their*
5          *Own Behalf.*

6        An organization may sue on its own behalf only if the challenged conduct directly conflicts

7    with the organization's mission and has directly harmed its ability to provide its services.  The

8    organization's injury cannot be conjectural, hypothetical, speculative or abstract, but must be

9    "'certainly impending.'"  National Treasury Employees Union v. United States, 101 F.3d 1423, 1427

10   (D.C. Cir. 1996) (quoting Whitmore v. Arkansas, 495 U.S. 149, 158 (1990)).  Furthermore, the

11   organization's injury must be "'fairly traceable to the alleged illegal action and likely to be redressed

12   by a favorable court decision.'"  Coho Salmon v. Pacific Lumber Co., 61 F. Supp.2d 1001, 1009 n.3

13   (N.D. Cal 1999) (quoting Spann v. Colonial Village, Inc., 899 F.2d 24, 27 (D.C. Cir.1990)).  A policy

14   interest, regardless of how longstanding the interest in it or the organization's qualifications to address

15   the problem, is insufficient for standing.  Sierra Club v. Morton, 405 U.S. 727, 739 (1972).

16       Organizations may have standing in their own right where government action prevents them

17   from providing services.  See Havens Realty Corp. v. Coleman, 455 U.S. 363, 378-79 (1982); see also

18   Smith, 358 F.3d at 1105-06 (organization had standing to sue where it alleged that challenged practices

19   negatively impacted its mission and caused it to redirect resources to challenged practice); Fair

20   Housing of Marin v. Combs, 285 F.3d 899, 905 (9th Cir. 2002) (fair housing organization had direct

21   standing to sue real estate owner where it alleged that defendant's discriminatory practices frustrated

22   its mission and impaired its ability to provide outreach and education services).

23       Unlike organizations that have been found to have standing, see, e.g., Havens Realty, 455 U.S.

24   at 378-79, Cal. ACORN and CFJ do not allege what specifically, if anything, defendants have done

25   to make them ineffective, especially given their ability to identify, track, and obtain data for the

26   teachers they target in this suit.  See, e.g., Pls.' Ex. 2.  Furthermore, as laudable as their efforts may

27   be, the organizations cite policy disputes and disagreements with defendants' regulation, not actual

28

13
Defendants' Consolidated Memorandum in Opposition to Plaintiffs' Motion for Summary Judgment
and in Support of Their Cross Motion for Summary Judgment
Civil Action No. 3:07cv4299-PJH

1    harm to the organization's ability to advocate for improvements in public education through lobbying,

2    community organization, or other methods.  Such political disputes are insufficient to provide an

3    organization standing.  See Sierra Club, 405 U.S. at 739; Ctr. for Law and Educ. v. Dept. of Educ., 396

4    F.3d 1152, 1161-62 (D.C. Cir. 2005) (where organization alleges frustration of policy-oriented goals,

5    injury cited falls under rubric of type of abstract concern insufficient for standing); Resident Councils

6    of Washington v. Thompson, 2005 WL 1027123 at 7 (W.D. Wash. 2005).

7        **b.    *CFJ and Cal. ACORN Lack Prudential Standing Because Their Organizational Interests Are Not Within NCLB's Zone of Interests.***

8        Finally, CFJ and Cal. ACORN lack standing because their ability to function as advocacy

9    organizations is not within NCLB's "zone of interests."  See Elk Grove Unified Sch. Dist. v. Newdow,

10   542 U.S. 1, 12 (2004) (quoting Allen v. Wright, 468 U.S. 737, 751 (1984)); see also Ashley Creek

11   Phosphate Co. v. Norton, 420 F.3d 934, 939 (9th Cir. 2005).  A plaintiff cannot meet this test by

12   alleging that a regulatory scheme protects or regulates someone else's interests in a way that might

13   indirectly affect its own.  See Air Courier Conf. v. Am. Postal Workers Union, 498 U.S. 517, 522-31

14   (1991); Devlin v. Scardelletti, 536 U.S. 1, 7 (2002) (prudential standing requirements include "'general

15   prohibition on a litigant's raising another person's legal rights. ...'") (quoting Allen, 468 U.S. at 751).

16   Though the prudential standing requirement is not "especially demanding," Clarke v. Securities Indus.

17   Ass'n, 479 U.S. 388, 399 (1987), CFJ and Cal. ACORN fail to allege facts sufficient to satisfy it.

18       In relevant part, NCLB establishes minimum standards for highly qualified teachers.  20 U.S.C.

19   § 7801(23).  The Act makes no "mention of advocacy organizations' interests."  Center for Law and

20   Educ., 396 F.3d at 1157 (other part of NCLB does not mention advocacy interests and therefore

21   organization lacked standing).  NCLB may create, at most, interests for parents, students, educators

22   and education officials, and though the organizations may represent them, "the *interests* to be protected

23   are those of the parents and students, not of the organizations."  Id. at 1157.  The concerns of CFJ and

24   Cal. ACORN are therefore not within NCLB's zone of interests.  See INS v. Legalization Asst. Proj.

25   of L.A. County Fed. of Labor, 510 U.S. 1301, 1305 (1993) (O'CONNOR, J.) (stay of appellate ruling

26   because Supreme Court likely "would grant certiorari and conclude that [organizations that provide

27   legal help to immigrants] are outside of zone of interests" immigration law sought to protect; "fact that

28

14
Defendants' Consolidated Memorandum in Opposition to Plaintiffs' Motion for Summary Judgment
and in Support of Their Cross Motion for Summary Judgment
Civil Action No. 3:07cv4299-PJH

the INS regulation may affect the way an organization allocates its resources . . . does not give standing to an entity which is not within the zone of interests the statute meant to protect").

## II.    ED's Regulation Is Not Arbitrary, Capricious, or Contrary to Law.

Under the Administrative Procedure Act ("APA"), a court may set aside agency action that is "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law." 5 U.S.C. § 706(2)(A). Whether agency action violates this standard is a legal issue resolved on the basis of the agency's record, whether presented in the context of a motion under Rule 12(b) or a motion for summary judgment. Am. Bioscience, Inc. v. Thompson, 269 F.3d 1077, 1083 (D.C. Cir. 2001).

Plaintiffs' claim presents a purely legal issue governed by the well-established principles of Chevron, 467 U.S. at 844. "When a court reviews an agency's construction of a statute which it administers, it is confronted with two questions." Id. at 842. The first question is whether Congress has spoken on the precise issue, for if it has, the court and agency "must give effect to the unambiguously expressed intent of Congress." Id. at 843. If Congress has not spoken unambiguously, then the second question arises: "if the statute is silent or ambiguous with respect to the specific issue, the question for the court is whether the agency's answer is based on a permissible construction of the statute." Id.; see also Wilderness Soc'y v. U.S. Fish & Wildlife Serv., 353 F.3d 1051, 1059 (9th Cir. 2003) (court "must defer to the agency so long as the agency's answer is based on a permissible construction of the statute. In such a case an agency's interpretation of a statute will be permissible, unless arbitrary, capricious, or manifestly contrary to the statute" (citations and internal quotation marks omitted)); Newman v. Apfel, 223 F.3d 937, 946 n.4 (9th Cir. 2000) (issue "is whether the purpose and legislative history of the statutory provision plainly establishes that the [agency's] interpretation is untenable"). "[A] court may not substitute its own construction of a statutory provision for a reasonable interpretation made by the administrator of the agency." Chevron, 467 U.S. at 844. The deference accorded an agency's interpretation is a necessary part of the Executive power: "The power of an administrative agency to administer a congressionally created program necessarily requires the formulation of policy and the making of rules to fill any gap left, implicitly or explicitly, by Congress." Id. at 843 (quotation and alteration omitted).

Chevron deference applies in full to judicial review of the Secretary's regulation at issue here.

Defendants' Consolidated Memorandum in Opposition to Plaintiffs' Motion for Summary Judgment
and in Support of Their Cross Motion for Summary Judgment
Civil Action No. 3:07cv4299-PJH

1   See, e.g., Honig v. Doe, 484 U.S. 305, 325 n.8 (1988) (deferring to ED's interpretation of statute it is

2   charged with monitoring and enforcing); Bennett v. Kentucky Dep't of Educ., 470 U.S. 656, 670

3   (1985) (Chevron applies to ED's interpretation of Title I of ESEA); Ms. S. v. Vashon Island Sch. Dist.,

4   337 F.3d 1115, 1134 & n.23 (9th Cir. 2003) (ED's interpretation of IDEA entitled to Chevron

5   deference), superceded on other grounds, 20 U.S.C. § 1414(d)(1)(B).

6       **A.    Congress Has Not Defined What Is Meant by "Full State Certification as a**

7       **Teacher (Including Certification Obtained Through Alternative Routes to Certification)."**

8       Plaintiffs' argument is based on assumptions and a fundamental misconstruction of the

9   governing statute, leading them to argue that Congress has directly spoken on the issue of what

10  constitutes "full State certification as a teacher" and whether, under NCLB, teachers in alternative

11  route programs may be considered highly qualified.  In fact, Congress has not established standards

12  for determining which teachers are considered to have full State certification in order to be highly

13  qualified.  Nor has Congress unambiguously determined that a teacher participating in an alternative

14  route program cannot be highly qualified because the teacher has not already completed the program.

15      The ambiguity in the statutory language is underscored by other programs in NCLB, such as

16  the Transition to Teaching and Troops-to-Teachers programs, see, supra, Background Part B, which

17  authorize funds for alternative route programs and the recruitment and hiring of teachers without

18  traditional training. It would be incongruous to conclude that Congress intended that teachers recruited

19  and hired to work in high need schools through these programs, which Congress created to help

20  address the significant need those schools have for quality teachers, would find themselves unable to

21  teach because they were not considered highly qualified.

22      Specifically, Congress set forth no specific, unambiguous requirements that must be met for

23  a teacher to be considered fully certified for purposes of NCLB's highly qualified requirements.  See

24  20 U.S.C. § 7801(23)(A)(i).  Plaintiffs merely assume that the phrase "full State certification as a

25  teacher (including certification obtained through alternative routes to certification)" must require

26  completion of "teacher preparation programs" prior to certification. See, e.g., Pls.' Mem. at 1 (arguing

27  that Congress defined "highly qualified" to include teachers "who have completed their teacher

28  preparation programs"). On the contrary, at no point did Congress state that teachers must complete

Defendants' Consolidated Memorandum in Opposition to Plaintiffs' Motion for Summary Judgment
and in Support of Their Cross Motion for Summary Judgment
Civil Action No. 3:07cv4299-PJH

any program to be considered as having obtained "full State certification" for NCLB purposes. Nor did Congress state that certification may only be obtained "after" completion of an alternative route to certification. Rather, Congress left undefined what it meant by both "full State certification" and "certification obtained through alternative routes to certification."

On the other hand, Congress did specify that a highly qualified teacher must satisfy two additional requirements. The first requirement mandates that whatever a state's certification or licensure standards may be, the teacher must not have had them "waived on an emergency, temporary, or provisional basis." 20 U.S.C. § 7801(23)(A)(ii). This plain language does not prohibit certification for a prescribed period of time. Rather, it prohibits a teacher from being considered highly qualified while holding a <u>waiver</u> of the standards for certification or licensure established by the state.

The other requirement concerns graduation from college and content knowledge of the subject(s) taught. <u>See</u> 20 U.S.C. § 7801(B). Here, NCLB requires that, to be considered "highly qualified," new teachers have at least a bachelor's degree and demonstrate subject matter knowledge in the statutorily-defined manner. <u>See</u> 20 U.S.C. § 7801(23)(B)(i) (new elementary school teachers); <u>id.</u> § 7801(23)(B)(ii) (new middle or secondary school teachers). <u>See, supra</u>, Background Part A.

As to any other requirements that a teacher may need to be considered as having "obtained full State certification as a teacher," the statute is entirely silent, except to provide the alternative of passing a licensing examination and holding a license to teach. <u>See</u> 20 U.S.C. § 7801(23)(A)(i). Thus, Congress's interest in establishing statutory criteria for defining who is highly qualified lay not in the details governing when a teacher is fully certified to teach, but in the standards of section 7801(23)(B) for determining when a teacher has demonstrated adequate knowledge of the subject(s) taught.

Further, the ambiguity in the phrase "full State certification" is underscored by the parenthetical relating to alternative route programs. Assuming that plaintiffs are correct and that to be highly qualified, Congress intended that participants in alternative route programs must have already completed a teacher-training program, that objective would be fully accomplished by the three words "full State certification." Such an interpretation would render the parenthetical phrase "including certification through alternative routes to certification" wholly superfluous, because participants in alternative route would already be required to complete the teacher training program to have "full State

Defendants' Consolidated Memorandum in Opposition to Plaintiffs' Motion for Summary Judgment
and in Support of Their Cross Motion for Summary Judgment
Civil Action No. 3:07cv4299-PJH

1  certification." Cf. Boise Cascade Corp. v. EPA, 942 F.2d 1427 (9th Cir. 1991) (statutes should be

2  interpreted as a whole, "giving effect to each word and making every effort not to interpret a provision

3  in a manner that renders other provisions of the same statute inconsistent, meaningless or superfluous).

4     Moreover, California's certification process illustrates why Congress's choice of words is

5  ambiguous with respect to the meaning of "full State certification" and does not clearly address when

6  a teacher in an alternative route program is fully certified for NCLB purposes. As reviewed above, see,

7  supra, Background Part D, California has several types of teacher credentials, including intern,

8  preliminary, and clear or professional clear credentials. See CAL. EDUC. CODE § 44250; id. § 44325

9  et seq. (district interns); id. § 44450 et seq. (university interns); id. § 44274 (preliminary, clear, and

10 professional clear). Just as it credentials and authorizes teachers with a preliminary credential to be

11 classroom teachers, a credential plaintiffs do not challenge, California credentials and authorizes intern

12 teachers to be classroom teachers. See id. § 44326(a) (district interns); id. 44454 (university interns);

13 see also Pls.' Heredia Decl. at ¶ 4, Ex. 1 (intern credential authorizes teaching of specified subject).

14 Moreover, California does so without the need of any school district to demonstrate need, as it must

15 do to hire a teacher with an emergency permit. See 5 CAL. CODE REGS. tit. 5 § 44300(a)(3), (b).

16    Plaintiffs cite no specific standards contained in section 7801(23) that would support the

17 conclusion that California's decision to provide intern teachers with a credential authorizing them to

18 teach is somehow less than "full" certification, nor do they state any rationale based on the plain

19 language of section 7801(23)(A) for determining what Congress would consider to be missing in

20 California's authorization of intern teachers to be classroom teachers. For example, as plaintiffs

21 themselves state, some of California's teaching credentials are valid for a limited period of time. See,

22 e.g., CAL. EDUC. CODE § 44251(b); see also Pls.' Mem. at 14 n.9 (citing CAL. EDUC. CODE § 44251

23 as setting "length of time for which credentials are valid"). Under plaintiffs' argument, only

24 California's internship credential, valid for two years, violates section 7801(23)(A). Cf. Pls.' Mem.

25 at 14; see also id. (criticizing notion that a credential limited to three years "is equivalent to 'full State

26 certification' [as] refuted merely by stating it"). Yet, at no point do plaintiffs attack California's

27 preliminary credential, which is valid for no more than five years. See CAL. EDUC. CODE §

28 44251(b)(2). Plaintiffs cannot argue that California violates section 7801(A) merely by placing a time

18
Defendants' Consolidated Memorandum in Opposition to Plaintiffs' Motion for Summary Judgment
and in Support of Their Cross Motion for Summary Judgment
Civil Action No. 3:07cv4299-PJH

1    limit on a credential, when under their own argument, the time limit for the preliminary credential is

2    permissible.  And, nothing in section 7801(23)(A) sets forth any specific, measurable standard that

3    could be applied unambiguously to find the preliminary credential to be full certification while the

4    intern credential, which is obtained through alternative route programs and predates NCLB, is not.

5        The preliminary credential also demonstrates the fallacy of interpreting section 7801 to require

6    that a teacher must complete all preparation required of teachers in a state's certification process.  As

7    with many states, California's preliminary teaching credential is part of a set of graduated requirements

8    based on a teachers' years of experience.  If "full" literally meant "complete," even California teachers

9    with the initial five-year preliminary credential might also not be considered "highly qualified," as they

10   must still fulfill certain prescribed requirements to obtain the lifetime credential.

11       Further, interpreting section 7801(23)(A) as plaintiffs urge would disregard other, key

12   components of NCLB.  In determining whether a statute is ambiguous, the Supreme Court instructs

13   that a "reviewing court should not confine itself to examining a particular statutory provision in

14   isolation."  FDA v. Brown & Williamson Tobacco Corp., 529 U.S. 120, 132 (2000).  Statutory

15   ambiguity "'is a creature not [just] of definitional possiblities but [also] of statutory context."  Zuni

16   Pub. Sch. Dist. v. Dep't of Educ., 127 S. Ct. 1534, 1546 (2007) (quoting Brown v. Gardner, 513 U.S.

17   115, 118 (1994)).  Further, "the meaning of one statute may be affected by other Acts."  Brown &

18   Williamson, 529 U.S. at 133.  Thus, the Chevron step-one inquiry includes an "examination of [a

19   statute's] related provisions."  See Household Credit Servs., Inc. v. Pfennig, 541 U.S. 232, 241 (2004).

20       Review of the alternative route programs reauthorized and enacted in NCLB also demonstrates

21   that Congress could not have meant that "full State certification" requires participants in alternative

22   route programs be certified only after completion of the program.  It is undisputed that section

23   7801(23) contemplates certification obtained through alternative route programs and that NCLB

24   reauthorized and enacted three such programs – Troops to Teachers, Transition to Teaching, and the

25   Improving Teacher Quality State Grants program.  See, supra, Background Part B.  These other

26   provisions demonstrate that Congress understood that teachers participating in those programs would

27   serve as classroom teachers while they complete the program and could not have intended that school

28   districts wishing to hire them would be prevented from doing so in order to avoid hiring teachers who

Defendants' Consolidated Memorandum in Opposition to Plaintiffs' Motion for Summary Judgment
and in Support of Their Cross Motion for Summary Judgment
Civil Action No. 3:07cv4299-PJH

1  were not highly qualified, in violation of 20 U.S.C. § 6319(a).

2      Congress enacted these alternative route programs to help LEAs in high poverty and high-need

3  areas meet their teaching needs by enabling them to recruit capable individuals who had not completed

4  teacher preparation programs and quickly enable those individuals to become teachers in high need

5  schools.  For example, Congress does not consider participants in the Transition to Teaching program

6  to be unqualified to teach.  Instead, it created the program to promote the recruitment of "highly

7  qualified mid-career professionals (including highly qualified paraprofessionals), and recent graduates

8  of an institution of higher education, . . . relying on the experience, expertise, and academic

9  qualifications of" the participants "in lieu of traditional course work in the field of education.  See 20

10  U.S.C § 6681. Moreover, Congress favored Troops to Teachers for the very reason that it successfully

11  promoted the recruitment and quick placement of former military personnel with subject-matter

12  knowledge as teachers in high-need school districts.  See, e.g., 147 Cong. Rec. S4145, at S4147 (daily

13  ed. May 2, 2001) (Sen. Hutchinson) (noting the need to get military personnel into classroom in their

14  areas of expertise "although they don't have educational certificates or educational degrees"); Id. at

15  S13340 (daily ed. Dec. 17, 2001) (Sen. DeWine) (noting the need to involve members of the military

16  and individuals from other fields "with real world jobs" and to "make it easy for them to enter the

17  classroom).  Indeed, even Senator Kennedy, whom plaintiffs cite as critical of 34 C.F.R. § 200.56, see

18  Pls.' Mem. at 17, praised alternative route programs and stated that they were a critical component of

19  efforts to recruit teachers.  See 148 Cong. Rec. S 5341, 5342-43.

20      Further, Congress specifically intended that the qualified participants in these programs would

21  teach in high-need schools.  See 20 U.S.C. § 6683(i) (participant in Transition to Teaching must teach

22  in "high need" schools for minimum of three years); id. § 6602(3) (high need LEAs must have 10,000

23  children from families with incomes below poverty line or at least 20% of its children from families

24  below the poverty level); id. § 6682(3) (high need school must have 30% of its children from families

25  below poverty line or be able to substantiate significant teacher needs); 20 U.S.C. § 6674(a)(1)(B)

26  (participants in Troops-to-Teachers must agree to teach for at least three years in high need LEAs).

27      Thus, Congress understood that, by authorizing and encouraging the use of these programs,

28  participants would be teaching in schools governed by NCLB, and specifically in the high need schools

20
Defendants' Consolidated Memorandum in Opposition to Plaintiffs' Motion for Summary Judgment
and in Support of Their Cross Motion for Summary Judgment
Civil Action No. 3:07cv4299 PJH

cited by plaintiffs. Congressional understanding of the term "alternative route to teaching" was consistent with the popular understanding of that term. See generally Feistritzer and Chester, Alternative teacher Certification: A State-by-State Analysis 2002, National Center for Alternative Certification, Washington DC (2002) [contained in A.R. at AR00001801-AR00001812]; see also id. at AR0001805 (noting that alternative route programs are popular, for many reasons, among them being that they are (1) field-based and provide mentoring, (2) are "tailor-made" in that they are designed to meet the needs of individuals who already have a college degree and often other work experience, and (3) "recruit individuals for specific teaching positions and place prospective teachers in those jobs early in their training programs."). Indeed, in a report of the House Committee on Education and the Workforce refers to Ms. Feistritzer's testimony on the subject of the qualities that make alternative route programs attractive and effective. See H.R. Rep. No. 107-63 at 317-18 (accompanying bill that would become NCLB).

Plaintiffs argue that these programs were intended merely to recruit teachers who would be considered to be highly qualified after completion of the alternate route program. See, e.g., Pls.' Mem. at 18. Accepting plaintiffs' argument would place the states and LEAs in the contradictory position of using these congressionally-authorized programs to place quality participants in high-need schools but, by doing so, being considered in violation of NCLB's requirement that they hire only highly qualified teachers. It is inconsistent with Congress's enactment of these alternate route programs to conclude that Congress intended that participants be hired in violation of the statutory requirement governing use of Title I funds in 20 U.S.C. § 6319(a) that all teachers of core academic subjects be highly qualified. Indeed, interpreting section 7801(23) as plaintiffs propose would make it even more difficult for alternative route programs to contribute to alleviating the shortage of teachers. Cf. 148 Cong. Rec. at S5341 (remarks of Sen. Kennedy) (citing need to hire more than 200,000 teachers to address shortage and stating that alternative routes can be only one part of the solution).

### B.    The Regulation Is a Proper Application of Agency Expertise and is Consistent with Congressional Intent.

Under Chevron, "[t]he power of an administrative agency to administer a congressionally created . . . program necessarily requires the formulation of policy and the making of rules to fill any

1  gap left, implicitly or explicitly, by Congress." 467 U.S. at 843. Thus, where a statute is silent or

2  ambiguous, "<u>Chevron</u> requires a federal court to accept the agency's construction of the statute, even

3  if the agency's reading differs from what the court believes is the best statutory interpretation,"

4  provided the "agency's construction is reasonable." <u>Nat'l Cable & Telecommunications Ass'n v.

5  Brand X Internet Servs.</u>, 545 U.S. 967, 980 (2005). So long as there is a rational basis for the agency's

6  decision, the court must uphold that decision. <u>See</u> <u>Nationsbank v. Variable Annuity Life Ins. Co.</u>, 513

7  U.S. 251, 257 (1995) (where agency's "reading . . . defines a term in a way that is reasonable in light

8  of the legislature's revealed design, the [court must] give the [agency's] judgment 'controlling

9  weight'"); <u>Univ. Med. Ctr. v. Thompson</u>, 380 F.3d 1197, 1201 (9th Cir. 2004) ("When Congress's

10  intent cannot be clearly discerned from the statutory language, courts must defer to an agency's

11  interpretation so long as it is 'based on a permissible construction of the statute.'"); <u>Wilson v.

12  Secretary, Dep't of Veteran Affairs</u>, 65 F.3d 402, 404 (5th Cir. 1995) ("The agency decision need only

13  have a rational basis, and it does not have to be a decision which the court would have made.").

14      Section 200.56(a)(2)(ii) resolves the ambiguity in 20 U.S.C. § 7801(23)(A), addresses the

15  concerns expressed by Congress in enacting NCLB, and is based on consideration of factors discussed

16  in the administrative record. Further, it does not improperly permit teachers "with no prior training

17  nor any prior experience" to be deemed highly qualified, as plaintiffs argue. <u>See</u> Pls.' Mem. at 6.

18  First, the regulation does not state that participants in alternative route programs are automatically

19  deemed "highly qualified," as plaintiffs' charge. <u>See</u> Pls.' Mem. at 1 (arguing that teachers

20  participating in alternative route programs "are, by Defendants' regulation, '"highly qualified"'"); <u>id.</u>

21  at 18 (challenging regulation as permitting participants to "instantaneously become 'highly qualified'

22  the day they join the alternative route program"). The regulation merely defines one way that a teacher

23  may be deemed, for purposes of NCLB's highly qualified teacher requirements, to have "full State

24  certification" to teach and when certification may be granted "through" an alternative route program.

25  <u>See</u> 34 C.F.R. § 200.56(a) (stating circumstances under which participant in alternative route program

26  may be considered as having "full State certification as a teacher" or to be licensed to teach). Full state

27  certification is only one criterion that a teacher must satisfy to be considered "highly qualified."

28      Second, the regulation is entirely consistent with the minimal other criteria Congress did

22
Defendants' Consolidated Memorandum in Opposition to Plaintiffs' Motion for Summary Judgment
and in Support of Their Cross Motion for Summary Judgment
Civil Action No. 3:07cv4299-PJH

specify for considering teachers to be "highly qualified": having at least a bachelor's degree and demonstrating relevant subject-matter knowledge. 20 U.S.C. § 7801(B). Each of these requirements is maintained in ED's regulation. See 34 C.F.R. 200.56(b)(teachers are highly qualified only if they meet the requirements of paragraph (a) for full state certification and demonstrate content knowledge as prescribed in either paragraph (b), applicable to new teachers, or paragraph (c), applicable to teachers not new to profession). Plaintiffs' argument entirely ignores these additional requirements.

Further, ED's regulation also places additional substantive requirements for teachers in alternative route programs considered fully certified under subsection (a)(2)(ii) that would otherwise not be present absent the regulation. Because Congress has not defined any minimal standards that a state must meet before certifying a teacher, absent further regulation by the Secretary, states could resolve the ambiguity by certifying teachers participating in any alternative route program. ED's regulation further defines what a State may consider to constitute "full State certification" by requring that participants in alternative route programs who have not yet completed the program must also:

> (1) Receive[] high-quality professional development that is sustained, intensive, and classroom focused in order to have a positive and lasting impact on classroom instruction, before and while teaching;
> (2) Participate[] in a program of intensive supervision that consists of structured guidance and regular ongoing support for teachers or a teacher mentoring program;
> (3) Assume[] functions as a teacher only for a specified period of time not to exceed three years; and
> (4) Demonstrate[] satisfactory progress toward full certification as prescribed by the State.

34 C.F.R. § 200.56(a)(2)(ii)(A). This provision not only ensures that teachers who would become fully certified for purposes of the NCLB definition of highly qualified are participating in programs that Congress presumably wanted to be effective. See Feistritzer and Chester, A.R. at AR00001801-12. It also draws a reasonable line between participation in an alternative route program that can legitimately offer full State certification and what might appear to, in effect, impermissibly permit "certification or licensure requirements waived on an emergency, temporary, or provisional basis." Compare 20 U.S.C. § 7801(A)(ii). Thus, these standards respond to concerns that states might certify alternative route participants who lacked sufficient training. See A.R. at AR0000099.

Third, these standards, along with the statutory standards of section 7801 (bachelor's degree, subject matter knowledge) rebut plaintiffs' charge that the regulation undermines teacher quality in

Defendants' Consolidated Memorandum in Opposition to Plaintiffs' Motion for Summary Judgment
and in Support of Their Cross Motion for Summary Judgment
Civil Action No. 3:07cv4299-PJH

poor and minority schools. <u>See</u> Pls.' Mem. at 19. ED's regulation requires that all teachers in poor and minority schools, just like all other teachers, meet these standards to be considered highly qualified. Indeed, both the Council of Great City Schools, which represents many of the Nation's largest urban school districts, and the Education Trust, a nonprofit organization that advocates on behalf of quality education for poor and disadvantaged students strongly supported the thrust of the proposed section 200.56. <u>See</u> A.R. at AR0000113, 126, 191, 196.[11] Moreover, the need for poor and minority students – indeed, all students – to have a quality education is measured by NCLB in other ways not affected by section 200.56. For example, states must show that students are making adequate yearly progress academically, in addition to ensuring that teachers meet the statutory and regulatory requirements to be considered highly qualified. <u>See</u> 20 U.S.C. §§ 6311(b)(2), 6316(b)(7)(C).

Fourth, these standards rebut plaintiffs' charge that the regulation is contrary to concerns expressed by members of Congress during debate on NCLB. Plaintiffs cite the insertion of "full" into section 7801 by the Conference Committee. <u>See</u> Pls.' Mem. at 15-16. Yet, as plaintiffs acknowledge, the Conference Committee did so without debate. Plaintiffs cite no explanation by the Conference Committee whatsoever of its purpose and certainly nothing stating that this phrase is "unambiguous or unyielding," as plaintiffs wish it to be. <u>See</u> Pls.' Mem. at 16. The Conference Committee therefore provides no guidance whatsoever, let alone guidance that undermines the Secretary's regulation.

Plaintiffs also cite concerns expressed by members of Congress during debate. Plaintiffs cite comments by Congresswoman Solis and Congressman Miller expressing concerns about whether teachers were in fact certified to teach. <u>See</u> Pls.' Mem. at 16. The regulation does not allow an exemption from certification requirements, but provides standards that states must apply when considering teachers to be fully certified for purposes of determining whether they are highly qualified; the regulation does not permit uncertified teachers to teach. <u>See</u> 34 C.F.R. § 200.56 (stating only that teachers meeting the requirements of subsection (a)(2) are deemed to meet the licensing and certification requirements of subsection (a)(1)). Plaintiffs also cite concerns by Senator Lieberman that teachers have crucial subject matter knowledge needed by today's students. <u>Id.</u> Again, ED's

---

[11] The Secretary's revisions of section 200.56 for final promulgation addressed the Education Trust's concerns about the breadth of the proposed rule.

24
Defendants' Consolidated Memorandum in Opposition to Plaintiffs' Motion for Summary Judgment
and in Support of Their Cross Motion for Summary Judgment
Civil Action No. 3:07cv4299-PJH

1  regulation requires that participants in alternative routes demonstrate subject matter knowledge as

2  required by Congress to be considered highly qualified.  Compare 20 U.S.C. § 7801(23)(B)(i)(II),

3  (ii)(I), (II) with 34 C.F.R. § (b)(2), (3)(i), (3)(ii).

4      Fifth, ED's regulation recognizes the importance that Congress has placed on alternative route

5  programs.  Indeed, in promulgating section 200.56, the Secretary recognized that schools should be

6  permitted, consistent with Congress's intent, to use alternative route programs to increase the pool of

7  available teachers.  See A.R. at AR0000099.  And, by defining when states may consider participants

8  in alternative route programs to be fully certified, ED's regulation contributes to the continued integrity

9  of alternative route programs by ensuring that such programs meet Congress's objectives rather than

10  becoming "long term vehicles for waiving state requirements for full certification."  See id.

11      Finally, plaintiffs cite the Secretary's explanation of section 200.56 to argue that the regulation

12  improperly allows participants in alternative route programs to be considered highly qualified on a

13  provisional basis not to exceed three years.  See Pls.' Mem. at 14.  Contrary to argument, the plain

14  language of the regulation itself provides no exception that could be considered a waiver.  Instead, the

15  regulation plainly provides an avenue by which states may consider the teacher to be fully certified,

16  not an avenue by which states may waive otherwise applicable requirements for full certification.

17      Because ED's regulation maintains all the specific standards enacted by Congress for teachers

18  to be considered "highly qualified" and has a rational basis for defining how states may consider

19  participants in alternative route programs to be fully certified, section 200.56 is a proper construction

20  of 20 U.S.C. § 7801(23) and is therefore entitled to deference by this Court under Chevron.

21  **C.    Plaintiffs' Proffered Evidence Is Irrelevant and Cannot Be Considered by This Court because It Is Not Part of the Administrative Record.**

22      In addition to arguing against the regulation's reasonableness, plaintiffs attempt to bolster their

23  position by submitting declarations and other material in an apparent attempt to build an evidentiary

24  record separate from the administrative record.  This is entirely improper in a case such as this.  Under

25  the APA's arbitrary and capricious standard, the scope of judicial review is narrow.  See Motor

26  Vehicle Mfrs. Ass'n v. State Farm Mut. Auto Ins. Co., 463 U.S. 29 (1983).  The Court may not

27  substitute its judgment for that of the agency.  Citizens to Preserve Overton Park v. Volpe, 401 U.S.

28

25
Defendants' Consolidated Memorandum in Opposition to Plaintiffs' Motion for Summary Judgment
and in Support of Their Cross Motion for Summary Judgment
Civil Action No. 3:07cv4299-PJH

402, 416 (1971).  Instead, the Court is limited to determining "whether the decision was based upon a consideration of the relevant factors and whether there has been a clear error of judgment."  Overton Park, 401 U.S. at 416; see also Marsh v. Oregon Natural Resources Council, 490 U.S. 360 (1989).

Thus, the Supreme Court has repeatedly held that, with limited exceptions not applicable here, judicial review of agency action is limited to the administrative record.  A  reviewing court "is not generally empowered to conduct a de novo inquiry into the matter being reviewed."  Florida Power & Light Co. v. Lorion, 470 U.S. 729, 744 (1985); see also Great Basin Mine Watch v. Hankins, 456 F.3d 955, 975 (9th Cir. 2006).  Instead, the high degree of deference afforded to an agency's designation of its administrative record is crucial to the judicial and administrative processes:

> [J]udicial reliance on an agency's stated rationale and findings is central to a harmonious relationship between agency and court, one which recognizes that the agency and not the court is the principal decision-maker.  Were courts cavalierly to supplement the record, they would be tempted to second-guess agency decisions in the belief that they were better informed than the administrators empowered by Congress and appointed by the President.  The accepted deference of court to agency would be turned on its head:  the so-called administrative state would be replaced with one run by judges lacking the expertise and resources necessary to discharge the function they had arrogated unto themselves.

Deukmejian v. Nuclear Regulatory Comm'n, 751 F.2d 1287, 1325-26 (D.C. Cir. 1984).  In addition, the agency's designation of the administrative record is entitled to a presumption of regularity, a presumption overcome only on a showing of "clear evidence" to the contrary.  Bar MK Ranches v. Yeutter, 994 F.2d 735, 740 (10th Cir. 1993).  Accordingly, the "'focal point for judicial review should be the administrative record already in existence, not some new record made initially in the reviewing court,'" and review should be "based on the record the agency presents to the reviewing court."  Fla. Power & Light Co., 470 U.S. at 743-44 (quoting Camp v. Pitts, 411 U.S. 138, 143 (1973) and citing Citizens to Preserve Overton Park v. Volpe, 401 U.S. 402 (1971)).  Should the Court find that "the record before the agency does not support agency action, if the agency has not considered all relevant factors, or if the reviewing court simply cannot evaluate the challenge of agency action on the basis of the record before it, the proper course, except in rare circumstances, is to remand to the agency for additional investigation or explanation."  Id. at 744.

Though the Ninth Circuit permits supplementation of an agency record in limited circumstances, see Great Basin Mine Watch, 456 F.3d at 975, plaintiffs have not shown that any of

Defendants' Consolidated Memorandum in Opposition to Plaintiffs' Motion for Summary Judgment
and in Support of Their Cross Motion for Summary Judgment
Civil Action No. 3:07cv4299-PJH

these exceptions applies here.  Instead, plaintiffs submit this outside evidence "to cast doubt on the wisdom" of the agency's decision.  See National Treasury Employees Union v. Hove, 840 F.Supp. 165, 169 (D.C. Cir. 1994).  Such a purpose is improper, and the Court should therefore disregard plaintiffs' extraneous material.[12]

### III.   EVEN IF PLAINTIFFS WERE TO SUCCEED, THEY REQUEST RELIEF TO WHICH THEY ARE NOT ENTITLED.

#### A.   Plaintiffs Are Not Entitled to the Broad, Sweeping Relief They Request in Their Complaint.

Plaintiffs rely upon the APA's provision permitting a Court to "hold unlawful or set aside" a challenged agency action that is arbitrary, capricious, an abuse of discretion, or otherwise contrary to law.  Pls.' Mem. at 21 (citing 5 U.S.C. § 706(2)).  Yet, plaintiffs ask the Court to do much more than this.  In addition setting aside section 200.56, plaintiffs seek an injunction against submission of the statutorily-required report to Congress on progress toward meeting the requirements of NCLB for the 2005-06 school year, First Am. Compl. at 36; Pls.' Prop. Order at 4-5, an order that defendants notify Congress that the 2002-03 report to Congress relied upon an unlawful definition of highly qualified teachers, First Am. Compl. at 36; Pls.' Prop. Order at 5, and an order that defendants notify the states that the regulation is unlawful and specifying the terms of guidance defendants must give the States. First Am. Compl. at 36; Pls.' Prop. Order at 4.

These requests go well beyond the relief available under the APA.  Plaintiffs seeking affirmative relief under the APA are generally limited to seeking enforcement under 5 U.S.C. § 706((1) of mandatory obligations that an agency take specific, discrete action prescribed by law.  See Norton v. Southern Utah Wildlife Alliance, 542 U.S.  55, 63 (2004) (ruling that "the only agency action that can be compelled under the APA is action legally *required*." (italics in original)); see also id. at 65 (terms of APA "rule[] out judicial direction of even discrete agency action that is not demanded by law").  Plaintiffs point to no statutory or regulatory obligation that would require the additional affirmative relief they request.  Plaintiffs also cite no private cause of action in the NCLB or any other

---

[12]  For these same reasons, defendants could move to strike this extraneous material.  However, the Supreme Court has made clear that the Court is not to consider this material, and, thus, the Court need only determine to disregard the material in reviewing the regulation.

27
Defendants' Consolidated Memorandum in Opposition to Plaintiffs' Motion for Summary Judgment
and in Support of Their Cross Motion for Summary Judgment
Civil Action No. 3:07cv4299-PJH

statute regarding whether additional guidance beyond regulations the Secretary deems appropriate, see 20 U.S.C. § 6311, should be provided to the states or to Congress.  Further, although the Ninth Circuit has held that <u>Norton</u> may be distinguishable when claims are brought under 5 U.S.C. § 706(2), see <u>Northwest Env't Def. Ctr. v. Bonneville Power Admin.</u>, 477 F.3d 668, 681 & n.10 (9th Cir. 2007), plaintiffs have set forth no rationale for why such additional relief beyond an order setting aside 34 C.F.R. § 200.56(a)(2)(ii) is necessary to provide them full redress.  Thus, plaintiffs' request for affirmative relief goes well beyond the APA's remedy of compelling only agency action "unlawfully withheld or unreasonably delayed."  5 U.S.C. § 706(2).

Moreover, plaintiffs have cited no rational for remedies involving reports to Congress nor any injury-in-fact that would entitle them to relief based upon such reports.  Congress is presumed to be aware of the law, and defendants published section 200.56 in 2002.  Indeed, Congress's knowledge of the regulation is demonstrated on the record by submissions of comments by congressional committees.  <u>See, e.g.</u>, A.R. at AR0000108-111.  Further, it is inconceivable that Congress would not be aware of any decision by this Court that adversely affects the Secretary's NCLB regulations and declares that participants in Teach for America could not be considered "highly qualified" under NCLB.  Moreover, any injury plaintiffs claim to suffer from the 2002-03 or 2005-06 reports to Congress is entirely too speculative to provide them with Article III standing.  <u>See Lujan</u>, 504 U.S. at 561 (plaintiffs must demonstrate concrete and particularized injury that is actual or imminent, not conjectural or hypothetical); <u>Assoc. Gen. Contractors</u>, 508 U.S. at 663 (standing requires showing of injury in fact, causal relationship between injury and challenged activity, and that favorable court ruling will redress alleged injury); <u>cf.</u> <u>Lance</u>, 127 S. Ct. at 1196 (2007) (Supreme Court has "'consistently held that a plaintiff raising only a generally available grievance about government – claiming only harm to his and every citizen's interest in proper application of the Constitution and laws, and seeking relief that no more directly and tangibly benefits him than it does the public at large – does not state an Article III case or controversy.'" (quoting <u>Lujan</u>, 504 U.S. at 573-74)).

Finally, plaintiffs' request that the Court prohibit the Secretary from reporting to Congress is not only improper, but entirely inconsistent with the APA.  Congress requires the Secretary to report to it annually.  <u>See</u> 20 U.S.C. § 6311(h)(5).  The APA only provides an avenue to compel compliance

Defendants' Consolidated Memorandum in Opposition to Plaintiffs' Motion for Summary Judgment
and in Support of Their Cross Motion for Summary Judgment
Civil Action No. 3:07cv4299-PJH

1     with statutory requirements, not to prohibit such compliance, as plaintiffs request.

2         **B.     Plaintiffs Are Not Entitled to a Nationwide Injunction.**

3         Finally, plaintiffs argue that if the Court were to determine that section 200.56 is invalid, the

4     Court should enter a nationwide injunction against the regulation rather than limit the scope of relief

5     to the schools attended by the individual minor plaintiffs. See Pls.' Mem. at 21-23. Plaintiffs' citation

6     of Earth Island Institute v. Ruthenbeck, 490 F.3d 687 (9th Cir. 2007), to argue that the Ninth Circuit

7     holds that the APA compels a nationwide injunction when regulations are invalidated, see Pls.' Mem.

8     at 21-22, is inconsistent with Supreme Court caselaw. Indeed, the Supreme Court has agreed to review

9     the Ninth Circuit's holding in Earth Island Institute. See Summers v. Earth Island Inst., __ S. Ct. __,

10    2008 WL 161477 (Jan. 18, 2008) (granting cert. in Earth Island Institute, 490 F.3d 687).

11        A nationwide injunction would conflict with Supreme Court caselaw in several ways. First,

12    such an injunction would constitute an exercise of power to vacate in their entirety agency regulations

13    that Congress has only rarely conferred and has been limited to certain regulations that may be

14    challenged before the United States Court of Appeals for the District of Columbia Circuit, while

15    freeing plaintiffs from constraints (such as a specified appellate-court venue and a short filing period)

16    that are characteristic of such provisions. See, e.g., 42 U.S.C. § 7607(b)(1) (authorizing petition for

17    review of EPA Clean Air Act regulation with nationwide applicability if filed in D.C. Circuit within

18    60 days after rule published). Second, a nationwide injunction would grant relief usually available

19    only in a nationwide class action, but without the procedural prerequisites and protections mandated

20    by Federal Rule of Civil Procedure 23 and without the prospect of nationwide preclusive effect in the

21    government's favor if the named plaintiff loses on the merits.

22        Most important, such an injunction would effectively disregard the usual process by which

23    recurring legal issues involving the federal government may be relitigated in different circuits, in

24    contradiction of Supreme Court precedent. In holding that non-mutual collateral estoppel should not

25    apply to the federal government, the Supreme Court explained that:

26            A rule allowing nonmutual collateral estoppel against the government . . . would
              substantially thwart the development of important questions of law by freezing the first
27            final decision rendered on a particular legal issue. Allowing only one final adjudication
              would deprive [the Supreme] Court of the benefit it receives from permitting several
28            courts of appeals to explore a difficult question before [the Supreme] Court grants

29
Defendants' Consolidated Memorandum in Opposition to Plaintiffs' Motion for Summary Judgment
and in Support of Their Cross Motion for Summary Judgment
Civil Action No. 3:07cv4299-PJH

1    certiorari.

2    United States v. Mendoza, 464 U.S. 154, 160 (1984).  Entering a nationwide injunction in this case

3    would introduce the same practical difficulties that the Supreme Court sought to avoid in Mendoza.

4        Finally, the APA's statement that a reviewing court should "hold unlawful and set aside"

5    agency action, 5 U.S.C. § 706(2), should not be read as overturning the normal presumption that

6    equitable relief be tailored to the particular agency action and the parties before the Court (as well as

7    the district in which the Court resides).  Instead, injunctive relief "should be no more burdensome to

8    the defendant than necessary to provide complete relief to the plaintiffs."  Califano v. Yamasaki, 442

9    U.S. 682, 702 (1979); see also Dep't of Defense v. Meinhold, 510 U.S. 939 (1993) (staying Armed-

10   Forces wide injunction, except as applied to individual plaintiff).  Plaintiffs have not shown that the

11   injury they assert requires a nationwide injunction rather than one applicable within their school

12   districts.  All of the individual plaintiffs are residents of the State of California.  See generally First

13   Am. Compl. at ¶¶ 6-17.  Even if the organizational plaintiffs are found to have standing, they are also

14   based in California.  See id. ¶ 37 (CFJ efforts focused on "improving educational opportunities in

15   California's public schools"); id. ¶ 39 (Cal. ACORN is California affilliate of national organization,

16   and is based in Oakland, California with chapters in California).  Accordingly, entry of a nationwide

17   injunction would improperly grant them relief they do not need and deny the government and the

18   Supreme Court the benefit of litigating this issue before multiple courts and courts of appeals.

19   **CONCLUSION**

20       For the reasons stated, defendants request that the Court deny plaintiffs' motion for summary

21   judgment and grant defendants' cross motions to dismiss and for summary judgment.

22

23

24

25

26

27

28

Defendants' Consolidated Memorandum in Opposition to Plaintiffs' Motion for Summary Judgment
and in Support of Their Cross Motion for Summary Judgment
Civil Action No. 3:07cv4299-PJH

1

**CERTIFICATE OF SERVICE**

2

I hereby certify that on February 15, 2007, a true and correct copy of the foregoing Defendants'

3

Opposition to Plaintiffs' Motion for Summary Judgment and in Support of Their Cross-Motions to

4

Dismiss and for Summary Judgment was served by the Court's ECF system upon the following:

5

6

John T. Affeldt
Jenny Pearlman
Tara Kini

7

PUBLIC ADVOCATES, INC.
131 Steuart Street, Suite 300

8

San Francisco, CA 94105

9

Patrick Thompson
Nicole E. Perroton
Elizabeth F. Stone

10

GOODWIN PROCTER LLP

11

Three Embarcadero Center, Third Floor
San Francisco, CA 94111

12

Jeffrey Simes

13

GOODWIN PROCTER LLP
599 Lexington Avenue

14

New York, NY 10022

15

David B. Cook
GOODWIN PROCTER LLP

16

901 New York Avenue, N.W.
Washington, D.C. 20001

17

Attorneys for Plaintiffs

18

19

_____
/S/
MICHAEL Q. HYDE

20

21

22

23

24

25

26

27

28

Defendants' Consolidated Memorandum in Opposition to Plaintiffs' Motion for Summary Judgment
and in Support of Their Cross Motion for Summary Judgment
Civil Action No. 3:07cv4299-PJH