# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF CALIFORNIA

|  |  |
|---|---|
| SONYA RENEE, et al., | Civil Action No. 3:07cv4299-PJH |
| Plaintiffs, | |
| v. | [proposed] **ORDER** |
| MARGARET SPELLINGS, et al., | |
| Defendants. | |

Before the Court are plaintiffs' Motion for Summary Judgment, defendants' opposition thereto, defendants' cross motion for summary judgment, and plaintiffs' opposition thereto. Upon consideration of these motions, the Court denies plaintiffs' motion for summary judgment and grants defendants' cross motion for summary judgment.

Plaintiffs are individual minors, their parents, and their *guardian ad litems*, as well as two organizations. Plaintiffs bring suit under the Administrative Procedure Act, 5 U.S.C. § 706, seeking an order to set aside a regulation promulgated by the Secretary of Education, specifically, 34 C.F.R. § 200.56(a)(2)(ii). The regulation challenged implements a provision in the No Child Left Behind Act of 2002 ("NCLB"). See Pub. L. No. 107-110, 115 Stat. 1425 (2002) (codified at 20 U.S.C. § 6301 *et seq.*). NCLB reauthorizes Title I of the Elementary and Secondary Education Act of 1965, Pub. L. No. 89-10, 79 Stat. 27 (codified as amended at 20 U.S.C. § 6301-6578), and in particular its Title I, Part A program ("Title I"), under which the Department of Education provides grants to state educational agencies ("SEAs") and local educational agencies ("LEAs") to improve the academic achievement of children enrolled in high poverty schools. Key to this goal is the requirement that SEAs receiving Title I funds establish statewide accountability systems based on state academic content and student achievement standards in certain subjects to determine whether students are making adequate yearly progress in meeting state standards. See 20 U.S.C. § 6311.

Underscoring the importance of teachers, NCLB requires SEAs receiving Title I funds to ensure that all public school teachers of "core academic subjects" meet certain prescribed standards to be considered "highly qualified." NCLB defines the term "highly qualified" as it applies to teachers

to mean that the teacher has met all of three criteria: full state certification or licensure, possession of at least a bachelor's degree, and demonstration of subject-matter knowledge in each subject taught. See generally 20 U.S.C. § 7801(23). With regard to full state certification, this provision provides:

> The term "highly qualified"--
> (A) when used with respect to any public elementary school or secondary school teacher teaching in a State, means that--
>     (i) the teacher has obtained full State certification as a teacher (including certification obtained through alternative routes to certification) or passed the State teacher licensing examination, and holds a license to teach in such State, except that when used with respect to any teacher teaching in a public charter school, the term means that the teacher meets the requirements set forth in the State's public charter school law; and
>     (ii) the teacher has not had certification or licensure requirements waived on an emergency, temporary, or provisional basis;

Id. § 7801(23)(A).

With regard to subject-matter knowledge, NCLB requires that a "highly qualified" elementary school teacher new to the profession must also pass a rigorous state test of subject matter knowledge and teaching skills in reading, writing, mathematics, and other areas of basic elementary education. See id. § 7801(B)(i). Middle and secondary school teachers new to the profession must demonstrate either (1) passing a rigorous state academic subject test in each subject taught, or (2) successfully completing, in each subject taught, an academic major or equivalent undergraduate coursework, a graduate degree, or other advanced certification or credentialing. See id. § 7801(23)(B)(i), (ii).

NCLB also reauthorizes and enacts programs providing alternative routes to teacher certification, which are vehicles through which states may encourage mid-career professionals and qualified individuals who are not in a traditional teacher preparation program, but who have other relevant educational and work experience, to become teachers. See Administrative R. ("A.R.") at AR000404-07, 001801-12. Specifically, NCLB reauthorized the Troops-to-Teachers program, see generally 20 U.S.C. § 6671 et seq., "to assist eligible members of the Armed Forces . . . to obtain certification or licensing . . . to become highly qualified teachers." Id. § 6672(b). This program facilitates the hiring of participants by LEAs with high "concentrations of children from low-income families" or that are "experiencing a shortage of highly qualified teachers, in particular a shortage of science, mathematics, special education, and vocational or technical teachers." Id. § 6672(b)(2)(A). This program uses "alternative approaches . . . , such as innovative methods to gaining field-based

2

1  teaching experiences" and "assessment of background and experience as related to skills, knowledge,

2  and abilities." Id. § 6676(c)(3).  In addition, NCLB's Transition to Teaching program, see generally

3  20 U.S.C. § 6681 *et seq.*, is designed to "recruit and retain highly qualified mid-career professionals"

4  and "recent [college] graduates" to be teachers in high-need schools, including through "alternative

5  routes to certification." Id. § 6681(1).  Finally, NCLB created the Improving Teacher Quality State

6  Grants program. See generally 20 U.S.C. §§ 6601 *et seq*.  This program authorizes grants to SEAs and

7  LEAs to increase teacher quality and the number of highly qualified teachers, and, thus, complements

8  efforts of other NCLB programs in helping SEAs and LEAs to improve student academic achievement.

9  20 U.S.C. § 6601.

10      NCLB authorizes the Secretary to issue regulations "as are necessary to reasonably ensure that

11  there is compliance with [Title I]."  Id. § 6571(a).  After notice and comment, the Secretary

12  promulgated Section 200.56, which states in relevant part:

13  To be a "highly qualified teacher," a teacher covered under § 200.55 must meet the
requirements in paragraph (a) and either paragraph (b) or (c) of this section.

14      (a) In general.

15          (1) Except as provided in paragraph (a)(3) of this section, a teacher
covered under § 200.55 must--

16              (i) Have obtained full State certification as a teacher, which may
include certification obtained through alternative routes to
certification; or

17              (ii)(A) Have passed the State teacher licensing examination; and

18                  (B) Hold a license to teach in the State.

19          (2) A teacher meets the requirement in paragraph (a)(1) of this section
if the teacher--

20              (i) Has fulfilled the State's certification and licensure
requirements applicable to the years of experience the teacher
possesses; or

21              (ii) Is participating in an alternative route to certification
program under which--

22                  (A) The teacher--

23                      (1) Receives high-quality professional
development that is sustained, intensive, and
classroom-focused in order to have a positive and
lasting impact on classroom instruction, before and
while teaching;

24

25                      (2) Participates in a program of intensive
supervision that consists of structured guidance and
regular ongoing support for teachers or a teacher
mentoring program;

26

27                      (3) Assumes functions as a teacher only for a
specified period of time not to exceed three years; and

28                      (4) Demonstrates satisfactory progress toward

3

full certification as prescribed by the State; and
(B) The State ensures, through its certification and licensure process, that the provisions in paragraph (a)(2)(ii) of this section are met.
(3) A teacher teaching in a public charter school in a State must meet the certification and licensure requirements, if any, contained in the State's charter school law.
(4) If a teacher has had certification or licensure requirements waived on an emergency, temporary, or provisional basis, the teacher is not highly qualified.

(b) Teachers new to the profession. A teacher covered under § 200.55 who is new to the profession also must--
(1) Hold at least a bachelor's degree; and
(2) At the public elementary school level, demonstrate, by passing a rigorous State test (which may consist of passing a State certification or licensing test), subject knowledge and teaching skills in reading/language arts, writing, mathematics, and other areas of the basic elementary school curriculum; or
(3) At the public middle and high school levels, demonstrate a high level of competency by--
(i) Passing a rigorous State test in each academic subject in which the teacher teaches (which may consist of passing a State certification or licensing test in each of these subjects); or
(ii) Successfully completing in each academic subject in which the teacher teaches--
(A) An undergraduate major;
(B) A graduate degree;
(C) Coursework equivalent to an undergraduate major; or
(D) Advanced certification or credentialing.

34 C.F.R. § 200.56.

Summary judgment is appropriate where "there is no genuine issue as to any material fact and . . . the movant is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). Since this case may be resolved as a matter of law, summary judgment is appropriate. See Fed. R. Civ. P. 56(c).

First, the Court finds that plaintiffs lack standing to challenge 34 C.F.R. § 200.56 because they fail to allege any injury that would be remedied by the requested relief. To have standing under Article III of the Constitution, plaintiffs must show (1) an injury in fact, meaning the invasion of a legally protected interest that is "concrete and particularized" and "actual or imminent, not conjectural or hypothetical," (2) a causal relationship between the injury and the challenged activity, and (3) that a favorable court ruling will redress the injury. Northeastern Fla. Chapter, Assoc. Gen. Contractors v. Jacksonville, 508 U.S. 656, 663 (1993). Because standing is jurisdictional, plaintiffs bear the burden to establish each element with the manner and degree of proof required at each stage of litigation.

4

1 | Lujan v. Defenders of Wildlife, 504 U.S. 555, 560 (1992).

2 |     Plaintiffs point to California's certification of "intern" teachers as the basis for their challenge

3 | of 34 C.F.R. § 200.56(c)(2)(ii), arguing that the regulation improperly permits California to consider

4 | intern teachers who participate in alternative route programs to have "full" certification and be

5 | considered "highly qualified."  Whatever injury they have suffered either from California's

6 | certification of these "intern" teachers or its consideration of them as "highly qualified," plaintiffs fail

7 | to show that the injury results from 34 C.F.R. § 200.56(c)92)(ii) or would be remedied by its

8 | invalidation. California statutes provide a teaching credential to intern teachers to teach their subjects

9 | and grade levels. See CAL. EDUC. CODE § 44250 (providing for intern teaching credentials); id. §

10 | 44326(a) (holders of district intern credentials "authorized to teach in the subject area in which they

11 | have met the subject matter requirement"); id. § 44454 (university intern credential "authorizes the

12 | same service at the same levels as the regular credential authorizes").  This authority is separate from

13 | that establishing emergency teaching permits. See CAL. EDUC. CODE § 44300 et seq.

14 |     In light of this, plaintiffs have not shown that, under California law, intern teachers are not fully

15 | certified to teach.  Nor have they provided any basis to conclude that intern teachers lack "full State

16 | certification" for purposes of NCLB without considering 34 C.F.R. § 200.56(a)(2)(ii).  Plaintiffs also

17 | do not show that California's intern credential does not satisfy a separate regulatory provision they do

18 | not challenge, which states teachers are considered fully certified if they fulfill State requirements

19 | "applicable to the years of experience the teacher possesses."  34 C.F.R. § 200.56(a)(2)(i).

20 |     Accordingly, plaintiffs have not demonstrated that the injury in fact they allege is the result of

21 | the provision they challenge, 34 C.F.R. § 200.56(a)(2)(ii).  Moreover, because invalidation of the

22 | Secretary's regulation would not prevent California from considering its intern teachers to be fully

23 | certified under these statutory provisions, the remedy plaintiffs request would not alter California's

24 | law, which provides a teaching credential to intern teachers.  Thus, plaintiffs lack standing to challenge

25 | the legality of section 200.56, and their claims must be dismissed in their entirety.

26 |     Second, even if the Court were to reach the merits of plaintiffs' claims, the Court finds that 34

27 | C.F.R. § 200.56 is not arbitrary, capricious or contrary to law under the Administrative Procedure Act.

28 | Plaintiffs claim that 34 C.F.R. § 200.56 is contrary to law because it permits teachers who are

1 participating in but have not yet completed an alternate route to certification to be considered highly

2 qualified, in contravention of 20 U.S.C. § 7801(23), which they argue requires that all highly qualified

3 teachers have completed a teacher preparation program. Plaintiffs' claim presents a purely legal issue

4 governed by the well-established principles of Chevron U.S.A. v. Natural Resources Defense Council,

5 Inc., 467 U.S. 837, 844 (1984). Under Chevron, the first question in determining whether agency

6 action violates a statutory direction is whether Congress has spoken on the precise issue, for if it has,

7 the court and agency "must give effect to the unambiguously expressed intent of Congress." Id. at 843.

8 If Congress has not spoken unambiguously, then the second question arises: "if the statute is silent or

9 ambiguous with respect to the specific issue, the question for the court is whether the agency's answer

10 is based on a permissible construction of the statute." Id.  "[A] court may not substitute its own

11 construction of a statutory provision for a reasonable interpretation made by the administrator of the

12 agency." Chevron, 467 U.S. at 844.

13     The Court finds that Congress has not defined what is meant by the term "full State

14 certification as a teacher (including certification obtained through alternative routes to certification)."

15 See 20 U.S.C. § 7801(23)(A). Congress has not established standards for determining which teachers

16 are considered to have full State certification for purposes of determining who, under NCLB, is a

17 highly qualified teacher. Nor has it unambiguously determined, as plaintiffs argue, that, to be highly

18 qualified, a teacher participating in an alternative route program cannot be considered fully certified

19 under NCLB prior to completion of the program. The ambiguity in the statutory language is

20 underscored by other programs in NCLB, such as the Transition to Teaching and Troops-to-Teachers

21 programs, which authorize funds for alternative route programs and the recruitment of teachers without

22 traditional training. It would be incongruous to conclude that Congress intended that teachers recruited

23 in these programs, enacted to place quality teachers in high-need schools, would also not be considered

24 highly qualified by other NCLB provisions.

25     Further, the Court finds that 34 C.F.R. § 200.56 is a proper application of agency expertise and

26 is consistent with congressional intent. Where a statute is silent or ambiguous, "Chevron requires a

27 federal court to accept the agency's construction of the statute, even if the agency's reading differs

28 from what the court believes is the best statutory interpretation," provided the "agency's construction

[Defendants' Proposed] Order
Civil Action No. 3:07cv4299-PJH

1   is reasonable." Nat'l Cable & Telecommunications Ass'n v. Brand X Internet Servs., 545 U.S. 967,

2   980 (2005). So long as there is a rational basis for the agency's decision, the court must uphold that

3   decision. See Nationsbank v. Variable Annuity Life Ins. Co., 513 U.S. 251, 257 (1995) (where

4   agency's "reading . . . defines a term in a way that is reasonable in light of the legislature's revealed

5   design, the [court must] give the [agency's] judgment 'controlling weight'"); Univ. Med. Ctr. v.

6   Thompson, 380 F.3d 1197, 1201 (9th Cir. 2004) ("When Congress's intent cannot be clearly discerned

7   from the statutory language, courts must defer to an agency's interpretation so long as it is 'based on

8   a permissible construction of the statute.'").

9        Section 200.56(a)(2)(ii) resolves the ambiguity in 20 U.S.C. § 7801(23)(A), addresses the

10  concerns expressed by Congress in enacting NCLB, and is based on consideration of factors discussed

11  in the administrative record. Specifically, the regulation is entirely consistent with the other criteria

12  Congress did specify for considering teachers to be "highly qualified": having at least a bachelor's

13  degree and demonstrating relevant subject-matter knowledge. 20 U.S.C. § 7801(B). Each of these

14  requirements is maintained in the regulation. See 34 C.F.R. 200.56(b). Further, the regulation also

15  places additional statutorily authorized substantive requirements for teachers in alternative route

16  programs to be considered fully certified under subsection (a)(2)(ii) that would otherwise not be

17  present absent the regulation. See 34 C.F.R. § 200.56(a)(2)(ii)(A). These standards, along with the

18  statutory standards of section 7801 (bachelor's degree, subject matter knowledge) rebut plaintiffs'

19  charge that the regulation undermines teacher quality in poor and minority schools. Moreover, the

20  regulation recognizes the importance that Congress has placed on alternative route programs.

21       Because the regulation maintains all the specific standards enacted by Congress for teachers

22  to be considered "highly qualified" and has a rational basis for defining how states may consider

23  participants in alternative route programs to be fully certified, section 200.56 is a proper construction

24  of 20 U.S.C. § 7801(23) and is therefore entitled to deference by this Court under Chevron.

25       Accordingly, it is

26       ORDERED that plaintiffs' motion for summary judgment is DENIED, and

27       IT IS FURTHER ORDERED that defendants' cross motion for summary judgment is granted,

28

7

1    and

2         IT IS FURTHER ORDERED that the Clerk shall enter judgment in this matter in favor of the

3    defendants.

4         IT IS SO ORDERED.

5    DONE, this _____ day of _____, 2008.

6

7

8                                           _____
                                            PHYLLIS J. HAMILTON
                                            United States District Judge

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28