1  JEFFREY S. BUCHOLTZ
   Acting Assistant Attorney General
2  JOSEPH P. RUSSONIELLO
   United States Attorney
3  SHEILA M. LIEBER
   Assistant Branch Director
4  MICHAEL Q. HYDE
   Trial Attorney
5  Civil Division, Federal Programs Branch
   United States Department of Justice
6  20 Massachusetts Ave., N.W., Room 7132
   P.O. Box 883
7  Washington, D.C. 20044
   Tel: (202) 514-2205
8  Facsimile: (202) 616-8470
   Email: michael.hyde@usdoj.gov

9

             **IN THE UNITED STATES DISTRICT COURT**
10          **FOR THE NORTHERN DISTRICT OF CALIFORNIA**

11 ─────────────────────────────── )
   SONYA RENEE, et al.,                    )    Civil Action No. 3:07cv4299-PJH
12                                          )
               Plaintiffs,                  )
13                                          )    **DEFENDANTS' REPLY IN FAVOR**
            v.                              )    **OF THEIR CROSS MOTION**
14                                          )    **FOR SUMMARY JUDGMENT**
   MARGARET SPELLINGS, et al.,              )
15                                          )
               Defendants.                  )    Hearing Date:    April 23, 2008
16 ─────────────────────────────── )    Time:            9:00 a.m.

17 Dated: April 4, 2008                     Respectfully submitted,

18                                          JEFFREY S. BUCHOLTZ
                                            Acting Assistant Attorney General
19
                                            JOSEPH P. RUSSONIELLO
20                                          United States Attorney

21                                          SHEILA M. LIEBER
                                            Assistant Branch Director
22
                                            ─────────────────────
23 Richard Mellman                              /S/
   General Attorney                         MICHAEL Q. HYDE
24 Office of the General Counsel            Trial Attorney
   U.S. Department of Education             Civil Division, Federal Programs Branch
25 400 Maryland Avenue, SW, Rm. 6E314       United States Department of Justice
   Washington, DC  20202                    20 Massachusetts Ave., N.W., Room 7132
26 Tel:  (202) 401-6062                     P.O. Box 883
   Facsimile:  (202) 205-0524              Washington, D.C. 20044
27 Email:  richard.mellman@ed.gov          Tel: (202) 514-2205
                                            Facsimile: (202) 616-8470
                                            Email: michael.hyde@usdoj.gov
28

1

**TABLE OF CONTENTS**

2   TABLE OF AUTHORITIES. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  ii

3   INTRODUCTION. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  1

4   ARGUMENT . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  1

5   I.    PLAINTIFFS LACK STANDING TO CHALLENGE ED'S REGULATION.. . . . . . . . . . . . . . . . .  1

6       A.    Plaintiffs Fail to Show that They Have Suffered any
              Injury in Fact that May Be Remedied by Invalidation
7             of 34 C.F.R. § 200.56(a)(2)(ii).. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  1

8       B.    Plaintiffs Have Not Shown that the Organizational
              Plaintiffs Have Standing.. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  4

9   II.   ED'S REGULATION IS NOT ARBITRARY, CAPRICIOUS, OR CONTRARY TO LAW. . . . . . . . . .  5

10      A.    Plaintiffs Have Failed to Show that Congress Unambiguously
              Required Teachers to Complete a Teacher Preparation
11            Program to Be Considered Highly Qualified under the NCLB... . . . . . . . . . . . . . .  5

12      B.    Plaintiffs Fail to Show that Section 200.56 Is Contrary to the
13            Intent of Congress... . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  11

14      C.    Plaintiffs Still Fail to Justify Consideration of Material Not
              in the Administrative Record in Deciding the Merits of
15            Their APA Claim.. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  14

16  III.  Plaintiffs Request Relief to which They Are Not Entitled. . . . . . . . . . . . . . . . . . . . . . .  15

17      A.    Plaintiffs Are Not Entitled to the Broad, Sweeping Relief
              They Request... . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  15

18      B.    Defendants Preserve Their Objection to a Nationwide Injunction.. . . . . . . . . . . .  15

19  CONCLUSION. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  15

20

21

22

23

24

25

26

27

28

1

**TABLE OF AUTHORITIES**

2

**CASES**

3

Arrington v. Wong,
    237 F.3d 1066 (9th Cir. 2001). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  10

4

Center for Law and Education v. Dep't of Education,
    396 F.3d 1152 (D.C. Cir. 2005). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  4

5

Chevron U.S.A. v. Natural Resources Defense Council, Inc.,
    467 U.S. 837 (1984). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . passim

6

7

Dysert v. Sec'y of Labor,
    105 F.3d 607 (11th Cir. 1997). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  11

8

Earth Island Inst. v. Ruthenbeck,
    490 F.3d 687 (9th Cir. 2007). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  15

9

10

FDA v. Brown & Williamson Tobacco Corp.,
    529 U.S. 120 (2000). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  7, 8

11

Florida Power & Light Co. v. Lorion,
    470 U.S. 729 (1985). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  14

12

13

Holly Farms Corp. v. N.L.R.B.,
    517 U.S. 392 (1996). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  10

14

Household Credit Servs., Inc. v. Pfennig,
    541 U.S. 232 (2004). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  8

15

16

Irvine Medical Ctr. v. Thompson,
    275 F.3d 823 (9th Cir. 2002). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  8

17

Love v. Tippy,
    133 F.3d 1066 (8th Cir. 1998). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  6

18

19

Newman v. Apfel,
    223 F.3d 937 (9th Cir. 2000). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  5

20

Smiley v. Citibank (South Dakota), N.A.,
    517 U.S. 735 (1996). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  6, 11

21

22

Smith v. Pac. Prop. and Dev. Corp.,
    358 F.3d 1097 (9th Cir. 2004). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  4

23

24

Summers v. Earth Island Inst.,
    128 S.Ct. 1118 (2008). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  15

25

Wilderness Soc'y v. U.S. Fish and Wildlife Serv.,
    353 F.3d 1051 (9th Cir. 2003). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  5

26

27

28

ii

1

Zuni Pub. Sch. Dist. v. Dep't of Educ.,
    127 S. Ct. 1534 (2007). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

2

**OTHER SOURCES**

3

20 U.S.C. § 6319. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6, 9, 10

4

20 U.S.C. § 6571. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

5

20 U.S.C. § 6613. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

6

20 U.S.C. §6681. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

7

20 U.S.C. § 7801(23). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . passim

8

Cal. Code Regs. tit. 5 §6101. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

9

Cal. Code Regs. tit. 5 § 80021. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

10

Cal. Code Regs. tit. 5 § 6110. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

11

Cal. Educ. Code §44300. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

12

Cal. Educ. Code § 44325. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

13

Higher Education Act of 1998, Pub. L. 105-244, 112 Stat. 1581 (1998). . . . . . . . . . . . . . . 11, 12

14

H. Rep. No. 108-10 (2003). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

15

H.R. Rep. No. 108-401 (2003). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

16

H. Rep. 108-792 (2004). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

17

No Child Left Behind Act, Pub. L. No. 107-110, 115 Stat. 1425 (2002). . . . . . . . . . . . . . passim

18

Pub. L. No. 110-161, 121 Stat. 1844. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

19

20

21

22

23

24

25

26

27

28

iii

**INTRODUCTION**

Plaintiffs' opposition to defendants cross motion for summary judgment fails to address an obvious question identified in defendants' opening brief: Why did Congress create and specifically incorporate into the No Child Left Behind Act ("NCLB") three programs that specifically permit school districts to hire teachers who participate in alternative routes to certification programs – Troops to Teachers, Transition to Teaching, and the Improving Teacher Quality State Grants program, all of which were designed to provide teachers to high need schools such as those the individual plaintiffs or their children attend – if the hiring of teachers in alternative route programs would move the school further from achieving NCLB's requirement that 100% of teachers in all schools be "highly qualified."

If, as plaintiffs claim, Congress precluded the Secretary of Education from considering these teachers to be highly qualified, Congress would have known that hiring even one teacher participating in an alternative route program would likely contravene the 100% highly qualified requirement. Plaintiffs' claim that NCLB's alternative route programs were designed to provide teachers who would stay in high need schools after their program's completion (at which time, according to plaintiffs, they could be considered "highly qualified"). Such retention is certainly a laudable goal, but none of NCLB's three alternative route program authorities contain any such post-completion requirement. Nor does plaintiffs' argument explain the statutory inconsistency that would be created by plaintiffs' interpretation of the NCLB. Moreover, plaintiffs have not demonstrated that Congress intended to deprive the Secretary of discretion to define the phrase "full certification" for purposes of the NCLB and that it intended instead to vest that power exclusively in the states. Finally, plaintiffs fail to show that under California law, which does not define "full certification," the Secretary may not consider an intern credential as well as a preliminary credential to be full certification for purposes of NCLB.

**ARGUMENT**

**I.    PLAINTIFFS LACK STANDING TO CHALLENGE ED'S REGULATION.**

    **A.    Plaintiffs Fail to Show that They Have Suffered any Injury in Fact that May Be Remedied by Invalidation of 34 C.F.R. § 200.56(a)(2)(ii).**

Defendants argue in their opening memorandum that plaintiffs fail to cite an injury-in-fact that may be remedied by invalidating section 200.56(a)(2)(ii) and therefore lack standing, because they fail

1    to show that teachers holding California's intern credential lack full state certification as required by

2    20 U.S.C. § 7801(23)(A)(i).  Plaintiffs still have not shown that California's intern teachers cannot be

3    considered highly qualified, even as plaintiffs interpret NCLB, under 34 C.F.R. § 200.56(a)(2)(i),

4    which considers teachers to be fully certified for purposes of NCLB if they fulfill state requirements

5    "applicable to the years of experience the teacher possesses."  See Defs.' Mem.[1] at 11:1-27.

6         Plaintiffs' response misconstrues defendants' argument as to plaintiffs' lack of standing to

7    challenge 34 C.F.R. § 200.56(a)(2)(ii).  Defendants do not argue, as plaintiffs charge, that all

8    participants nationwide in alternative routes to certification are considered fully certified under NCLB

9    without resort to 34 C.F.R. 200.56(a)(2)(ii).  See Pls.' Opp. at 9:8-10, id. at 10:6-7.  Defendants argue

10   only that California has apparently chosen to treat interns as credentialed teachers with full certification

11   to teach.  Even plaintiffs acknowledge that 20 U.S.C. § 7801(23)(A)(i) permits a state to adopt such

12   a policy for teacher certification if it so chooses.  See Pls.' Opp. at 6 n. 6.

13        California treats the intern credential and permits (which waive full certification) differently.

14   California refers to intern certification as a credential rather than a permit, as with its "preliminary"

15   and "professional clear" credentials.  And, intern credentials do not involve the restrictions or required

16   showing of unforeseen need required of those who have had full certification waived via a permit.

17   Compare CAL. CODE REGS. tit. 5 § 80021 (requirements for permits).[2]

18        Further, interns must meet more stringent requirements than those who obtain permits.

19   California considers its interns as meeting the requirements of NCLB.  See CAL. CODE REGS. tit. 5 §

20   6101 (elementary school teachers meet NCLB if satisfy specified requirements including enrollment

21   in intern program for less than three years or having a credential); id. § 6110 (same for middle school

22

23   [1]  Defendants refer to plaintiffs' opening memorandum [docket no. 52] as "Pls.' Mem," plaintiffs' consolidated reply and opposition to defendants' cross motion [docket no. 70] as "Pls.' Opp.," and to defendants' opening memorandum [docket no. 59] as "Defs.' Mem."

24

25   [2]  Plaintiffs erroneously charge defendants with stating that California places no limitations on its intern credentials.  See Pls.' Opp. at 8:9-11.  On the contrary, defendants argue only that the limitations California places on hiring those teaching with emergency permits, contained in CAL. EDUC. CODE § 44300(a)(3) and (b), are not imposed by California law on interns.  According to plaintiffs' exhibit 17, California no longer issues emergency permits, the requirements for which were cited by defendants. See Defs.' Mem. at 9:20-21.  The provisional intern permit and short term staff permit have hiring limitations similar to those for the emergency permit.  Compare CAL. CODE REGS. tit. 5 § 80021(a)(4).

26

27

28

Defendants' Reply in Favor of Their
Cross Motion for Summary Judgment
Civil Action No. 3:07cv4299-PJH

teachers)[3]; see also CAL. EDUC. CODE § 44325(f) (district interns must meet requirements of NCLB and ED implementing regulations); id. § 44453(b) (same for university interns). Because "interns provide professional services earlier than other credential candidates," California requires them "to fulfill higher standards of admission to preparation programs than other candidates." Defs.' Ex. A, attachment 1[4] at 2. Interns must have prior experience and personal qualifications enabling them to "perform the duties of fully certificated holders of the credential." Id. at 27. For example, district interns[5] must meet a higher standard to demonstrate subject matter knowledge than those holding permits. Compare Pls.' Ex. 19(b) at 1-2 (district interns required, among other things, to verify subject matter knowledge through approved preparation programs or examination) with Pls.' Ex. 19(c) at 1 (provisional permit holder required only to have a minimal number of semester units in subject area) and Pls.' Ex. 19(f) (same for short term staff permit). District interns must also complete substantial training, including in child development and teaching methods, before they are permitted to assume daily teaching responsibilities. See Pls.' Ex. 19(b) at 3.

Plaintiffs argue that "California itself considers only individuals holding a preliminary or professional clear credential to have full certification," citing California's requirements that intern teachers complete additional course work and training. Pls.' Opp. at 9:1-6. Yet, plaintiffs cite no California statute or regulation defining or utilizing the term "full certification." For the same reasons discussed in defendants' opening memorandum, see Defs.' Mem. at 19:5-10, and herein, see, infra, Part II.A, section 7801(23)(A) does not preclude a state from permitting teachers who must still

_____

[3] The regulation cited for middle and high school teachers states, among other requirements, that teachers meet NCLB requirements if they, in addition to satisfying other conditions, are currently "enrolled in an approved intern program for less than three years or [have] a full credential." CAL. CODE REGS. tit. 5 § 6110(2). These regulations were implemented by the California Department of Education, not the body that certifies teachers, the California Commission on Teacher Credentialing. Further, the regulation does not specify any meaning for the term "full credential." The comparable regulation for elementary teachers does not use the word "full."

[4] Plaintiffs cite to California Commission on Teacher Credentialing, Standards of Quality and Effectiveness for Teacher Preparation Programs for Preliminary Multiple and Single Subject Teaching Credentials (rev. Mar. 2007) in their opposition at 7 n.8. Defendants attach the entire document to this memorandum as attachment 1 to Defs.' Ex. A.

[5] The requirements for university interns vary by program. See Pls.' Ex. 19(d) (university interns).

Defendants' Reply in Favor of Their
Cross Motion for Summary Judgment
Civil Action No. 3:07cv4299-PJH

1    complete additional course work and training, even coursework that other teachers have already had,

2    to be considered fully certified for the period that their credential authorizes.

3         Finally, plaintiffs charge defendants with obliterating the distinction between different levels

4    of certification such that teachers holding permits may be considered fully certified under NCLB.  See

5    Pls.' Opp. at 10:24 – 11:3.  Defendants' make no such argument. The challenged regulation, on its

6    face, does not allow teachers who have certification waived on an emergency, temporary, or

7    provisional basis to be considered highly qualified, see 34 C.F.R. § 200.56(a)(4), and that provision

8    plainly applies to holders of a California permit.

9         Because invalidation of section 200.56(a)(2)(ii) would not prevent California from treating its

10   intern teachers as fully certified under section 200.56(a)(2)(i), and because doing so would satisfy even

11   plaintiffs' interpretation of 20 U.S.C. § 7801(23)(A), plaintiffs fail to show they have standing.

12        **B.    Plaintiffs Have Not Shown that the Organizational Plaintiffs Have Standing.**

13        In response to defendants' argument that organizational plaintiffs CFJ and Cal. ACORN lack

14   standing to sue on their own behalf, see Defs.' Mem. at 12:1 – 15:2,[6] plaintiffs rely primarily on their

15   argument that section 200.56 denies them data on teachers who are highly qualified, adversely

16   affecting efforts to advocate for teacher quality and equitable distribution of highly qualified teachers.

17   See Pls.' Opp. at 19:5-19, id. at 20:23 – 21:1.  Yet, plaintiffs' own exhibits show that section 200.56

18   has not denied the organizations access to accurate data; in particular, data on when teachers are

19   credentialed in California as interns.  See, e.g., Pls.' Exs. 2(a), 3(a), 4(a), 7(a), 8-9, 11-13.  Plaintiffs

20

21        ────────────────

22        [6]  Plaintiffs argue that defendants cited an incorrect standard for organizational standing by not
     citing Smith v. Pac. Prop. and Dev. Corp., 358 F.3d 1097(9th Cir. 2004).  See Pls.' Opp. at 18:26 –
23   19:4.  On the contrary, defendants cited Smith multiple times, see, e.g., Defs.' Mem. at 12:4-9, 12:21,
     including Smith's holding that an organization has standing where the challenged practice has a
24   negative impact on the organization's ability to fulfill its mission and requires redirection of resources.
     Id. at 13:18-19.  That defendants also focused on another avenue by which an organization may assert
25   standing (i.e., injury to association members and ability to provide services to them) is not surprising,
     since defendants did not yet have the benefit of any specific arguments by plaintiffs as to why they
26   have standing.
          Plaintiffs also challenge defendants' citation to Center for Law and Education v. Dep't of
27   Education, 396 F.3d 1152 (D.C. Cir. 2005) as improper in a prudential standing argument.  See Pls.'
     Opp. at 20:7-10.  However, defendants did not cite Center for Law and Education for prudential
28   standing requirements, but for its discussion of what statutory interests are created by the NCLB.

Defendants' Reply in Favor of Their
Cross Motion for Summary Judgment
Civil Action No. 3:07cv4299-PJH

1    have not shown that section 200.56 denies them the ability to carry out their organization's functions.

2    **II.    ED'S REGULATION IS NOT ARBITRARY, CAPRICIOUS, OR CONTRARY TO LAW.**

3        The parties agree that plaintiffs' Administrative Procedure Act ("APA") claim presents a purely

4    legal issue governed by <u>Chevron U.S.A. v. Natural Resources Defense Council, Inc.</u>, 467 U.S. 837

5    (1984).  Under <u>Chevron</u>, a court reviewing an agency's construction of a statute that it administers

6    must first determine whether Congress has spoken on the precise issue and, if it has, "give effect to

7    the unambiguously expressed intent of Congress." <u>Id.</u> at 842-43.  If the court determines that Congress

8    has not unambiguously expressed its intent or is silent on the issue presented, "the question for the

9    court is whether the agency's answer is based on a permissible construction of the statute." <u>Id.</u>; <u>see</u>

10   <u>also</u> <u>Wilderness Soc'y v. U.S. Fish and Wildlife Serv.</u>, 353 F.3d 1051, 1059 (9th Cir. 2003) (court

11   "must defer to the agency so long as 'the agency's answer is based on a permissible construction of

12   the statute'" (citation omitted)); <u>Newman v. Apfel</u>, 223 F.3d 937, 946 n.4 (9th Cir. 2000) (issue "is

13   whether the purpose and legislative history of the statutory provision plainly establishes that the

14   [agency's] interpretation is untenable").

15   **A.    Plaintiffs Have Failed to Show that Congress Unambiguously Required Teachers
16            to Complete a Teacher Preparation Program to Be Considered Highly Qualified
             under the NCLB.**

17       Defendants demonstrated that Congress did not enact any language requiring teachers of core

18   academic subjects to complete a teacher preparation program to be considered fully certified for

19   purposes of NCLB' highly qualified teacher requirements. <u>See</u> Defs.' Mem. at 16:22 – 17:4.  Rather,

20   while stating that to be considered "highly qualified," teachers must have a bachelor's degree,

21   demonstrate subject matter knowledge in a specified manner, be fully certified, and not have

22   certification waived, Congress did not define "full State certification." <u>See</u> <u>id.</u> at 17:5-21.  Further,

23   defendants identified statutory language that permits teachers who obtain "certification through

24   alternative routes" to be considered fully certified. <u>See</u> <u>id.</u> at 17:1-3; <u>id.</u> at 17:22 – 18:3.  Defendants

25   also cited NCLB's enactment or reauthorization of three programs that expressly permit the

26   recruitment and hiring of teachers through alternative routes in order to address the nationwide

27   shortage of teachers and increase the number of teachers available for high-need schools.  Defendants

28   demonstrated that Congress would not have intended that school districts hire teachers who participate

1   in these programs, and at the same time find themselves unable to meet the requirement that all newly

2   hired teachers in Title I programs be highly qualified, see, e.g., 20 U.S.C. § 6319(a)(1), and less able

3   to meet the requirement that 100% of their teachers be highly qualified by the 2005-2006 school year.

4       Plaintiffs' response concedes that Congress did not define "full State certification" in a manner

5   that limits a state's discretion to decide what this provision entails.  See Pls.' Opp. at 6 n.6.  This

6   admission is critical, as plaintiffs thus agree that Congress did not specify the certification standards

7   states may use.  But that does not mean that Congress deprived the Secretary of discretion to interpret

8   the highly qualified teacher standard.  Where Congress has left "ambiguity in a statute meant for

9   implementation by an agency, [it] understood that the ambiguity would be resolved, first and foremost,

10  by the agency, and desired the agency (rather than the courts) to possess whatever degree of discretion

11  the ambiguity allows."  See Smiley v. Citibank (South Dakota), N.A., 517 U.S. 735, 740-41 (1996).

12      By failing to define the phrase "full State certification as a teacher (including certification

13  obtained through alternative routes to certification)," Congress gave the Secretary discretion to clarify

14  what the statute permits.  See, e.g., Love v. Tippy, 133 F.3d 1066, 1069 (8th Cir. 1998) (applying first

15  part of Chevron analysis and determining that because Congress did not define statutory phrase

16  "nonviolent offense," agency had discretion to determine whether offense was nonviolent).  Indeed,

17  Congress specifically delegated to ED authority to interpret NCLB by issuing implementing

18  regulations.  See 20 U.S.C. § 6571(a) (ED delegated authority to issue regulations "as are necessary

19  to reasonably ensure that there is compliance with" Title I); see also Defs.' Mem. at 6:10-11.  Thus,

20  the discretion that plaintiffs claim runs only to the states, see Pls.' Opp. at 6 n.6, is, as a matter of law,

21  a delegation to the Secretary to clarify the phrase "full State certification . . . (including certification

22  obtained through alternative routes to certification)," as the Secretary deems necessary.

23      Plaintiffs fail to demonstrate that the Court should reject the Secretary's determination that

24  section 7801(23)(A) permits ED to consider those participating in alternative route programs to have

25  full state certification for purposes of NCLB's highly qualified provisions.  First, plaintiffs cite a

26  dictionary definition of "full" to argue that the phrase "full State certification" must entail the State's

27  "fullest, most complete level of preparation."  See Pls.' Opp. at 3:7-18.  However, this argument does

28  not establish what Congress intended the general phrasing to mean; indeed, "full state certification"

1    can also reasonably refer the level of authority a state conveys to a teacher to take responsibility for

2    a classroom.  In short, plaintiffs' argument merely reflects their belief about the "preparation" a teacher

3    should have to be considered fully certified, and thus highly qualified, under NCLB.

4        Plaintiffs' application of the cited dictionary definition is also inconsistent with their own

5    interpretation of section 7801(23)(A)(i).  If, as they argue, the definition were sufficient to render

6    section 7801(23)(A) so specific as to preclude any interpretation but theirs, states would lack authority

7    to adopt as full certification the two-tiered certification levels contained in the guidelines issued by the

8    National Association of State Directors of Teacher Education and Certification ("NASDTEC") or the

9    multi-tiered certification levels utilized by California.  See Pls.' Opp. at 6 (discussing NASDTEC's

10   two-tiered certification guidelines and California's preliminary and professional clear teaching

11   credentials).  Even accepting plaintiffs' interpretation of these guidelines, level-one certification under

12   NASDTEC's guidelines requires completion of additional ancillary requirements.  See Pls' Opp. at

13   6:7-11.  No party here disputes that teachers who still have to meet additional requirements after

14   certification, such as those teaching with California's preliminary credential, may still be considered

15   highly qualified under NCLB.  Cf. Pls.' Opp. at 13:14-28 (conceding that Congress left open question

16   of whether "full" meant "complete" in determining whether teachers are highly qualified under

17   NCLB).  Thus, resort to the dictionary definition of "full" is not sufficient to determine where the

18   specific line between full certification and lesser certification exists.

19       Plaintiffs' citation to the dictionary also ignores the parenthetical in section 7801(23)(A)(i),

20   which states that "full State certification" includes "certification obtained through alternative routes

21   to certification."  20 U.S.C. § 7801(23)(A)(i) (emphasis added).  In interpreting section 7801, the

22   parenthetical phrase must be accorded meaning.  See FDA v. Brown & Williamson Tobacco Corp.,

23   529 U.S. 120, 132-33 (2000) (reviewing court should not confine analysis to particular statutory

24   provision in isolation, but must consider statutory context).  The dictionary definition of "through"

25   includes "[b]ecause of; on account of."  See American Heritage Dictionary of the English Language,

26   Fourth  Edition.  Houghton  Mifflin  Company,  2004,  obtained  on  Dictionary.com,

27   http://dictionary.reference.com/browse/through (last visited March 30, 2008).  Obtaining certification

28   because of or on account of participation in an alternative route program does not require certification

to be obtained after completion of the program.  Rather, the parenthetical phrase is sufficiently ambiguous to support an interpretation recognizing certification obtained at any point during participation in the alternative route program.

Had Congress intended to preclude participants in alternative route programs from obtaining full State certification, it could have easily accomplished that result by using the word "after" instead of "through."  Moreover, Congress's failure to reverse the Secretary's regulation in the more than five years since its promulgation indicates that Congress does not believe the regulation exceeds the Secretary's statutory authority.  Cf. Irvine Medical Ctr. v. Thompson, 275 F.3d 823, 830 n.4 (9th Cir. 2002) (in rejecting challenge to agency action, noting that Congress had "taken *no* action" to reverse agency's position and that lack of such action by Congress "weakens further the plaintiffs contention" that agency position was not authorized by Congress (emphasis in original)).

Second, plaintiffs fail to show that their interpretation of section 7801(23)(A) does not improperly conflict with other NCLB provisions.  The Supreme Court has instructed that courts interpreting congressional intent under the first part of the Chevron analysis should also consider related enactments and whether those enactments affect a statute's meaning.  See Zuni Pub. Sch. Dist. v. Dep't of Educ., 127 S. Ct. 1534, 1546 (2007); Household Credit Servs., Inc. v. Pfennig, 541 U.S. 232, 241 (2004); Brown and Williamson Tobacco Corp., 529 U.S. at 132-33.

Here, in the same legislation that contains the highly qualified teacher requirements, Congress provided funding that states and districts could use to recruit and hire teachers through alternative route programs.[7]  See Defs.' Mem. at 19:22-25.  Congress specifically intended these programs to rely on prior experience, expertise, and academic achievement of those recruited to become teachers without

---

[7] In addition, since enacting NCLB Congress has repeatedly provided funding – in its fiscal year (FY) appropriations for NCLB programs – for Teach for America (TFA), a nonprofit organization whose mission is to recruit and place as teachers in high-need schools and school districts the very participants in alternative route programs whom plaintiffs argue Congress would not consider highly qualified.  It most recently did so in the FY 2008 appropriations.  See, e.g., Committee Print of the House Committee on Appropriations on H.R. 2764 (conference committee report) at 1395, 1567 (reprinted at <http://www.gpoaccess.gov/congress/house/appropriations/08conappro.html>) and Pub. L. 110-161 § 4, 121 Stat. 1844.  By congressional earmark in FYs 2003, 2004, and 2005, Congress also expressly intended that appropriations be provided to TFA.  See H. Rep. No. 108-10 at 320, 792, 1143 (2003); H. Rep. No. 108-401 at 257, 826 (2003); and H. Rep. 108-792 at 1233 (2004).

completing traditional teacher preparation programs. <u>See</u> Defs.' Mem. at 4:21 – 6:8; <u>id.</u> at 20:2-19. Moreover, Congress intended these programs to help address the longstanding teacher shortages in the same high-need schools that the individual plaintiffs or their children attend. <u>See</u> Defs.' Mem. at 20:20 – 21:12. As the Secretary reasoned when issuing section 200.56, it is inconceivable that Congress intended school districts to use these NCLB programs to address their teacher shortages, particularly those in high-need schools, and, by doing so, find themselves in violation of NCLB for hiring teachers who are not "highly qualified," as the Act requires. <u>See, e.g.</u>, 20 U.S.C. § 6319(a)(1) (all teachers hired after 2002-03 school year by schools receiving Title 1 funds mst be highly qualified); <u>see generally</u> Defs.' Mem. at 19:20 – 21:24; <u>see also</u> A.R. at AR0000099.

Plaintiffs respond that Congress did not specifically state that participants in alternative route programs are highly qualified. <u>See</u> Pls.' Opp. at 16:4-13. However, as stated, the statute permits participants in alternative route programs to be considered fully certified if certification is obtained "through" the program. Further, citing 20 U.S.C. § 6613(c)(3), plaintiffs incorrectly argue that NCLB's alternative route provisions do not contemplate that participants be deemed highly qualified until they complete their program. While the Improving Teacher Quality State Grants program cited by plaintiffs does target those "who demonstrate the potential to become highly qualified teachers," the language may reasonably be interpreted as referring to "potential" prior to entry into the program rather than "potential" not realized until the program's completion. Moreover, plaintiffs' argument cannot be reconciled with the purpose of NCLB's Transition to Teaching program. <u>See</u> 20 U.S.C. § 6681(2) (purpose is to enable teacher certification in reduced period of time relying on "experience, expertise, and academic qualifications . . . or other factors in lieu of traditional course work").

Plaintiffs also argue that NCLB's requirement that schools have 100% of teachers for core academic subjects be highly-qualified is only a goal, apparently intending to rebut defendants' contention that Congress would not have required states to have 100% of teachers be highly qualified and, at the same time, encouraged hiring of teachers participating in alternative route programs if those teachers are incapable of being considered highly qualified. <u>See</u> Defs.' Mem. at 21:13-24. Plaintiffs' argument is meritless. Congress expressly required that states and school districts develop plans for annual increases in the percentage of highly qualified teachers until they reached 100% highly

1    qualified, a result they were to reach by the end of the 2005-2006 school year. See 20 U.S.C. §

2    6319(a)(2)(A), (a)(3). Properly construed, this goal and NCLB's alternative route programs would

3    clearly conflict if the Court were to adopt plaintiffs' restrictive view.

4        In the absence of specific congressional language precluding defendants' interpretation of

5    section 7801(23)(A)(i), plaintiffs turn to the sparse legislative history of this provision. Here, plaintiffs

6    again cite the Conference Committee's insertion of the word "full" into section 7801(23)(A)(i), see

7    Pls.' Opp. at 4:1-20, and charge defendants with ignoring the significance of this action. See Pls.'

8    Opp. at 4:7-20. Defendants acknowledge that conference committee actions are entitled to deference.

9    In this case, though, the Conference Committee's insertion of "full" did not accompany an explanation

10   that contributes to any understanding of what Congress meant by the change because it inserted the

11   word "full" without explanation. However "uncontroversial" this change may have been, see Pls.'

12   Opp. at 4:13-15, it provides no indication of congressional intent. See Defs.' Mem. at 24:11-17.[8]

13       Finally, plaintiffs charge that defendants' interpretation would render section 7801(A)(i)

14   "standardless" and a "wide open void." See Pls.' Opp. at 3:14-16, 5:5. On the contrary, as

15   demonstrated by the many cases applying the Chevron doctrine, Congress often enacts generalized

16   policy goals and leaves it to the agency to clarify how to implement those goals. Here, Congress has

17   given the Secretary similar authority to clarify section 7801(23)(A) with a reasonable interpretation.

18       In sum, plaintiffs fail to show that their interpretation is the only one that may be drawn from

19   the statute's general language. That section 7801(23)(A)(i) may be interpreted in different ways,

20   including to encompass certification obtained through an alternative route program as the Secretary

21   permits, is sufficient to find the phrase ambiguous or silent as to congressional intent. See Holly

22   Farms Corp. v. N.L.R.B., 517 U.S. 392, 401 (1996) (even where plaintiffs' proffered interpretation of

23   statute is plausible, court must defer to reasonable agency interpretation if plaintiffs' interpretation is

24   not "inevitable"); Arrington v. Wong, 237 F.3d 1066, 1071 (9th Cir. 2001) (where statute may be

25   interpreted in multiple ways, even after recourse to dictionary definition of words in statute, court

26

27       [8]   Moreover, plaintiffs' position is internally inconsistent. Plaintiffs also argue that the original
     versions of NCLB – H.R. 1 and S. 1 – contained the same requirements they advocate here, even

28   without the word "full," see Pls.' Opp. at 3:19 – 4:1 & n.4, undermining their argument that the
     Conference Committee's change had the substantive effect they urge.

Defendants' Reply in Favor of Their
Cross Motion for Summary Judgment
Civil Action No. 3:07cv4299-PJH

1   "cannot say that the statute is unambiguous"); see also Dysert v. Sec'y of Labor, 105 F.3d 607, 609

2   (11th Cir. 1997) (in reviewing statutory requirement that complainant in dispute to be decided by

3   Secretary of Labor have "demonstrated" the violation, finding that term "demonstrated" is "subject to

4   more than one interpretation" and is therefore ambiguous).

5       **B.      Plaintiffs Fail to Show that Section 200.56 Is Contrary to the Intent of Congress.**

6       In their opening memorandum, defendants demonstrated that 34 C.F.R. § 200.56(a)(2)(ii)

7   resolves the ambiguity in 20 U.S.C. § 7801(23)(A)(i), addresses the concerns expressed by Congress

8   in section 7801(23)(A)(i) and in congressional debate, and is based upon consideration of the concerns

9   identified in the administrative record.  See Defs.' Mem. at 21:25 – 25:20.  Specifically, defendants

10  demonstrated that the regulation retained all other criteria specified by Congress for a teacher to be

11  considered highly qualified – that the teacher hold a bachelor's degree and demonstrate relevant

12  subject matter knowledge.  See id. at 22:28 – 23:6.  Further, the regulation defines the minimal

13  standards that must be met for a participant in an alternative route program to be considered fully

14  certified under NCLB, thus drawing a reasonable line between permissible certification obtained

15  through an alternative route program and alleged "certification" obtained by waiver of state

16  certification requirements.  See id. at 23:7-26.  Defendants also demonstrated that these standards

17  addressed Congress's concern that teachers have sufficient preparation and knowledge to teach core

18  academic subjects.  See id. at 23:27 – 25:3  Finally, defendants demonstrated that the regulation

19  properly recognized the importance that Congress has placed on alternative route programs, such as

20  those authorized by NCLB and discussed previously.  See id. at 25:4-10.

21      Plaintiffs base much of their response on citations to ED interpretations of, and guidance for

22  state reporting of, state standards for certification under the Higher Education Act of 1998, Pub. L.

23  105-244, 112 Stat. 1581 (1998) ("HEA"), enacted prior to NCLB.  As an initial matter, even if ED had

24  changed its position, these citations do nothing to support plaintiffs' argument: "[T]he mere fact that

25  an agency interpretation contradicts a prior agency position is not fatal" to the agency's new

26  interpretation "since the whole point of Chevron is to leave the discretion provided by the ambiguities

27  of a statute with the implementing agency."  Smiley, 517 U.S. at 742.

28      In any event, the statements plaintiffs cite are not inconsistent with section 200.56(a)(2)(ii).

Defendants' Reply in Favor of Their
Cross Motion for Summary Judgment
Civil Action No. 3:07cv4299-PJH

1    First, plaintiffs cite a definition of the term "waiver" (which includes certification acquired through

2    alternative routes) that ED developed before NCLB's enactment and for a wholly different statutory

3    program – to enable, as the HEA requires, comparable reporting of each state's certification procedures

4    through use of common definitions. Specifically, the HEA did not define the term "waiver," but rather

5    required ED to develop "key definitions for terms, and uniform reporting methods" so that the states

6    could report on the performance of their teacher preparation programs and aspects of state certification

7    procedures. See HEA, Pub. L. 105-244 § 201, codified at 20 U.S.C. § 1027(a). Thus, in establishing

8    these definitions and reporting procedures, defendants did not determine, as a matter of law, that any

9    particular state certification obtained through participation in an alternative route program is a waiver

10   of that state's certification requirements.

11       Moreover, defendants' implementation of the 1998 HEA provision is entirely consistent with

12   defendants' arguments here – that Congress delegated to ED the authority to determine when a teacher

13   may be considered fully certified or to have a waiver of certification requirements for purposes of

14   NCLB. That Congress may have been aware of ED's pre-NCLB definition is immaterial. NCLB

15   delegates to ED authority to determine what a waiver of state certification is because, as it had done

16   in HEA, Congress did not utilize any language that codified any prior definition of "waiver." Hence,

17   enactment of NCLB's new provision addressing certification obtained through alternative route

18   programs justifies the Secretary's efforts to harmonize NCLB's alternative route provisions with

19   Congress's ambiguous provision regarding the waiver of teacher certification requirements.[9]

20       Second, plaintiffs point to language in the regulation, the Federal Register notice publishing

21   the regulation, and subsequent guidance to argue that the Secretary intended section 200.56(a)(2)(ii)

22   to be an exception to section 7801(23)(A)(i). See Pls.' Opp. at 5:9-13, id. at 5:16 – 6:2; id. at 7:1-11.

23

24       [9] Plaintiffs also charge that defendants have departed from past interpretations of "waiver" to focus
25   on whether the waiver is embodied in a document entitled "waiver." See Pls.' Opp. at 14:18-23. This
     is not what defendants argued. Defendants argued that the waiver prohibition applies not to a teacher
26   with a certification valid only for a prescribed period of time unless the State has also waived
     certification requirements for that teacher. Defs.' Mem. at 17:8-10. This responds to plaintiffs'
27   argument that certification limited in time falls within the waiver provision. See Pls.' Mem. at 14:10-
     12 (criticizing notion that credential limited to three years could be equivalent to full certification).
28   Defendants did not set forth any argument on how a waiver would be granted.

These arguments ignore the Secretary's reliance on the statutory provision in its entirety. See 20 U.S.C. §7801(23)(A)(i). As demonstrated above, the statute's parenthetical provides the Secretary authority to consider as "highly qualified" teachers who obtain certification through participation in an alternative route program. See, supra, Part II.A. The point of the regulation is to clarify, pursuant to Congress's delegation to the Secretary to interpret section 7801(23), that even if a state does not consider the authority to teach through participation in an alternative route program to be full certification as a matter of state law, under specific circumstances the regulation identifies that participation will amount to full certification for purposes of NCLB's requirements for highly qualified teachers. Thus, the regulation created no unauthorized exception to the underlying statute. See 34 C.F.R. § 200.56(a)(2) (participant in alternative route programs who satisfies specified standards "meets the requirement" of full state certification).[10]

Third, plaintiffs argue that ED's guidance that the states utilize NASDTEC guidelines for teacher certification standards is inconsistent with section 200.56. However, as plaintiffs concede, the NASDTEC guidelines do not mandate that any state standardize its teacher certification requirements. Indeed, plaintiffs admit that a state may "step outside this norm and offer its fullest, most complete level of certification to those in possession of a B.A., subject matter competence, and mere participation in an alternate route program," even where the state's standards differ from NASDTEC guidelines. See Pls.' Opp. at 6 n.6. Moreover, ED's guidance considers the NASDTEC guidelines to be "somewhat ambiguous" and set forth what states may do "[t]ypically." See A.R. at AR0000437, cited in Pls.' Opp. at 6:7-21. Such guidance does not establish strict rules that bind ED or the states.

Ultimately, whether plaintiffs' position is a plausible interpretation of section 7801(23)(A)(i) is irrelevant in determining the validity of the Secretary's regulation. Even if other reasonable interpretations are possible, "a court may not substitute its own construction of a statutory provision for a reasonable interpretation made by the administrator of the agency." Chevron, 467 U.S. at 844.

---

[10] Plaintiffs argue that, in response to public comment, defendants stated the regulation creates an exception to the requirement that teachers not have certification waived. See Pls.' Opp. at 5:16-21 (citing A.R. at AR99-100). However, this particular statement followed the Secretary's explanation in the discussion of public comment that Congress did not intend to preclude participants in alternative route programs who had a bachelor's degree and had demonstrated subject-matter competence from being able to teach as highly qualified, and should be considered in this context. A.R. at AR99.

Defendants' Reply in Favor of Their
Cross Motion for Summary Judgment
Civil Action No. 3:07cv4299-PJH

1

**C.    Plaintiffs Still Fail to Justify Consideration of Material Not in the Administrative Record in Deciding the Merits of Their APA Claim.**

2

3        Defendants demonstrated in their opening memorandum that the extra-record material plaintiffs

4    submit may not be considered in determining the validity of section 200.56(a)(2)(ii).  See Defs.' Mem.

5    at 25:21 – 27:4.  Plaintiffs respond by first arguing that the additional material may be considered in

6    determining whether they have standing.  See Pls.' Opp. at 21:10 – 22:9. That may be, but defendants'

7    challenge to plaintiffs' inclusion of extra-record material was not with regard to jurisdiction, but to the

8    material's use in judicial review of agency action under the APA, in which judicial review is generally

9    limited to the administrative record.  See Florida Power & Light Co. v. Lorion, 470 U.S. 729, 743-44

10   (1985); Defs.' Mem. at 26:4-26.

11       Plaintiffs relegate their short discussion of their extra-record material for their APA claim to

12   a footnote.  See Pls.' Opp. at 21 n.17.  Most of their material is not discussed here, so plaintiffs have

13   failed to justify consideration of that material in deciding the merits of their APA claim.  For those

14   exhibits plaintiffs do address, they cite exceptions to the general rule permitted by the Ninth Circuit.

15   See id. at 21 n.17.  Plaintiffs argue that their exhibits 18(a) and (b) are referenced in the administrative

16   record and explain the technical terms "waiver" and "full state certification."  As defendants have

17   demonstrated, there is no common understanding of these terms that would render them "technical

18   terms" needing definition.  Further, plaintiffs are incorrect in arguing that exhibit 18(b), an ED manual

19   concerning state reporting under the HEA and published four years after section 200.56 was

20   promulgated, was cited in an administrative record that was complete upon the promulgation of the

21   regulation in 2002.  Although exhibit 18(a) is a printout of guidance that appears to have been obtained

22   from a website (www.title2.org) referenced in the administrative record at AR0000437, the reference

23   is in a discussion of passing rates for teacher tests, an issue irrelevant to this case.  Exhibit 20, which

24   plaintiffs also submit to explain defendants' definitions of "full state certification" and "highly

25   qualified teacher," is entirely unnecessary, since defendants define those terms in the governing

26   regulation.  See generally 34 C.F.R. § 200.56.  Finally, as to plaintiffs' submission of information

27   related to California's certification requirements, defendants did not rely on such information in

28   promulgating section 200.56 and, outside their argument that plaintiffs lack standing, defendants only

referenced California law and regulations as illustrative of section 7801(23)(A)'s ambiguity and the

problems inherent in accepting plaintiffs' interpretation of it. See Defs.' Mem. at 18:4 – 19:10.

### III.    PLAINTIFFS REQUEST RELIEF TO WHICH THEY ARE NOT ENTITLED.

#### A.    Plaintiffs Are Not Entitled to the Broad, Sweeping Relief They Request.

Defendants demonstrated in their opening memorandum that plaintiffs' request for an injunction against a statutorily-required report to Congress, an order that ED notify Congress that a 2002-03 report to it relied upon an unlawful interpretation of section 7801(23), and an order that ED notify the states that 34 C.F.R. § 200.56(a)(2)(ii) is unlawful. See Defs.' Mem. at 27:6 – 29:1. In response, plaintiffs argue that these requests will remediate the effects of past violations of section 7801(23)(A) and prevent future violations. See Pls.' Mem. at 24:12-19. Plaintiffs also argue that if the requested relief is not granted, the effects of ED's regulation will persist. See id. at 25:15-16.

Plaintiffs do not explain why invalidation of the regulation would be insufficient to prevent continued reliance upon it or to inform Congress of its invalidation. Plaintiffs also fail to specify the effects they claim are not addressed by invalidation. Finally, plaintiffs present no reason to enjoin the report to Congress in its entirety, thus denying Congress all of the information it has required of ED. Absent such showings, the Court should not grant them the over-broad relief they request.

#### B.    Defendants Preserve Their Objection to a Nationwide Injunction.

Plaintiffs cite Earth Island Inst. v. Ruthenbeck, 490 F.3d 687 (9th Cir. 2007) to argue that the Court should enter a nationwide injunction against section 200.5(a)(2)(ii). See Pls.' Opp. at 22:14 – 23:18. As defendants state in their opening memorandum, see Defs.' Mem. at 29:8-10, the government has appealed that decision, and the Supreme Court has granted *certiorari*. See Summers v. Earth Island Inst., 128 S.Ct. 1118 (2008). For reasons similar to those stated here, the government has urged the Supreme Court to overturn Earth Island Institute. Accordingly, defendants reserve their objection to a nationwide injunction should the Supreme Court overturn Earth Island Institute.

### CONCLUSION

For the reasons stated, defendants request that the Court grant defendants' cross motion for summary judgment.

Defendants' Reply in Favor of Their
Cross Motion for Summary Judgment
Civil Action No. 3:07cv4299-PJH

1

**CERTIFICATE OF SERVICE**

2          I hereby certify that on April 4, 2008, a true and correct copy of the foregoing Defendants'

3  Reply in Favor of Their Cross Motion for Summary Judgment was served by the Court's ECF system

4  upon the following:

5

6              John T. Affeldt
              Jenny Pearlman
              Tara Kini
7              PUBLIC ADVOCATES, INC.
              131 Steuart Street, Suite 300
8              San Francisco, CA 94105

9              Patrick Thompson
              Nicole E. Perroton
10             Elizabeth F. Stone
              GOODWIN PROCTER LLP
11             Three Embarcadero Center, Third Floor
              San Francisco, CA 94111

12
              Jeffrey Simes
13             GOODWIN PROCTER LLP
              599 Lexington Avenue
14             New York, NY 10022

15             David B. Cook
              GOODWIN PROCTER LLP
16             901 New York Avenue, N.W.
              Washington, D.C. 20001

17             Attorneys for Plaintiffs

18

19                              _____/S/_____
                                MICHAEL Q. HYDE

20

21

22

23

24

25

26

27

28

Defendants' Reply in Favor of Their
Cross Motion for Summary Judgment
Civil Action No. 3:07cv4299-PJH