United States District Court
For the Northern District of California

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SONYA RENEE, et al.,

    Plaintiffs,

    v.

MARGARET SPELLINGS, Secretary, United States Department of Education, et al.,

    Defendants.
_____/

No. C 07-4299 PJH

**ORDER GRANTING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT AND DENYING PLAINTIFFS' MOTION FOR SUMMARY JUDGMENT**

The parties' cross-motions for summary judgment came on for hearing before this court on April 23, 2008. Plaintiffs appeared by their counsel John T. Affeldt, Tara Kini, and Jeffrey A. Simes, and defendants appeared by their counsel Michael Q. Hyde and Richard B. Mellman. Having read the parties' papers and carefully considered their arguments and the relevant legal authority, and good cause appearing, the court hereby GRANTS defendants' motion and DENIES plaintiffs' motion.

**INTRODUCTION**

This is a case brought under the Administrative Procedures Act, 5 U.S.C. § 701, et seq. ("APA"), challenging the implementation of the "highly qualified" teacher provisions of the federal No Child Left Behind Act of 2001, 20 U.S.C. §6301, et seq. ("NCLB Act"). Plaintiffs allege that defendant Secretary of the United States Department of Education has promulgated a regulation that violates the NCLB Act's standard for "highly qualified" teachers by "relabeling" more than 10,000 "novice teachers" still in training in California and

tens of thousands of such teachers nationwide as "highly qualified."

Plaintiffs are students and parents of students who attend California public schools, and two organizations – Californians for Justice Education Fund, and the California Association of Community Organizations for Reform Now.

Each side now seeks summary judgment.

## BACKGROUND

The NCLB Act, which was signed into law in 2002, required that, in schools receiving Title I funds, all teachers hired to teach "core academic subjects"[1] after the 2002-2003 school year be "highly qualified," and that by the end of the 2005-2006 school year, all school districts have achieved a result of 100% "highly qualified" teachers. 20 U.S.C. § 6319(a)(1), (2), (3). The NCLB Act defines "highly qualified" as follows:

"[H]ighly qualified"

(A) when used with respect to **any public elementary school or secondary school teacher** teaching in a State, means that –

   (i) **the teacher has obtained full State certification as a teacher (including certification obtained through alternative routes to certification) or passed the State teacher licensing examination,** and holds a license to teach in such State, except that when used with respect to any teacher teaching in a public charter school, the term means that the teacher meets the requirements set forth in the State's public charter school law; **and**

   (ii) **the teacher has not had certification or licensure requirements waived on an emergency, temporary, or provisional basis**;

(B) when used with respect to –

   (i) an elementary school teacher who is new to the profession, means that the teacher

      (I) holds at least a bachelor's degree; and

      (II) has demonstrated, by passing a rigorous State test, subject knowledge and teaching skills in reading, writing, mathematics, and other areas of the basic elementary school curriculum (which may consist of passing a State-required certification or licensing test or tests in reading, writing, mathematics, and other

---

[1] "Core academic subjects" are "English, reading or language arts, mathematics, science, foreign languages, civics and government, economics, arts, history, and geography." 20 U.S.C. § 7801(11).

2

areas of the basic elementary school curriculum); or

    (ii) a middle or secondary school teacher who is new to the profession, means that the teacher holds at least a bachelor's degree and has demonstrated a high level of competency in each of the academic subjects in which the teacher teaches by –

        (I) passing a rigorous State academic subject test in each of the academic subjects in which the teacher teaches (which may consist of a passing level of performance on a State-required certification or licensing test or tests in each of the academic subjects in which the teacher teaches); or

        (II) successful completion, in each of the academic subjects in which the teacher teaches, of an academic major, a graduate degree, coursework equivalent to an undergraduate academic major, or advanced certification or credentialing; and

(C) when used with respect to an elementary, middle, or secondary school teacher who is not new to the profession, means that the teacher holds at least a bachelor's degree and –

    (i) has met the applicable standard in clause (i) or (ii) of subparagraph (B), which includes an option for a test; or

    (ii) demonstrates competence in all the academic subjects in which the teacher teaches based on a high objective uniform State standard of evaluation that

        (I) is set by the State for both grade appropriate academic subject matter knowledge and teaching skills;

        (II) is aligned with challenging State academic content and student academic achievement standards and developed in consultation with core content specialists, teachers, principals, and school administrators;

        (III) provides objective, coherent information about the teacher's attainment of core content knowledge in the academic subjects in which a teacher teaches;

        (IV) is applied uniformly to all teachers in the same academic subject and the same grade level throughout the State;

        (V) takes into consideration, but not be based primarily on, the time the teacher has been teaching in the academic subject;

        (VI) is made available to the public upon request; and

        (VII) may involve multiple, objective measures of teacher competency.

20 U.S.C.A. § 7801(23) (emphasis added).

    On December 2, 2002, the Secretary issued final regulations implementing the

NCLB Act. Those regulations became effective January 2, 2003. The regulation at issue in the present dispute provides as follows:

> To be a "highly qualified teacher," a teacher . . . must meet the requirements in paragraph (a) and either paragraph (b) or (c) of this section.
>
> **(a) In general.**
>
> (1) Except as provided in paragraph (a)(3) of this section, a teacher covered under § 200.55 must –
>
> **(i) Have obtained full State certification as a teacher, which may include certification obtained through alternative routes to certification; or**
>
> **(ii) (A) Have passed the State teacher licensing examination; and**
>
> **(B) Hold a license to teach in the State.**
>
> **(2) A teacher meets the requirement in paragraph (a)(1) of this section if the teacher –**
>
> **(i) Has fulfilled the State's certification and licensure requirements applicable to the years of experience the teacher possesses; or**
>
> **(ii) Is participating in an alternative route to certification program under which –**
>
> **(A) The teacher –**
>
> **(1) Receives high-quality professional development that is sustained, intensive, and classroom-focused in order to have a positive and lasting impact on classroom instruction, before and while teaching;**
>
> **(2) Participates in a program of intensive supervision that consists of structured guidance and regular ongoing support for teachers or a teacher mentoring program;**
>
> **(3) Assumes functions as a teacher only for a specified period of time not to exceed three years; and**
>
> **(4) Demonstrates satisfactory progress toward full certification as prescribed by the State; and**
>
> **(B) The State ensures, through its certification and licensure process, that the provisions in paragraph (a)(2)(ii) of this section are met.**

(3) A teacher teaching in a public charter school in a State must meet the certification and licensure requirements, if any, contained in the State's charter school law.

(4) If a teacher has had certification or licensure requirements waived on an emergency, temporary, or provisional basis, the teacher is not highly qualified.

(b) Teachers new to the profession. A teacher covered under § 200.55 who is new to the profession also must –

(1) Hold at least a bachelor's degree; and

(2) At the public elementary school level, demonstrate, by passing a rigorous State test (which may consist of passing a State certification or licensing test), subject knowledge and teaching skills in reading/language arts, writing, mathematics, and other areas of the basic elementary school curriculum; or

(3) At the public middle and high school levels, demonstrate a high level of competency by –

(i) Passing a rigorous State test in each academic subject in which the teacher teaches (which may consist of passing a State certification or licensing test in each of these subjects); or

(ii) Successfully completing in each academic subject in which the teacher teaches –

(A) An undergraduate major;

(B) A graduate degree;

(C) Coursework equivalent to an undergraduate major; or

(D) Advanced certification or credentialing.

(c) Teachers not new to the profession. A teacher covered under § 200.55 who is not new to the profession also must –

(1) Hold at least a bachelor's degree; and

(2)(i) Meet the applicable requirements in paragraph (b)(2) or (3) of this section; or

(ii) Based on a high, objective, uniform State standard of evaluation in accordance with section 9101(23)(C)(ii) of the ESEA, demonstrate competency in each academic subject in which the teacher teaches.

34 C.F.R. § 200.56 (emphasis added).

Plaintiffs claim that this regulation permits individuals who are merely "participating in an alternative route to certification program," 34 C.F.R. § 200.56(a)(2)(ii), and who have not yet "obtained full state certification" (as required under 20 U.S.C. § 7801(23)(A)) to be

5

deemed "highly qualified."  Thus, plaintiffs assert, a teacher-in-training with no prior training and no prior teaching experience may be deemed "highly qualified" the very day he or she enters an "alternative certification program" and begins to serve as a classroom teacher. Plaintiffs argue that this interpretation of "highly qualified" conflicts with the definition of "highly qualified" in the NCLB Act, because the NCLB Act requires "full State certification."

Plaintiffs bring three causes of action.  First, they allege a claim under the APA, asserting that 34 C.F.R. § 200.56(a)(2)(ii) ("the challenged regulation") is contrary to the plain language of the NCLB Act, and is inconsistent with the intent of Congress.  Second, they assert a claim for declaratory relief under 28 U.S.C § 2201, seeking a judicial declaration that the challenged regulation is unlawful and in excess of defendants' statutory authority.  Third, they allege a claim for injunctive relief under 28 U.S.C. § 2202, seeking an order enjoining defendants from further use of the unlawful "highly qualified" standard set forth in the challenged regulation.

**DISCUSSION**

A.   Legal Standard

   1.   Motions for Summary Judgment

Summary judgment is appropriate when there is no genuine issue as to material facts and the moving party is entitled to judgment as a matter of law.  Fed. R. Civ. P. 56. Material facts are those that might affect the outcome of the case.  Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).  A dispute as to a material fact is "genuine" if there is sufficient evidence for a reasonable jury to return a verdict for the nonmoving party.  Id.

A party seeking summary judgment bears the initial burden of informing the court of the basis for its motion, and of identifying those portions of the pleadings and discovery responses that demonstrate the absence of a genuine issue of material fact.  Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986).  Where the moving party will have the burden of proof at trial, it must affirmatively demonstrate that no reasonable trier of fact could find other than for the moving party.  Southern Calif. Gas. Co. v. City of Santa Ana, 336 F.3d 885, 888 (9th Cir. 2003).

On an issue where the nonmoving party will bear the burden of proof at trial, the moving party can prevail merely by pointing out to the district court that there is an absence of evidence to support the nonmoving party's case. Celotex, 477 U.S. at 324-25. If the moving party meets its initial burden, the opposing party must then set forth specific facts showing that there is some genuine issue for trial in order to defeat the motion. See Fed. R. Civ. P. 56(e); Anderson, 477 U.S. at 250.

2.   Challenges Under the APA

The APA authorizes courts to "set aside agency action, findings, and conclusions found to be . . . arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with the law." 5 U.S.C. § 706. In reviewing an administrative agency's construction of a statute it administers, the court must first consider whether Congress "has directly spoken to the precise question at issue." If the intent of Congress is clear, "that is the end of the matter; for the court, as well as the agency, must give effect to the unambiguously expressed intent of Congress." Chevron, U.S.A., Inc. v. Natural Res. Defense Council, Inc., 467 U.S. 837, 842-43 (1984).

If, however, the statute is silent or ambiguous on the issue, the court must defer to the agency's reasonable interpretation of the statute so long as the interpretation is consistent with the purposes of the statute. Id. at 843-45. The construction of a statute by those charged with its administration is entitled to substantial deference. See United States Rutherford, 442 U.S. 544, 553 (1979); McKart v. United States, 395 U.S. 185, 193-94 (1969) (an agency is created for purpose of applying a statute in the first instance).

Thus, if the agency's interpretation is reasonable and not contrary to the discernable intent of Congress, it should be approved even though it is not the only reasonable interpretation or the one the reviewing court would make if deciding the issue in the first instance. See Unemployment Compensation Comm'n of Alaska v. Aragon, 329 U.S. 143, 153-54 (1946); see also Chevron, 467 U.S. at 842-43. However, an agency's interpretation of a statute is not entitled to deference when it goes beyond the meaning that the statute can bear. MCI Telecomms. Corp. v. AT&T Co., 512 U.S. 218, 229 (1994).

7

B.     The Cross-Motions

As indicated above, the NCLB Act defines a "highly qualified" teacher as one who "has obtained full State certification as a teacher (including certification obtained through alternative routes to certification) or passed the State teacher licensing examination." 20 U.S.C. § 7801(23)(A)(i).  A "highly qualified" teacher must also satisfy two additional requirements.  First, whatever a particular state's certification or licensure requirements may be, the teacher must not have had them "waived on an emergency, temporary, or provisional basis."  Id. § 7801(23)(A)(ii).  Second, to be "highly qualified," new teachers must have at least a bachelor's degree and demonstrate subject matter knowledge in a statutorily-defined manner.  Id. § 7801(23)(B)(i) (new elementary school teachers); § 7801(23)(B)(ii) (new middle or secondary school teachers).

The NCLB Act is silent with regard to any other requirements for "highly qualified" teachers.  Congress did not define "full State certification as a teacher (including certification obtained through alternative routes to certification."  Nor did Congress establish standards for determining which teachers will be considered to have "full State certification," or unambiguously state that a teacher who is participating in an "alternative route" program cannot be highly qualified because he/she has not yet completed that program.  Thus, Congress has not "directly spoken to the precise question at issue." Chevron, 467 U.S. at 842.  Because it is not clear what is meant by "full State certification," the court must proceed to the second step of the Chevron analysis.  That is, the court must consider whether the challenged regulation is reasonable and not contrary to the discernable intent of Congress.

Plaintiffs argue that the challenged regulation conflicts with the NCLB Act and exceeds its scope, and that it is inconsistent with the legislative history and purpose of the Act; and that it is therefore not entitled to deference.  They assert that in allowing teachers who are participating in "alternative route programs" to be considered "fully qualified teachers," the Department of Education has acted in contravention of the provision in the NCLB Act that "fully qualified teachers" have "full State certification."

8

Plaintiffs also contend that the legislative history reflects Congressional intent that only fully certified teachers be considered "highly qualified," and that the members of Congress were concerned about the fact that the poorest school districts with the poorest children often had numerous teachers who were not fully credentialed. In addition, they assert, members of both the House and Senate Education Committees rejected allowing teachers with "alternative certification" to be considered "highly qualified."

Defendants, on the other hand, argue that the challenged regulation is a proper application of agency expertise and is consistent with Congressional intent.[2] They assert that the regulation resolves the ambiguity in the NCLB Act's definition of "highly qualified teacher," addresses the concerns expressed by Congress in enacting the NCLB Act, and is based on consideration of factors discussed in the administrative record.

Defendants dispute plaintiffs' claim that the challenged regulation permits teachers with no prior training or experience to be deemed "highly qualified." They contend that the regulation merely defines one way that a teacher may be deemed, for purposes of the NCLB Act's "highly qualified" teacher requirements, to have "full State certification" to teach, and states when certification may be granted "through" an "alternative route" program.

Defendants argue that the regulation is entirely consistent with the minimal other criteria Congress did specify for considering teachers to be "highly qualified" – having at least a bachelor's degree, and demonstrating relevant subject-matter knowledge – because it includes each of those requirements. Defendants note further that the challenged regulation places additional substantive requirements for teachers in "alternative route" programs considered fully certified under subsection (a)(2)(ii), which would otherwise not be present absent the regulation – that is, a participant in an "alternative route" program

---

[2] Defendants also contend that plaintiffs lack standing to challenge the regulation because they fail to allege any injury that would be remedied by the proposed relief; that the organizational plaintiffs lack standing to sue on behalf of their members or on their own behalf; and that even if plaintiffs were to succeed, they request relief to which they are not entitled. Because the court finds that the motion can be granted on the merits of the APA claim, the court does not address these additional arguments.

who has not yet completed the program must also receive high-quality professional development that is sustained, intensive, and classroom-focused; participate in a program of intensive supervision that consists of structured guidance and regular ongoing support; assume functions as a teacher for no more than three years; and demonstrate satisfactory progress toward full certification as prescribed by the state. See 34 C.F.R. § 200.56(a)(2)(ii)(A).

Defendants also argue that interpreting § 7801(23)(A) as plaintiffs urge would result in other key provisions of the NCLB Act being disregarded. Defendants assert that a review of the "Transitions to Teaching" programs reauthorized and enacted as part of the NCLB Act, see 20 U.S.C. §§ 6671, et seq., including the "Troops-to-Teachers Program" and the "Transition to Teaching Program," for which Congress also authorized the Secretary to create a program for the issuance of grants to states for teacher recruitment and retention, demonstrates that Congress could not have meant that "full State certification" requires participants in "alternative route" programs be certified only after completing such programs, and that Congress understood that teachers participating in those programs would also serve as classroom teachers.

Defendants contend that Congress created these "alternative route" programs to help local school districts in high-poverty and high-need areas meet their teaching goals by enabling them to recruit capable individuals who had not completed teacher preparation programs and quickly enable those individuals to become teachers in high-need schools. They assert that Congress favored allowing highly-qualified former military personnel with subject-matter knowledge, and mid-career professionals with advanced academic qualifications and work experience, to transition into teaching even though they did not have educational certificates or degrees; and that Congress intended that the qualified participants in these programs would teach in high-need schools.

The court finds that the challenged regulation is not arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with the law. First, the regulation does not conflict with the statute. The NCLB Act does not define "full State certification," except to

10

state that it includes "certification obtained through alternative routes to certification." Plaintiffs apparently assume that the phrase "full State certification as a teacher (including certification obtained through alternative routes to certification)" requires completion of teacher preparation programs prior to certification. However, Congress never stated that teachers must complete any particular program to be considered as having obtained "full State certification" for NCLB Act purposes, or that certification may be obtained only after completion of an "alternative route" to certification. Rather, Congress left undefined what it meant both by "full State certification" and by "certification obtained through alternative routes to certification."

If, as plaintiffs assert, Congress intended that participants in "alternative route" programs have already completed a teacher-training program, that objective could have been accomplished by the words "full State certification." Such an interpretation would render the parenthetical phrase "(including certification through alternative routes to certification)" superfluous, because participants in "alternative routes" would already be required to complete the teacher training program to have "full State certification."[3] Alternatively, if Congress wanted to preclude participants in "alternative route" programs from obtaining "full State certification," it could have done so by inserting the word "after" in place of "through."

By failing to define the phrase "full State certification as a teacher (including certification obtained through alternative routes to certification)," Congress gave the Secretary the discretion to clarify what the statute permits. Congress empowered the Secretary to "issue such regulations as are necessary to reasonably ensure that there is compliance" with the NCLB Act. 20 U.S.C. § 6571(a). Thus the Secretary has the discretion to determine the meaning of "full State certification" as the Secretary deems necessary.

The interpretation of the NCLB Act's "highly qualified" provision by the Secretary and

---

[3] Similarly, plaintiffs' argument that the court should define "full State certification" by looking to the dictionary definition of "full" also ignores the parenthetical in the statute.

11

the Department of Education is reasonable.  The regulation simply adds the provision that an individual who is "participating in an alternative route to certification program" that fulfills certain requirements may be considered to have "obtained full State certification as a teacher."  The Secretary's interpretation is also consistent with the other provisions of the NCLB Act – in particular, the provisions regarding the "alternative route" programs.  Moreover, as defendants note, Congress' failure to reverse the Secretary's regulation after more than five years since its promulgation suggests that Congress does not believe the regulation exceeds the scope of the NCLB Act.

## CONCLUSION

In accordance with the foregoing, the court GRANTS defendants' motion and DENIES plaintiffs' motion.

The parties shall, within 14 days, submit either a proposed form of judgment or – if further proceedings are necessary – a request for a further case management conference.

**IT IS SO ORDERED.**

Dated:  June 17, 2008

_____
PHYLLIS J. HAMILTON
United States District Judge